# In the United States Court of Appeals for the Fifth Circuit

———

Fellowship of Christian University Students at The University of Texas at Dallas; Retrograde Newspaper; Young Americans for Liberty, Incorporated; Zall Arvandi; Texas Society of Unconventional Drummers; Strings Attached,

Plaintiffs-Appellees,

v.

Fellowship of Christian University Students at The University of Texas at Dallas; Retrograde Newspaper; Young Americans for Liberty, Incorporated; Zall Arvandi; Texas Society of Unconventional Drummers; Strings Attached, Plaintiffs - Appellees v. Kevin P. Eltife, in his official capacity as member of the Board of Regents of The University of Texas System; Janiece Longoria, in her official capacity as member of the Board of Regents of The University of texas System; James C. (Rad) Weaver, in his official capacity as member of the Board of regents of The University of Texas System also known as Rad; Nolan Perez, M.D., in his official capacity as member of the Board of Regents of The University of Texas System; Robert P. Gauntt, in his official capacity as member of the Board of Regents of The University of Texas System; Christina Melton Crain, Esq., in his official capacity as member of the Board of Regents of The University of Texas System; Jodie Lee Jiles, in his official capacity as member of the Board of Regents of The University of Texas System; Kelcy L. Warren, in his official capacity as member of the Board of Regents of The University of Texas System; John M. Zerwas, M.D., in his

OFFICIAL CAPACITY AS CHANCELLOR OF THE UNIVERSITY OF TEXAS SYSTEM; JAMES E. DAVIS, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNIVERSITY OF TEXAS AT AUSTIN; PRABHAS V. MOGHE, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNIVERSITY OF TEXAS AT DALLAS; STUART W. STEDMAN, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM,

Defendants-Appellants.

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## BRIEF FOR APPELLANTS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

WILLIAM R. PETERSON
Solicitor General
William.Peterson@oag.texas.gov

DANIEL M. ORTNER
Assistant Solicitor General

*Counsel for Defendants-Appellants*

FELLOWSHIP OF CHRISTIAN UNIVERSITY STUDENTS AT THE UNIVERSITY OF TEXAS AT DALLAS; RETROGRADE NEWSPAPER; YOUNG AMERICANS FOR LIBERTY, INCORPORATED; ZALL ARVANDI; TEXAS SOCIETY OF UNCONVENTIONAL DRUMMERS; STRINGS ATTACHED,

Plaintiffs-Appellees,

v.

FELLOWSHIP OF CHRISTIAN UNIVERSITY STUDENTS AT THE UNIVERSITY OF TEXAS AT DALLAS; RETROGRADE NEWSPAPER; YOUNG AMERICANS FOR LIBERTY, INCORPORATED; ZALL ARVANDI; TEXAS SOCIETY OF UNCONVENTIONAL DRUMMERS; STRINGS ATTACHED, PLAINTIFFS - APPELLEES v. KEVIN P. ELTIFE, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; JANIECE LONGORIA, IN HER OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; JAMES C. (RAD) WEAVER, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM ALSO KNOWN AS RAD; NOLAN PEREZ, M.D., IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; ROBERT P. GAUNTT, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; CHRISTINA MELTON CRAIN, ESQ., IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; JODIE LEE JILES, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; KELCY L. WARREN, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; JOHN M. ZERWAS, M.D., IN HIS OFFICIAL CAPACITY AS CHANCELLOR OF THE UNIVERSITY OF TEXAS SYSTEM; JAMES E. DAVIS, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNIVERSITY OF TEXAS AT AUSTIN; PRABHAS V. MOGHE, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE

UNIVERSITY OF TEXAS AT DALLAS; STUART W. STEDMAN, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM,

Defendants-Appellants.

————

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Defendants-Appellants, as governmental parties, need not furnish a certificate of interested persons.

/s/ Daniel M. Ortner
DANIEL M. ORTNER
*Counsel for Defendants-Appellants*

## Statement Regarding Oral Argument

This appeal involves significant and complex issues of federal court jurisdiction, application of the First Amendment to university campuses, and the constitutionality of a recently enacted Texas law. Oral argument would aid the decisional process of this Court.

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ................................................................i

Statement Regarding Oral Argument ........................................................iii

Table of Authorities ................................................................................vi

Statement of Jurisdiction .......................................................................... 1

Issues Presented ...................................................................................... 2

Introduction........................................................................................... 3

Statement of the Case ............................................................................. 4

Summary of the Argument....................................................................... 17

Standard of Review ................................................................................. 19

Argument............................................................................................... 20

    I.   The District Court Lacked Jurisdiction to Enjoin Enforcement of
S.B. 2972 Because Defendants Do Not Enforce S.B. 2972. ....................20

        A.  S.B. 2972 regulates universities, not students...................................20

        B.  Plaintiffs lack standing to challenge and seek an injunction against
enforcement of S.B. 2972. ............................................................. 21

        C.  Plaintiffs cannot overcome sovereign immunity because
Defendants do not enforce S.B. 2972 against them...........................27

        D.  Plaintiffs did not ask the district court to preliminarily enjoin
enforcement of campus specific policies at UT Austin and UT
Dallas, and the district court did not do so. ..................................... 31

    II.  Defendants Do Not Enforce Campus-Specific Policies Regulating
Student Speech........................................................................................ 33

        A.  The Board Defendants do not enforce campus speech policies. ........ 33

        B.  President Davis and President Moghe do not enforce campus
speech policies. ............................................................................. 36

    III. The District Court Erred by Applying Strict Scrutiny. ........................... 39

        A.  S.B. 2972 does not impermissibly favor commercial speech. ............ 39

        B.  S.B. 2972 does not discriminate based on viewpoint......................... 41

        C.  The district court's brief application of alternative standards of
review was erroneous. ................................................................... 45

IV.  The District Court's Preliminary Injunction was Overbroad. ...................48

Conclusion.............................................................................................. 49

Certificate of Compliance ................................................................................50

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
   851 F.3d 507 (5th Cir. 2017) ...................................................... 28, 33

*Anibowei v. Morgan*,
   70 F.4th 898 (5th Cir. 2023) ............................................................... 19

*Ariz. Christian Sch. Tuition Org. v. Winn*,
   563 U.S. 125 (2011) ...................................................................... 21,22

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) ...................................................................... 22,23

*Bailey v. Callaghan*,
   715 F.3d 956 (6th Cir. 2013) ............................................................. 44

*Book People, Inc. v. Wong*,
   91 F.4th 318 (5th Cir. 2024) ..................................................... *passim*

*California v. Texas*,
   593 U.S. 659 (2021) ................................................................ 22, 23, 24

*Carter v. Local 556, Transp. Workers Union of Am.*,
   156 F.4th 459 (5th Cir. 2025) ........................................................... 48

*Chhim v. Univ. of Tex. at Austin*,
   836 F.3d 467 (5th Cir. 2016) ............................................................. 28

*Chiu v. Plano Indep. Sch. Dist.*,
   260 F.3d 330 (5th Cir. 2001) ............................................................. 46

*Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the
   Law v. Martinez*,
   561 U.S. 661 (2010) ........................................................................... 46

*City Council of L.A. v. Taxpayers for Vincent*,
   466 U.S. 789 (1984) ........................................................................... 47

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
596 U.S. 61 (2022) ....................................................40

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)........................................... 26, 32

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
473 U.S. 788 (1985) ...............................................47

*Doe v. Harrell*,
841 F. App'x 663 (5th Cir. 2021) ...........................28

*Fairchild v. Liberty Indep. Sch. Dist.*,
597 F.3d 747 (5th Cir. 2010) .................................46

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ...............................................22

*Frisby v. Schultz*,
487 U.S. 474 (1988) ...............................................48

*Good News Club v. Milford Cent. Sch.*,
533 U.S. 98 (2001) .................................................46

*GSA Network v. Morath*,
2026 WL 483018 (S.D. Tex. 2026) ...................30, 34,35

*Hall v. McRaven*,
508 S.W.3d 232 (Tex. 2017)...................................34

*Hartzell v. S.O.*,
672 S.W.3d 304 (Tex. 2023) ...................................21

*Hill v. Colorado*,
530 U.S. 703 (2000)................................................43

*Idaho v. Coeur d'Alene Tribe of Idaho*,
521 U.S. 261 (1997) ................................................29

*Interpipe Contracting, Inc. v. Becerra*,
898 F.3d 879 (9th Cir. 2018) .................................45

*Jackson v. Wright*,
    82 F.4th 362 (5th Cir. 2023)...................................................... 35, 36

*Keister v. Bell*,
    29 F.4th 1239 (11th Cir. 2022) ........................................................ 47

*Kimel v. Fla. Bd. of Regents*,
    528 U.S. 62 (2000) ........................................................................ 27

*Leal v. Becerra*,
    2022 WL 2981427 (5th Cir. 2022) ................................................... 25

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994) ....................................................................... 43

*McGuire v. Reilly*,
    386 F.3d 45 (1st Cir. 2004)............................................................. 44

*Mi Familia Vota v. Ogg*,
    105 F.4th 313 (5th Cir. 2024) ............................................. 28, 29, 38

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024)....................................................................... 47

*Morris v. Livingston*,
    739 F.3d 740 (5th Cir. 2014)........................................................... 34

*Murthy v. Missouri*,
    603 U.S. 43 (2024)......................................................................... 22

*NAACP v. Tindell*,
    95 F.4th 212 (5th Cir. 2024)........................................................... 19

*Nat'l Press Photographers Ass'n v. McCraw*,
    90 F.4th 770 (5th Cir. 2024) .................................................... 28, 36

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
    833 F.2d 583 (5th Cir. 1987) .......................................................... 26

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ........................................................................ 27

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
    460 U.S. 37 (1983) ............................................................... 45, 46

*Ridley v. Massachusetts Bay Transp. Auth.*,
    390 F.3d 65 (1st Cir. 2004) ............................................................ 47

*Sirius Sols., L.L.L.P. v. Comm'r of Internal Rev.*,
    165 F.4th 374 (5th Cir. 2026) ....................................................... 42

*Spectrum WT v. Wendler*,
    151 F.4th 714 (5th Cir. 2025) ....................................................... 36

*Spectrum WT v. Wendler*,
    157 F.4th 673 (5th Cir. 2025) ....................................................... 36

*Spectrum WT v. Wendler*,
    2026 WL 184215 (5th Cir. 2026) ................................................. 36

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) ........................................................ 32

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ....................................................................... 22

*Students for Justice in Palestine v. Abbott*,
    756 F. Supp. 3d 410 (W.D. Tex. 2024) ...................................... 32, 33

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ..................................................................... 22

*Tex. All. for Retired Ams. v. Scott*,
    28 F.4th 669 (5th Cir. 2022) ........................................................ 28

*Tex. Democratic Party v. Abbott*,
    978 F.3d 168 (5th Cir. 2020) ................................................... 29, 34

*Thomas v. Chi. Park Dist.*,
    534 U.S. 316 (2002) ..................................................................... 44

*TitleMax of Tex., Inc. v. City of Dallas*,
    142 F.4th 322 (5th Cir. 2025) ....................................................... 19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................22

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ............................................................ 18, 48

*Turner Broad. Sys., Inc. v. F.C.C.*,
512 U.S. 622 (1994)......................................................... 42, 43, 45

*United States v. Abbott*,
85 F.4th 328 (5th Cir. 2023)................................................... 37

*United States v. O'Brien*,
391 U.S. 367 (1968) ............................................................ 42, 45

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021) ............................................................... 27, 35

*Young Conservatives of Texas Foundation v. Smatresk*,
73 F.4th 304 (5th Cir. 2023)......................................................25

*Ex parte Young*,
209 U.S. 123 (1908) ........................................................*passim*

**Constitutional Provisions, Statutes, and Rules**

U.S Const. amend. I............................................................*passim*
U.S Const. amend. XI ...............................................................27
Texas Constitution ................................................... 3, 8, 20
Tex. Educ. Code§ 51.9315.........................................*passim*
Tex. Educ. Code § 65.31(c).......................................................34

UT Austin, *Institutional Rules*, Chapter 13: Speech, Expression, and
Assembly ....................................................................*passim*

UT Dallas, Handbook of Operating Procedures, UTDSP5001.......................*passim*

UT Regents Rules and Regulations 80103........................................ 40,41

# STATEMENT OF JURISDICTION

The district court exercised subject-matter jurisdiction over this case under Section 1331 of Title 28 of the United States Code because Plaintiffs asserted federal constitutional claims under Sections 1983 and 1988 of Title 42 of the United States Code. Although this case involves a federal question, the district court lacked subject-matter jurisdiction because Plaintiffs lack Article III standing to challenge S.B. 2972, the statute that is the subject of the preliminary injunction, and their claims are barred by sovereign immunity.

This Court has appellate jurisdiction over this interlocutory appeal of an order granting a preliminary injunction. 28 U.S.C. § 1292(a)(1). The order was entered on October 14, 2025, and Defendants filed a timely notice of appeal on November 4, 2025.

# Issues Presented

1. Whether Plaintiffs have standing and can overcome Defendants' sovereign immunity for their challenges to S.B. 2972, a law that is not enforceable against them.

2. Whether, even if Plaintiffs had sought a preliminary injunction preventing enforcement of campus speech policies adopted by UT Austin and UT Dallas, Plaintiffs have standing and can overcome Defendants' sovereign immunity when Defendants are not responsible for enforcing those policies.

3. Whether the district court erred in concluding that S.B. 2972 likely violates the First Amendment by applying strict scrutiny on the basis that the statute is content- and viewpoint-based.

4. Whether the district court erred by enjoining enforcement of S.B. 2972 against all UT students, including all students at UT Dallas and UT Austin as well as students attending UT System Institutions at which no Plaintiff is a student or organization.

# Introduction

The district court's order granting a preliminary injunction misconstrues the challenged law. The Texas Legislature did not prohibit, between the hours of 10 p.m. and 8 a.m., on-campus discussions of faith, gathering breaking news, using social media to recruit members for an organization, or rehearsing music.

The law at issue, Act of June 2, 2025, 89th Leg., R.S., ch. 1158, § 1, 2025 Tex. Sess. Law Serv. 2884 (S.B. 2972) (codified at Tex. Educ. Code § 51.9315), regulates universities—not students—and although it instructs universities to develop campus time, place, and manner restrictions to limit potentially disruptive overnight speech or speech during the final exam periods, it also instructs them not to "limit or infringe on a person's right to freedom of speech or expression protected by the First Amendment to the United States Constitution or by Section 8, Article I, Texas Constitution." Tex. Educ. Code § 51.9315(f). Universities must balance these concerns when enacting campus-specific policies.

Defendants—members of the University of Texas Board of Regents, the Chancellor of The University of Texas System, the President of The University of Texas at Austin, and the President of The University of Texas at Dallas—are *regulated by* S.B. 2972; they do not *enforce* S.B. 2972.

Plaintiffs, student groups at UT Austin and UT Dallas and a student at UT Austin, sought and received a preliminary injunction only against enforcement of S.B. 2972 itself, not against enforcement of any campus-speech policies. The district court erred in enjoining Defendants from enforcing against Plaintiffs a state law that regulates universities and is not enforceable against students.

## Statement of the Case

### *The Enactment of S.B. 18 and S.B. 2972*

In 2019, the Texas Legislature enacted section 51.9315 of the Texas Education Code to protect freedom of speech on higher-education campuses. Act of May 26, 2019, 86th Leg., R.S., ch. 568, § 1, 2019 Tex. Gen. Laws 1589 (S.B. 18) (codified at Tex. Educ. Code § 51.9315). The Legislature recognized that "freedom of expression is of critical importance" and that it was "a matter of statewide concern that all public institutions of higher education officially recognize freedom of speech as a fundamental right." 2019 Tex. Gen. Laws 1589. The law's goal was "to protect the expressive rights of persons guaranteed by the constitutions of the United States and of this state" by "recognizing freedom of speech and assembly as central to the mission of institutions of higher education" and by "ensuring that all persons may assemble peaceably on the campuses of institutions of higher education for expressive activities." Tex. Educ. Code § 51.9315(b).

S.B. 18 mandated that institutions of higher education "ensure that the common outdoor areas of the institution's campus are deemed traditional public forums" and generally "permit any person to engage in expressive activities in those areas of the institution's campus freely," provided that it was "not unlawful" and "d[id] not materially and substantially disrupt the functioning of the institution." *Id.* § 51.9315(c). Nonetheless, an institution could "adopt a policy that imposes reasonable restrictions on the time, place, and manner of expressive activities in the common outdoor areas of the institution's campus." *Id.* § 51.9135(d); *see also id.* § 51.9135(f) (allowing other restrictions regarding expressive activities generally).

4

In 2024, universities in Texas and across the country experienced large-scale demonstrations that significantly disrupted campus administration and activities, including by interfering with final exams. As UT Austin's Associate Vice President and Dean of Students explained, these disruptive demonstrations "created serious problems for students and the University, including prolonged loud noise in common areas adjacent to class buildings, interference with student access to certain areas of campus, and the need to engage in last-minute rescheduling and relocation of final exams so they can occur away from the disruption." ROA.338 ¶ 11 (speaking of disruptive demonstrations at UT Austin).

In response, the Texas Legislature enacted S.B. 2972, Act of June 2, 2025, 89th Leg. R.S., ch. 1158, § 1, 2025 Tex. Sess. Law Serv. 2884, to protect the educational mission and learning environment of public universities against undue disruption. The Texas House Committee on Higher Education explained that its goal was to "guarantee the rights of students and university employees to engage in expressive activities while setting clear boundaries to prevent disruption and ensure community safety." ROA.27 ¶ 80.

In furtherance of those goals, S.B. 2972 amends section 51.9315 of the Texas Education Code. The law clarifies that S.B. 18's definition of expressive activity does not include several categories of unprotected speech such as unlawful harassment, incitement to imminent unlawful activity, or threats to engage in unlawful activity. Tex. Educ. Code §§ 51.9315(a)(2)(B)-(F). Campuses are specifically directed to establish disciplinary sanctions for actions that interfere with the expressive activities of others. *Id.* § 51.9315(f)(3).

S.B. 2972 also clarifies that S.B. 18's protections are for the speech rights of "students enrolled at and employees of an institution of higher education" rather than "all persons." *Id.* § 51.9315(b)(2). Common outdoor areas are no longer automatically deemed traditional public fora but are instead designated for the expressive activity of students and employees. *Id.* § 51.9315(c). Only those areas that university governing bodies specifically designate as public fora are to be open to expressive activity by members of the general public. *Id.* § 51.9315(d-1). Campuses are free to enact additional rules "differentiating between the rights of students and employees to engage in expressive activities on campus and those of persons not affiliated with the institution." Tex. Educ. Code §§ 51.9315(k). Campuses may also ask students or employees to present proof of identification to verify their status. *Id.* § 51.9315(f)(5).

The law requires that campus policies address certain disruptive conduct on campus, including:

1) Using amplified sound during class hours to intimidate, interfere with classes, or interfere with the performance of campus duties, *id.* § 51.9315(f)(2)(A);

2) Engaging in certain expressive activity during the last two weeks of a semester:

   a. Engaging in expressive activities in a common outdoor area in a manner that materially and substantially disrupts the functioning of the institution, *id.* § 51.9315(f)(2)(B)(i);

b. Inviting speakers to speak on campus, *id.* § 51.9315(f)(2)(B)(ii) (Plaintiffs refer to this as the "End-of-Term Invited Speaker Ban");

c. Using a device to amplify sound, *id* § 51.9315(f)(2)(B)(iii) (Plaintiffs refer to this as the "End-of-Term Amplified Sound Ban");

d. Using drums or other percussive instructions, *id.* § 51.9315(f)(2)(B)(iv) (Plaintiffs refer to this as the "End-of-Term Drum Ban");

3) Erecting tents or other living accommodations on campus, *id.* § 51.9315(f)(2)(C);

4) Wearing a disguise or concealing one's identity for illicit purposes, *id.* § 51.9315(f)(2)(D);

5) Lowering the institution's flag or the flag of the United States or Texas in order to replace it with the flag of another nation, organization, or group, *id.* § 51.9315(f)(2)(F);

6) Engaging in expressive activities between the hours of 10 p.m. and 8 a.m., *id.* § 51.9315(f)(2)(F) (Plaintiffs refer to this as the "Overnight Expression Ban").

S.B. 2972 contains no enforcement mechanism, either with respect to students or to universities themselves. The law instead directs institutions of higher education to "adopt a policy detailing rights and responsibilities regarding expressive activities at the institution." *Id.* § 51.9315(f). The law instructs universities that any "restrictions

on the time, place, and manner of expressive activities" in common outdoor areas must: (1) be "narrowly tailored to serve a significant institutional interest"; (2) "employ clear, published, content-neutral, and viewpoint-neutral criteria"; (3) "provide for ample alternative means of expression"; and (4) "allow members of the university community to assemble or distribute written material without a permit or other permission from the institution." *Id.* § 51.9315(d).

Finally, S.B. 2972 instructs that universities implementing its provisions should not construe it to "infringe on a person's right to freedom of speech or expression protected by the First Amendment to the United States Constitution or by Section 8, Article I, Texas Constitution." *Id.* § 51.9315(l). In other words, the campus policies that institutions adopt should be compatible with the First Amendment as well as the principles set out in S.B. 2972.

### *UT Austin and UT Dallas's Speech Policies*

Plaintiffs are associated with UT System Institutions: UT Austin and UT Dallas. UT Austin maintains a detailed campus-speech policy. ROA.733-745 (UT Austin, *Institutional Rules*, Chapter 13: Speech, Expression, and Assembly). The governing principles of this policy are that "freedoms of speech, expression, and assembly are fundamental rights of all persons and are central to the mission of the University" and that "students, faculty members, and staff members have the right to assemble, to speak, and to attempt to attract the attention of others, and corresponding rights to hear the speech of others when they choose to listen, and to ignore the speech of others when they choose not to listen." ROA.733 (UT Austin, *Institutional Rules* § 13–101(1)). However, "to preserve the University's efficient and

effective operations and functions," the University has enacted "time, place, and manner rules." ROA.733 (§13-101(4)). The University commits to enforce and administer these rules without "discriminat[ion] on the basis of the political, religious, philosophical, ideological, or academic viewpoint expressed by any person." ROA.733 (§13-101(5)).

UT Austin's policy at the time when this lawsuit was filed[1] prohibited disruptive activities during the week of final exams and the week immediately preceding final exams:

> a. Engaging in expressive activities in Common Outdoor Areas in a manner that materially and substantially disrupts the functioning or educational mission of the University;
>
> b. Inviting speakers to speak on campus;
>
> c. Using Amplified Sound in the Common Outdoor Area; and
>
> d. Using drums or other percussion instruments in the Common Outdoor Areas.

ROA.735 (§ 13-105(2)(D)). In her declaration below, UT Austin's Dean of Students emphasized that those rules "provide students with a broad range of expressive activities during the final two weeks of the semester" including distributing literature, displaying signs, maintaining tables, and displaying exhibits. ROA.337 ¶ 9.

---

[1] After the district court entered its preliminary injunction, UT Austin adjusted this portion of its campus speech policy. Under the current policy, these activities are only deemed disruptive "if the activity produces distracting or intrusive sound that can be heard in an academic, administrative, or residential building" UT Austin, Chapter 13: Speech, Expression, and Assembly, Section 13-301(2)(C), *available at* https://catalog.utexas.edu/general-information/appendices/appendix-c/speech-expression-and-assembly/ (last accessed on March 23, 2026).

UT Austin's policy notes the importance of ensuring that its "dormitories and other living spaces for its students and employees" are places where residents may "live comfortably" and enjoy "quiet hours to ensure residents have conditions conducive to adequate study, rest, and sleep." ROA.737 (§13–301 (2)(F)). To protect those interests, UT Austin "deem[s] disruptive" expressive activity "in the Common Outdoor Area . . . if the sound created by the activity can be heard from a University residence after 10 p.m. and before 8:00 a.m. the following morning." ROA.737 (§ 13-301(2)(F)).[2] Another section provides that "the Common Outdoor Area is generally open for expressive activity from 8:00 a.m. through 10:00 p.m." and notes that "[i]ndividuals and groups engaging in expressive activity outside of this permitted time period that is disruptive under Section 13-301 are subject to University discipline, removal, and/or arrest by law enforcement." ROA.737-38 (§ 13-304(3)).

UT Austin's policy emphasizes that its time, place, or manner restrictions "are subject to the constitutional right of free speech" and that the University "cannot ban unobtrusive forms of communication with no potential for disruption." ROA.737 (§ 13-304(2)). The policy provides specific examples, including "means of silent expression or protest confined to the speaker's immediate person, such as

---

[2] After the district court entered its preliminary injunction, UT Austin adjusted this policy to include both "the Common Outdoor Area" and "outdoor spaces of the Dedicated Areas." UT Austin, Chapter 13: Speech, Expression, and Assembly, Section 13-301(2)(C), *available at* https://catalog.utexas.edu/general-information/appendices/appendix-c/speech-expression-and-assembly/ (last accessed on March 23, 2026).

armbands, buttons, and T-shirts." ROA.738 (§ 13-304(2)). These forms of expression "are nearly always protected because they are rarely disruptive in any environment." ROA.738 (§ 13-304(2)).

Like UT Austin, UT Dallas maintains a detailed campus-speech policy that protects student free speech rights. The policy emphasizes that "[t]he freedoms of speech, expression, and assembly are fundamental rights of all persons and are central to the mission of the University" and that "Students, faculty, and staff are free to express their views, individually or in organized groups, orally or in writing or by other symbols, on any topic, in all parts of the campus, subject only to rules necessary to preserve the equal rights of others and the other functions of the University." ROA.662 (Handbook of Operating Procedures, UTDSP5001 Section A, Subsection 1(1, 3)). The policy further states that "the University shall not discriminate on the basis of the political, religious, philosophical, ideological, or academic viewpoint expressed by any person, in the enforcement and administration of these rules or otherwise." ROA.662 (UTDSP5001 Section A, Subsection 1(4)).

In response to S.B. 2972, UT Dallas added a prohibition on "[e]ngaging in expressive activities on campus between the hours of 10 p.m. and 8 a.m." ROA.712 (UTDSP5001 Section B, Subsection 9). UT Dallas also adopted a prohibition on "engaging in expressive activities" by "inviting speakers to speak on campus," "using a device to amplify sound," and "using horns, drums, or other percussive instruments" during "the last two weeks of a semester or term." ROA.712 (UTDSP5001 Section B, Subsection 9).

11

The UT System Board of Regents met on August 20-21, 2025, and approved the adoption of UT Austin's and UT Dallas's respective policies. ROA.41 ¶ 153, ROA.42 ¶ 158.[3]

***Plaintiffs' Challenge to S.B. 2972***

Plaintiffs are five student groups at UT Austin and UT Dallas and a student at UT Austin: (1) the Fellowship of Christian University Students (FOCUS), an interdenominational campus ministry at UT Dallas, ROA.15; (2) The Retrograde, an independent student newspaper at UT Dallas, ROA.16; (3) Strings Attached, a musical group that puts on concerts across the UT Dallas campus, ROA.17; (4) Texas Society of Unconventional Drummers (SOUnD), an alternative percussion musical group that performs across campus at UT Austin, ROA.17; (5) Young Americans for Liberty (YAL), a non-profit organization that advocates for the ideals of liberty and the Constitution with members at both UT Austin and UT Dallas (as well as other UT System Institutions); and (6) Zall Arvandi, a student who is a member of Young Americans for Liberty (YAL) and plans to "establish a YAL chapter as a registered student organization" at UT Austin, ROA.16-17. Plaintiffs' Verified Complaint details the expressive activities of each of the Plaintiffs, including the expressive activities that they wish to engage in during the last two weeks of the semester and between 10 p.m. and 8 a.m. ROA.28-40.

---

[3] *See* ROA.250 n.12 (citing Univ. of Tex. Sys. Bd. of Regents, *Consent Agenda, Aug. 20–21, 2025*, at 252, *available at* https://www.utsystem.edu/sites/default/files/offices/board-of-regents/board-meetings/agenda-book-full/8-2025AB.pdf).

Plaintiffs sued the nine voting members of the Board of Regents of the University of Texas System, UT Chancellor Zerwas, UT Austin President James E. Davis, and UT Dallas President Prabhas V. Moghe, all in their official capacities only. ROA.18-20. Plaintiffs refer to the members of the Board of Regents and Chancellor Zerwas collectively as the Board Defendants.

Plaintiffs bring seven causes of action, all generally arguing that different aspects of S.B. 2972 violate their First Amendment rights. Plaintiffs argue that the "Overnight Expression Ban" and the "End-of Term Invited Speaker Ban" violate the First Amendment's protections for freedom of speech, freedom of the press, and freedom of association. ROA.50-52, 52-57. They contend that the "End-of-Term Amplified Sound Ban" and "End-of-Term Drum Ban" violate the First Amendment's protections for freedom of speech. ROA.57-61, 61-64. And they claim that each of these policies is facially overbroad. ROA.64-67.[4]

Plaintiffs' Complaint seeks declaratory and injunctive relief against those provisions of S.B. 2972 and "any policy or rule implementing" those provisions. ROA.68. Plaintiffs request relief against all Defendants regarding Plaintiffs' expression and all other expressive activities at UT Austin and UT Dallas and

---

[4] Plaintiffs also challenge the portion of S.B. 2972 directing institutions of higher education to adopt policies that allow "members of the university community" to "engage in expressive activities on campus, including by responding to the expressive activities of others." Tex. Educ. Code § 51.9315(f)(1)(A). UTD FOCUS, YAL, Arvandi, and The Retrograde argue that this provision is void for vagueness and ask for declaratory and permanent injunctive relief. ROA.67-68 ¶¶ 312-321. Because Plaintiffs did not seek (and the district court did not grant) a preliminary injunction against this provision, it is not at issue in this appeal.

against the Board Defendants regarding expressive activity "at any other UT System Institution." ROA.68.

Despite referring to campus policies, Plaintiffs' Complaint focuses primarily on S.B. 2972, not the campus-specific policies adopted by UT Austin and UT Dallas. This is most apparent with Plaintiffs' First Cause of Action against the "Overnight Expression Ban." This claim discusses *only* the language of S.B. 2972 and not the narrower policy that UT Austin adopted. Plaintiffs repeatedly refer to the policy they are challenging as a "sweeping" ban of "all" or "nearly all protected speech" between the hours of 10 p.m. and 8 a.m. ROA.50, 52 ¶¶ 207, 209, 219. This count also repeatedly refers to "the Act," ROA.50, 51, 52 ¶¶ 211, 213, 220. Only once, in the final paragraph, of this count does the Complaint refer to "university policies implementing the Ban," ROA.53 ¶ 229, but it does so without any analysis of UT Austin's policy or how it applies to Plaintiffs' speech.

Plaintiffs filed a motion for a preliminary injunction on September 9, 2025. ROA.288. Plaintiffs' motion requested relief *only* from S.B. 2972 and not campus speech policies. For instance, the introduction asked only that the Court "preliminarily enjoin enforcement of the Act's sweeping bans on protected expression." ROA.286. UT Austin's policies are mentioned only in the fact section, ROA.290-91, and UT Dallas's policies are mentioned once in passing. ROA.296. The motion contends that UT Austin has not adopted an overnight speech policy that is compatible with S.B. 2972, confirming that Plaintiffs were not asking the court to enjoin campus specific policies. ROA.291 n.13.

The proposed order that accompanied Plaintiffs' motion asked the court to enjoin Defendants from "Enforcing Tex. Educ. Code §§ 51.9315(f)(2)(B)(ii) ('End-of-Term Invited Speaker Ban'), 51.9315(f)(2)(B)(iii) ('End-of-Term Amplified Sound Ban'), 51.9315(f)(2)(B)(iv) ('End of-Term Drum Ban'), or 51.9315(f)(2)(F) ('Overnight Expression Ban')." ROA.314. The proposed order did not mention any specific policies at UT Austin or UT Dallas.

Following a hearing, ROA.507, the district court entered an order granting Plaintiffs' motion for a preliminary injunction. ROA.431-82. The district court adopted Plaintiffs' proposed order verbatim, enjoining all Defendants as well as their "officers, agents, servants, employees, and those persons in active concert or participation with them" from:

> 1. Enforcing Tex. Educ. Code §§ 51.9315(f)(2)(B)(ii) ("End-of-Term Invited Speaker Ban"), 51.9315(f)(2)(B)(iii) ("End-of-Term Amplified Sound Ban"), 51.9315(f)(2)(B)(iv) ("End-of-Term Drum Ban"), or 51.9315(f)(2)(F) ("Overnight Expression Ban") as applied to Plaintiffs' expression.
>
> 2. Enforcing the End-of-Term Invited Speaker Ban, End-of Term Amplified Sound Ban, End-of-Term Drum Ban, or Overnight Expression Ban against any "expressive activities" (as defined in Tex. Educ. Code § 51.9315(a)(2)) at The University of Texas at Austin or The University of Texas at Dallas.

ROA.481-82. The district court also enjoined the Board Defendants from "Enforcing the End-of-Term Invited Speaker Ban, End-of-Term Amplified Sound Ban, End-of-Term Drum Ban, or Overnight Expression Ban, against any "expressive activities (as defined in Tex. Educ. Code § 51.9315(a)(2)) at any institution within the University of Texas System."

This appeal followed. ROA.483-84.

## Summary of the Argument

S.B. 2972 regulates universities, not students. Correctly understood, S.B. 2972 instructs universities to develop policies that include time, place, and manner restrictions on types of speech that are likely to disrupt students attempting to sleep, study, or take final exams while simultaneously protecting the expressive rights of students. UT Austin's policy regarding disruptive overnight speech exemplifies the thoughtful and careful adoption of policies intended by the Legislature. S.B. 2972 includes no enforcement provisions. Defendants are *regulated by* S.B. 2972, they do not *enforce* S.B. 2972.

Plaintiffs thus lack standing to challenge S.B. 2972, and the district court erred in granting a preliminary injunction against Defendants' enforcement of it. Any alleged injuries are traceable to the universities' campus-specific policies—not S.B. 2972 itself. And Plaintiffs cannot overcome Defendants' sovereign immunity through the narrow *Ex parte Young* exception.

Moreover, even if Plaintiffs had intended to seek a preliminary injunction against the enforcement of campus speech policies, they sued the wrong Defendants. Defendants are responsible for developing university policies, not enforcing those policies. To seek an injunction against the campus policies developed in response to S.B. 2972, Plaintiffs should have sued the officials at the universities responsible for *enforcing* those campus-speech policies, not the officials responsible for *developing or approving* them.

Even if Plaintiffs had established subject-matter jurisdiction, the district court erred in its analysis of the merits. The district court applied strict scrutiny because it

17

concluded that S.B. 2972 favored commercial speech and was infected with anti-Palestinian bias. With respect to commercial speech, the district court erroneously considered S.B. 2972 in isolation, rather than as a part of broader speech-related regulations. UT Austin and UT Dallas (in harmony with UT System rules) subject commercial speech to all of their time, place, and manner rules, plus additional restrictions. Their policies reflect no preference for commercial speech.

The challenged statutory provisions are also content- and viewpoint-neutral, treating all speech equally. Plaintiffs failed to demonstrate any illicit legislative motive that could justify applying strict scrutiny on a facial challenge to a neutral law.

Because the district court applied strict scrutiny, its alternative analysis under less stringent standards was limited. In particular, the court did not conduct any forum analysis, and it did not account for Defendants' substantial interest in preventing disruption during final exams and while students are resting in their dormitories. Even if this Court concludes that Plaintiffs had standing and can overcome sovereign immunity, it should vacate the preliminary injunction and remand to allow for analysis of likelihood of success under a correct standard.

Finally, the scope of the injunction is impermissibly broad. The district court enjoined enforcement of S.B. 2972 throughout the UT System, including at UT institutions at which no Plaintiff is a student or organization. This contravenes the Supreme Court's instruction that injunctive relief must be drawn no "broader than necessary to provide complete relief to each plaintiff." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025).

This Court reviews the district court's decision granting a preliminary injunction for abuse of discretion. *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023). But the district court's conclusions of law "are subject to broad review and will be reversed if incorrect." *Id.* In other words, while "the ultimate decision whether to grant or deny a preliminary injunction is reviewed only for abuse of discretion, a decision grounded in erroneous legal principles is reviewed de novo." *TitleMax of Tex., Inc. v. City of Dallas*, 142 F.4th 322, 328 (5th Cir. 2025).

To secure a preliminary injunction, Plaintiffs were required to show that they are substantially likely to succeed on the merits, that enforcement of the challenged law will subject them to an irreparable injury, that the balance of hardships weighs in their favor, and that the public interest favors injunctive relief. *NAACP v. Tindell*, 95 F.4th 212, 215 (5th Cir. 2024) (per curiam). "[A] preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion" on all four elements. *Anibowei*, 70 F.4th at 902. "[P]laintiffs must make a clear showing that they have standing to maintain the preliminary injunction for an injunction is always improper if the district court lacks jurisdiction." *Tindell*, 95 F.4th at 216 (internal citations and quotation marks omitted).

## I. The District Court Lacked Jurisdiction to Enjoin Enforcement of S.B. 2972 Because Defendants Do Not Enforce S.B. 2972.

Plaintiffs lack standing to challenge S.B. 2972, a law that does not regulate their speech but instead regulates the universities they have sued. And because Defendants do not enforce S.B. 2972, Plaintiffs cannot overcome Defendants' sovereign immunity under *Ex parte Young*.

### A. S.B. 2972 regulates universities, not students.

S.B. 2972 is not a self-executing law that prohibits student speech. Instead, it requires public colleges to "adopt a policy" that also fully respects students' First Amendment rights. S.B. 2972 requires each campus to "adopt a policy detailing rights and responsibilities regarding expressive activities at the institution," Tex. Educ. Code § 51.9315(f), including prohibiting disruptive speech after 10 p.m. and certain types of disruptive speech during the weeks leading up to finals. But critically, S.B. 2972 also instructs that these policies must not "limit or infringe on a person's right to freedom of speech or expression protected by the First Amendment to the United States Constitution or by Section 8, Article I, Texas Constitution." Tex. Educ. Code § 51.9315(l).

Each campus is given the non-ministerial duty of enacting a campus-specific policy that balances these concerns. S.B. 2792 does not mandate the exact language for each institution's policy, as shown by the fact that UT Austin and UT Dallas implemented distinct policies regarding disruptive overnight expression.

As the Texas Supreme Court explained, the Texas Education Code and rules enacted by the UT System Board of Regents often speak in broad strokes and are "lacking in detail, leaving it to the systems and component institutions to fill in the gaps." *Hartzell v. S.O.*, 672 S.W.3d 304, 315 (Tex. 2023). This gap-filling authority unquestionably includes the authority "to enact disciplinary rules and policies." *Id.*

S.B. 2792 does not create any rules that can be enforced against Plaintiffs, nor does it dictate specific policies to be adopted by different campuses. Instead, S.B. 2972 provides guidelines for the enactment of campus-specific policies, while simultaneously instructing Texas universities to preserve the First Amendment rights of students.

That is exactly what happened when UT Austin took the principles of S.B. 2972—that disruptive speech should be limited between 10 p.m. and 8 a.m. to allow students quiet time for study and sleep—and adopted an overnight speech policy that prohibits only speech that is sufficiently loud to be heard from inside a dormitory from a common outdoor area. ROA.737 (UT Austin, *Institutional Policies* § 13–301 (2)(F)). The UT Board unanimously approved the adoption of the UT Austin's campus speech policy, including its approach to disruptive overnight speech. ROA.41 ¶ 153, ROA.42 ¶ 158.

### B. Plaintiffs lack standing to challenge and seek an injunction against enforcement of S.B. 2972.

Plaintiffs lack standing to challenge S.B. 2972 because the law is not enforceable against them and therefore cannot cause any alleged injury. A plaintiff must establish standing "[t]o state a case or controversy under Article III." *Ariz. Christian Sch.*

21

*Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011). The elements are: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

The burden is on the party invoking federal jurisdiction to prove each element. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998). That burden requires plaintiffs to "demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (internal quotation marks omitted) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Even when asserting a First Amendment claim, the party invoking jurisdiction must make a "clear showing" that it is "'likely' to establish each element of standing." *Id.* at 58.

Because Plaintiffs bring a pre-enforcement challenge, they must show that (1) they intend to "engage in a course of conduct arguably affected with a constitutional interest," (2) their "intended future conduct is 'arguably . . . proscribed by [the] statute' they wish to challenge" and (3) "the threat of future enforcement of the . . . statute is substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-64 (2014). Any injury must be "the result of a statute's actual or threatened *enforcement*" of the challenged statute *California v. Texas*, 593 U.S. 659, 670 (2021); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298

(1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's *operation or enforcement*.").

Plaintiffs cannot credibly allege a viable threat that S.B. 2972 will be enforced against them because the statute's commands and prohibitions do not apply to students. Instead, the statute regulates "institution[s] of higher education." Tex. Educ. Code § 51.9315(b)(1). As a result, S.B. 2972 simply cannot be enforced against Plaintiffs.

The Supreme Court's decision in *California v. Texas,* 593 U.S. at 659, is instructive. There, the Supreme Court held that individuals lacked standing to challenge the minimum-essential-coverage provision of the Affordable Care Act because the provision had no enforcement mechanism or penalty for lack of compliance. "Because of this, there [was] no possible Government action that is causally connected to the plaintiffs' injury." *Id.* at 669. Nor could the plaintiffs have "pointed to any way in which the defendants . . . will act to enforce" the challenged provision. *Id.*

This same logic applies here. S.B. 2972's provisions are not enforceable against Plaintiffs and therefore do not cause any alleged injury. Indeed, the injury to Plaintiffs here is even more attenuated than in *California v. Texas* because the minimum-essential-coverage provision at least ostensibly regulated the plaintiffs' conduct (albeit without any enforcement mechanism). By contrast, S.B. 2972 does not regulate Plaintiffs at all. It instead directs campuses to enact student-speech policies that are consistent with both the principles of S.B. 2972 and students' First Amendment rights.

23

Because S.B. 2972 is not enforced by any of the Defendants, any injury that Plaintiffs suffer is likewise not traceable to the actions of the Defendants. There is "no possible Government action" that the Defendants could take to enforce S.B. 2972 against the Plaintiffs. *California*, 593 U.S. at 669. Although Presidents Davis and Moghe were responsible for adopting campus-specific policies within the framework of S.B. 2972, they do not enforce S.B. 2972 itself. The Board Defendants similarly do not enforce S.B. 2972.

This Court's decision in *Book People, Inc. v. Wong*, 91 F.4th 318, 332 (5th Cir. 2024), is also instructive. In that case, bookstores and trade associations challenged a state law that directed book vendors to issue sexual-content ratings for books sold to school libraries. *Id.* at 325. The law required vendors who wanted to sell books to school libraries to submit ratings for their books to the Texas Education Agency, which would publish the ratings and could issue corrections if it felt a vendor's ratings were inadequate. *Id.* This Court held that the TEA Commissioner was a proper defendant in a challenge to those book rating provisions because he was "empowered to enforce the Act against school districts," and the "school districts' purchasing decisions are determined or coerced by the State." *Id.* at 331. On the other hand, Plaintiffs' injuries could not be traced to other officials who were "responsible for promulgating the library-collection standards" required by other provisions of the law because "those standards are not enforceable against Plaintiffs." *Id.* at 332. S.B. 2972, Like the library-collection standards at issue in *Book People*, S.B. 2972 is "not enforceable against Plaintiffs." *Id.*

Plaintiffs' challenge to S.B. 2972 is also unlike the challenge to Texas's tuition rates in *Young Conservatives of Texas Foundation v. Smatresk*, 73 F.4th 304, 310 (5th Cir. 2023). In that case, the tuition rates that the Texas Legislature enacted were directly "implemented and enforced by the [university] officials." *Id.* In contrast, S.B. 2972 is not directly "implemented and enforced" at all; instead, it imposes a non-ministerial duty on universities to incorporate its principles into their own student-speech policies.

Any injury Plaintiffs allegedly experience as a result of campus-specific policies implementing the principles of S.B. 2972 cannot be redressed by a decision enjoining enforcement of S.B. 2972. "When multiple laws cause the same harm, that injury may not be traceable or redressable when only one of those laws is challenged." *Leal v. Becerra*, No. 21-10302, 2022 WL 2981427, at *2 (5th Cir. July 27, 2022) (per curiam). Enjoining S.B. 2972 will not result in an injunction against the campus specific speech policies that actually apply to Plaintiffs. Nor does an injunction against S.B. 2972 require UT Austin or UT Dallas to withdraw their campus-specific policies or affirmatively adopt any other speech policies.[5] Similarly, "declaring" S.B. 2972 "unenforceable" will "not provide relief" because campus-policies "independently caus[e]" the same alleged injury. *Leal*, 2022 WL 2981427, at *2.

---

[5] Indeed, UT Austin's policy that predated S.B. 2972 contained similar restrictions on speech during the final exam period and disruptively loud overnight speech, which further demonstrates the independence of the campus-specific policies and S.B. 2972. *Compare* ROA.695 *with* ROA.737-38.

The district court held that Plaintiffs could challenge S.B. 2972 because of the possibility that the Chancellor or Board of Trustees might compel campuses to enforce the precise language of S.B. 2972. *See* ROA.436-37 (noting concern that "the state government could force the university to comply with the statute"). Plaintiffs similarly argued that UT Austin might disregard its own campus-specific policies and enforce S.B. 2972 and that UT Austin "can do this anytime." ROA.538.

But whether UT Austin or UT Dallas might adopt different policies in the future is a "highly speculative fear" that depends on "a highly attenuated chain of possibilities," and the district court erred in relying on it to establish standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Minutes from the Board's meeting that Plaintiffs rely on shows that the Board voted by consent vote in favor of each campus's proposed policy because the UT System's general counsel determined that each of the proposed policies complied with S.B. 2972. ROA.395. Plaintiffs provide no evidence supporting the idea that the Board—which unanimously approved UT Austin's and UT Dallas's policies—would suddenly reverse course. Nor can Plaintiffs explain why the Chancellor, who "recommend[ed] to the Board Defendants that they approve UT Austin's and UT Dallas's revised policies implementing the Act's mandates," ROA.395, would suddenly determine that those policies were inadequate. And even if the Board or the Chancellor did so, S.B. 2972 would still not be enforceable against students.[6] Finally, Plaintiffs'

---

[6] A challenge against this "abstract or hypothetical" future policy is plainly not ripe. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987).

suggestion that UT Austin or UT Dallas could simply disregard their existing campus policies and attempt to enforce S.B. 2972 against Plaintiffs is not merely speculative but entirely without any basis in evidence since S.B. 2972 does not compel or forbid students to take or refrain from taking any action.

Put simply, S.B. 2972 does not regulate Plaintiffs. It imposes a non-ministerial duty on universities to develop campus policies that protect against disruption while still protecting First Amendment rights. Because Plaintiffs fail to demonstrate any injury from the actual or threatened enforcement of S.B. 2972 against them, they lack standing, and the district court erred in granting a preliminary injunction.

## C. Plaintiffs cannot overcome sovereign immunity because Defendants do not enforce S.B. 2972 against them.

For similar reasons, Plaintiffs' request for an injunction against Defendants' enforcement of S.B. 2972 is barred by sovereign immunity. "Generally, states are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). Because "the fundamental principle of sovereign immunity limits the grant of judicial authority in [Article] III," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984), sovereign immunity deprives federal courts of subject-matter jurisdiction, *see e.g.*, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) ("[T]he Constitution does not provide for federal jurisdiction over suits against nonconsenting States."). "This jurisdictional bar applies regardless of the nature of the relief sought," *Pennhurst*, 465 U.S. at 100, and has not "in any way been relaxed

or vitiated" in the First Amendment context. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 786 (5th Cir. 2024).

State entities like UT Austin, UT Dallas, and the UT Board of Regents are protected by sovereign immunity. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam) (concluding that UT Austin is a state entity protected by sovereign immunity); *Doe v. Harrell*, 841 F. App'x 663, 668 (5th Cir. 2021) (per curiam) (concluding that UT System's Board of Regents is a state entity protected by sovereign immunity).

Plaintiffs rely on the exception recognized in *Ex parte Young*, 209 U.S. 123 (1908), "a narrow pathway to overcome sovereign immunity." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 330 (5th Cir. 2024). To invoke the *Ex parte Young* exception, a plaintiff must name an official who has "some connection [to] the enforcement" of the challenged statute or provision. 209 U.S. at 157; *see also Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017).

This Court has set out three guideposts for determining whether the required connection exists. First, does the official have "more than the general duty to see that the laws of the state are implemented;" second, does the state official have "a demonstrated willingness to exercise that duty"; and third, does the state official "compel or constrain" obedience to "the challenged law?" *Mi Familia Vota*, 105 F.4th at 325 (citing *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022)).

None of those requirements is satisfied here. None of the Defendants has a specific duty to enforce S.B. 2972 against anyone, much less against Plaintiffs. To

qualify for purposes of *Ex parte Young,* the official named as defendant "must have the requisite connection to the enforcement of the particular statutory provision that is the subject of the litigation." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 280 (1997) (noting that a "case-by-case approach to the *Young* doctrine has been evident from the start."). But as discussed above, S.B. 2972 regulates public universities, not students. The UT Board Defendants' only role was reviewing proposed campus-specific policies to ensure that they were broadly compliant with S.B. 2972. Meanwhile, the UT Presidents were responsible for enacting campus-specific policies but have no "connection to the enforcement of" S.B. 2972, "the particular statutory provision that is the subject of the litigation." *Tex. Democratic Party*, 978 F.3d at 179.

Nor have Plaintiffs identified "a demonstrated willingness," *Mi Familia Vota*, 105 F.4th at 325, by any Defendant to enforce S.B. 2972 against students. Instead, Defendants supported the adoption of campus-specific policies based on the guidance provided by the Texas Legislature in S.B. 2972. Nothing in the record indicates that any Defendant view S.B. 2972 as a self-executing prohibition that can be enforced directly against students.

Finally, none of the Defendants can "compel or constrain" Plaintiffs' obedience to "the challenged law," *id.*, because S.B. 2972 does not apply to students. Put simply, Plaintiffs are regulated by campus speech policies, not by S.B. 2972.

This Court's decision in *Book People* is again instructive. There, the Court explained that the officials setting library-collection standards lacked "the required

29

connection to [the law's] enforcement" because the "authority to promulgate [policy], standing alone, is not the power to enforce that policy" under *Ex parte Young. Book People,* 91 F.4th at 332 n.72 (second alteration in original). And any enforcement authority was "only against school districts," not the plaintiffs. The same is true here. Although Defendants proposed and voted on campus-specific speech policies, that does not translate into the power to *enforce* S.B. 2972, let alone to enforce it against students. Any enforcement authority the Board Defendants have applies only to institutions in their system.

In contrast, *Book People* held that the Commissioner was a proper defendant with regard to the book-rating provisions because he was responsible for collecting vendors' book ratings, reviewing them, requiring corrections, and compiling the list of noncompliant vendors. *Id.* at 333, 335. None of the Defendants here has that kind of enforcement authority with regard to S.B. 2972 against Plaintiffs' speech. *See GSA Network v. Morath*, No. 4:25-cv-04090, 2026 WL 483018, at *5 (S.D. Tex. Feb. 20, 2026) (holding that the Commissioner of Education was not a proper defendant because he had "no direct power or duty . . . with regard to implementation or enforcement" and noting that "[t]his stands in contrast to *Book People*, where the Commissioner played an active role in the challenged statutory scheme, collecting and reviewing the schoolbook ratings"); *id.* at *11 (finding that any injury a constitutional amendment caused was not traceable to the Texas Education Association and its Commissioner because "the authority given doesn't allow the TEA or the Commissioner to then directly promulgate and implement the challenged provisions in that school district").

Because Defendants do not enforce S.B. 2972 (much less against Plaintiffs), sovereign immunity bars Plaintiffs' claims and requests for relief against Defendants with respect to S.B. 2972.

**D. Plaintiffs did not ask the district court to preliminarily enjoin enforcement of campus specific policies at UT Austin and UT Dallas, and the district court did not do so.**

To the extent that Plaintiffs contend that their First Amendment rights are violated by the campus policies adopted by UT Austin or UT Dallas, they should have asked the district court to enjoin enforcement of those policies. But Plaintiffs only sought and received a preliminary injunction preventing Defendants from enforcing S.B.2972. Neither the preliminary-injunction motion nor the proposed order identifies any campus-specific policies. *See supra* at 14-17. And the district court adopted the language of Plaintiffs' proposed order verbatim, enjoining only enforcement of S.B. 2972 itself.

Plaintiffs' failure to seek an injunction against enforcement of the campus-specific policies of UT Austin and UT Dallas is also evident from the fact that the UT Austin Plaintiffs did not argue that any of their speech would even arguably violate UT Austin's policy regarding disruptive overnight speech.[7] UT Austin's policy applies only to "disruptive" overnight expressive activity in a common outdoor area. ROA.737 (UT Austin, *Institutional Policies* § 13-301). Disruptive is

---

[7] The sole exception is a single conclusory allegation in the complaint that UT Austin's "policies that implement" the Overnight Expression Ban cover SOUnD's expressive activities, ROA.48 ¶ 196.

defined to mean that "the sound created by the activity can be heard from a University residence." *Id.* at § 13-301 (2)(F).

None of the Plaintiffs associated with UT Austin allege that they plan to engage in any speech that could "be heard from a University residence" or is otherwise "disruptive."[8] Indeed, the district court agreed that "none of Plaintiffs' intended expressive activities are likely to be considered 'disruptive' and thus prohibited" under UT Austin's policy. ROA.456.[9] This deficiency demonstrates that the UT Austin Plaintiffs were challenging only S.B. 2972, not any campus speech policies.

This case stands in sharp contrast to a case relied on by the district court, *Students for Justice in Palestine v. Abbott*, 756 F. Supp. 3d 410 (W.D. Tex. 2024). In that case, the district court noted that the plaintiffs requested "relief against the

---

[8] YAL, Arvandi and SOUnD point to nighttime conversations via the internet or social media, but this plainly does not qualify as "disruptive" under UT Austin's policy—particularly in the light of the policy's express exemption for "unobtrusive forms of communication with" limited or "no potential for disruption," ROA.737-38 (UT Austin, *Institutional Rules* § 13-304(2)). SOUnD also alleges that its evening practices sometimes extend past 10 p.m., but does not allege that those practices take place in a Common Outdoor Area or that the sound from its practices can be heard from a University residence.

[9] Neither the alleged chilling effect nor the fact that Plaintiffs brought an overbreadth challenge fixes this deficiency. While "[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement," *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330–31 (5th Cir. 2020), this chill must still come as a result of the challenged restriction and not as a result of self-censorship or fear of a policy "that does not regulate, constrain, or compel any action on [the plaintiffs'] part." *Clapper*, 568 U.S. at 419. Here, none of the Plaintiffs planned expressive activity even arguably falls within the ambit of UT Austin's disruptive overnight speech policy.

policies themselves," which made it clear that the plaintiffs did "not challenge [an executive order] alone, but also the actions Defendants have taken to comply with the order." *Id.* at 422. The plaintiffs specifically sought "an injunction to stop Defendants from updating their policies in accordance with [the executive order] and from taking enforcement actions according" to the order. *Id.* Here by contrast, Plaintiffs requested a preliminary injunction only against S.B. 2972 and not a preliminary injunction "against the policies themselves."

*   *   *

S.B. 2972 regulates universities, not students. Because Defendants do not enforce S.B. 2972, Plaintiffs lack standing, and their claims are barred by sovereign immunity. The district court erred in entering a preliminary injunction.

## II. Defendants Do Not Enforce Campus-Specific Policies Regulating Student Speech.

Even if Plaintiffs had sought a preliminary injunction against enforcement of UT Austin's and UT Dallas's campus speech policies, the district court would have lacked jurisdiction because no Defendant has a "sufficient connection" to the enforcement of these policies. As a result, Plaintiffs' claims would still be barred by sovereign immunity. *Air Evac EMS, Inc.*, 851 F.3d at 519. For the same reason, no alleged injury from enforcement of a campus speech policy would be traceable to Defendants or redressable by an injunction against them.

### A.  The Board Defendants do not enforce campus speech policies.

The Board Defendants are not proper defendants. The Board of Regents is the governing authority for the UT System, but neither individual regents nor the Board

33

collectively has any specific enforcement connection to speech policies adopted by each campus. The same is true for the Chancellor.

The Board of Regents has authority "to promulgate and enforce such other rules and regulations for the operation, control, and management of the university system and the component institutions thereof as the board may deem either necessary or desirable." Tex. Educ. Code § 65.31(c). The Chancellor is tasked with "the general management of the university system within the policies of the board and for making recommendations to the board concerning the organization of the university system." *Id.* § 51.352(d)(2); *see also Hall v. McRaven*, 508 S.W.3d 232, 235 (Tex. 2017). But this general authority does not translate into a charge to enforce a particular policy on a particular campus or show "a demonstrated willingness to exercise that duty." *Tex. Democratic Party*, 978 F.3d at 179 (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)) (internal quotation marks omitted). The Board of Regents and the Chancellor set general policies but leave the task of enforcement to campus officials. *Hall*, 508 S.W.3d at 235 ("The Board is not expected to run the entire UT System by itself.").

The development and enforcement of speech policies at UT Austin and UT Dallas is the responsibility of campus officials, with the Board approving the campus policies. The Board and Chancellor resemble the officials in *Book People* who were only responsible for "promulgat[ing]" a policy and lacked "the power to enforce that policy" against the plaintiffs. 91 F.4th at 332 n.72. Just as the officials in *Book People* were not proper defendants under *Ex parte Young* or Article III, neither are the Board and Chancellor proper defendants here. *See also GSA Network*, 2026

WL 483018, at *12 (holding that the plaintiffs could not sue the Commissioner of Education because they "haven't identified any enforcement authority or action by [him] that presently contributes to their alleged injuries" and therefore "he isn't part of the remedy").

The district court cited *Jackson v. Wright*, 82 F.4th 362 (5th Cir. 2023), for the proposition that the Chancellor and Board members were proper defendants. ROA.445-46. But the board of trustees in Jackson had direct involvement in the alleged constitutional violation. In *Jackson*, a professor alleged that he was retaliated against for his speech and that members of the North Texas Board of Trustees had been apprised of the violation of his rights by a letter. *Id.* at 368. This Court held that the Board members were proper defendants based not just on "their direct supervisory authority" over campus officials but also based on the fact that the professor "notif[ied]" the board and sought "relief from the Board for the ongoing violation of his First Amendment rights." *Id.* The plaintiff's counsel in *Jackson* argued to this Court that the record showed "the Board's direct involvement in the ongoing violation" of the professors' rights. Sur-Reply of Appellee Timothy Jackson at 1, *Jackson v. Wright*, No. 22-40059, (5th Cir. Sept. 15, 2023), ECF No. 60.

Here, in contrast, Plaintiffs do not allege that the Board has been made aware of or asked to remedy any specific violation of their rights or that the Board has demanded that Plaintiffs' rights be violated. They rely solely on the Board's general policy-making power.

Moreover, *Jackson* came before this Court in the posture of a motion to dismiss, in which this Court was required to accept as true the plaintiff's allegation that the

Board of Trustees could intervene in the campus's decisions regarding his termination. 82 F.4th at 369. In this case, obtaining a preliminary injunction required Plaintiffs to put forward "evidence that Defendants will enforce" the challenged policy. *Nat'l Press Photographers Ass'n*, 90 F.4th at 787. Plaintiffs presented no evidence that the Chancellor or members of the Board of Regents exercise supervisory control or oversight over the implementation of student speech policies at UT campuses.[10]

## B. President Davis and President Moghe do not enforce campus speech policies.

The district court noted that President Davis and President Moghe have "general authority and responsibility for the administration of" UT Austin and UT Dallas, respectively, including "developing and administering policies 'for the program, organization, and operation of the institution,' 'policies relating to students,' and 'rules and regulations for the governance of the institution.'" ROA.444-45; *see also* ROA.590 ¶ 32 (quoting Univ. of Tex. Sys. Bd. of Regents R. 20201 §§ 4, 4.1, 4.3, 4.9). But none of these responsibilities demonstrates that either President Davis or President Moghe enforce the campus policies. *See Book People*, 91 F.4th at 332 n.72.

---

[10] Plaintiffs and the district court also relied heavily on the decision in *Spectrum WT v. Wendler*, 151 F.4th 714 (5th Cir. 2025). However, the panel's decision in *Wendler* was vacated when this Court granted rehearing en banc. *Spectrum WT v. Wendler*, 157 F.4th 673 (5th Cir. 2025). The appeal was subsequently dismissed as moot after the district court held a bench trial and entered final judgment while the appeal from the denial of preliminary relief was still pending. *Spectrum WT v. Wendler*, No. 23-10994, 2026 WL 184215, at *1 (5th Cir. Jan. 20, 2026).

The office of the Dean of Students, not President Davis, has the duty to enforce UT Austin's policies regarding speech, expression, and assembly.[11] The same is true regarding its enforcement of disciplinary policies. ROA.336 ¶ 2; *see also* ROA.801-802 (letter from the UT Austin Office of the Dean of Students forbidding disruptive campus protest).[12]

Similarly, UT Dallas's Dean of Students "has primary authority and responsibility for the administration of student discipline" regarding violations of a university policy or rule. ROA.766 (UTDSP5003(B)(5)). The Dean of Students is also responsible for implementing UTDSP5001—the campus's speech policy

---

[11] Section 11-102 of the Institutional Rules on Student Services and Activities provides that: "The Dean of Students has primary authority and responsibility for the administration of the university process for students alleged to have engaged in conduct that violates this Chapter. The Dean of Students delegates authority to, and is represented by, Student Conduct and Academic Integrity during the administration of the conduct process." ROA.785. Section 11-402(a)(23) provides that the Office of the Dean of Students is responsible for initiating disciplinary proceedings against students "suspected of engaging in or attempting to engage in behavioral misconduct," including "any conduct that violates any provision or rule defined in other chapters of the *Institutional Rules on Student Services and Activities* or the *Handbook of Operating Procedures*." ROA.787, 789.

[12] President Davis also appoints students to sit on the Student Conduct Board, ROA.786 (UT Austin, *Institutional Rules* § 11–300), and reviews appeals on decisions regarding whether a student's misconduct qualifies for Educational Release—a remedial alternative to student discipline. ROA.790 (UT Austin, *Institutional Rules* § 11–504). But just as a governor would not be a proper defendant under *Ex parte Young* because he appoints judges or reviews clemency petitions, President Davis's ancillary role does not give him the requisite enforcement authority. *See United States v. Abbott*, 85 F.4th 328, 336 (5th Cir. 2023) (explaining that *Ex parte Young* requires "some enforcement action that the [defendant] will initiate").

ROA.340 ¶ 2. By contrast, the University President is not mentioned once in UT Dallas's Student Code of Conduct.[13]

The district court acknowledged that the Dean of Students was the official generally responsible for enforcing campus speech policies but noted that President Davis and President Moghe have the ability to designate personnel who may "prevent imminently threatened violations, or end ongoing violations" of the speech policy. ROA.444-45 (citing UT Austin, *Institutional Rules on Student Serv. And Activities* § 13-1202(5); Univ. of Tex. at Dallas, *Handbook of Operating Procedures*, UTDSP5001(L)(49)(5)). But the ability to designate *who* can enforce the free-speech policy is not itself the power to *enforce* the policy. Nor have Plaintiffs shown any "demonstrated willingness," *Mi Familia Vota*, 105 F.4th at 325, by President Davis or President Moghe to enforce campus speech policies against students, let alone against these specific Plaintiffs.

Because neither President Davis nor President Moghe enforces their respective campuses' student-speech policies, they lack the necessary enforcement connection to satisfy *Ex parte Young*, and any injury that Plaintiffs might suffer is not traceable to their actions. Even if Plaintiffs had sought a preliminary injunction to prevent enforcement of campus speech policies (rather than S.B. 2972 itself), they lacked standing to assert these claims against Defendants, who do not enforce campus

---

[13] President Moghe does not even have the ancillary responsibilities that President Davis has regarding the Student Board of Conduct and reviewing appeals. At UT Dallas those responsibilities are given to the Vice President for Student Affairs who is not a party to this lawsuit. ROA.774-781, 783-784 (UTDSP5003 – Student Code of Conduct, §§ E, G)

speech policies, and they could not overcome sovereign immunity under *Ex parte Young.*

## III. The District Court Erred by Applying Strict Scrutiny.

Even if the district court had jurisdiction, it erred by applying strict scrutiny and finding that Plaintiffs were likely to prevail on the merits.

The district court erroneously applied strict scrutiny to S.B. 2972 for two reasons. First, it concluded that S.B. 2972 was content based because the law "gives more protection to commercial speech." ROA.463. Second, it concluded that even if the law was facially content-neutral, an examination of "the statute's history and background" shows that it was motivated by opposition to certain messages (particularly pro-Palestinian speech). ROA.465. The court's reasoning was flawed in both respects. Because S.B. 29872 merely directs campuses to adopt neutral time, place, and manner restrictions, strict scrutiny does not apply.

Since the district court applied strict scrutiny, it provided only a brief alternative analysis of the statute under less rigorous standards of scrutiny. If this Court reaches the merits, it should hold that the district court erred by applying strict scrutiny and remand for consideration under the proper standard.

### A. S.B. 2972 does not impermissibly favor commercial speech.

The district court erroneously characterized S.B. 2972 as favoring commercial speech because the law does not include commercial speech in its definition of covered "expressive activities." ROA.463. In reaching this conclusion, the district court examined S.B. 2972 in a vacuum, assuming that it was the only regulation of

speech on campus and ignoring "the manner in which the provisions actually regulate speech." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 68 n.3 (2022).

The text of S.B. 2972 addresses only non-commercial speech, but it does not prevent universities from regulating commercial speech. The statute that S.B. 2972 modified—S.B. 18, 2019 Tex. Gen. Laws 1589—provided robust free speech protections exclusively for *non-commercial* campus speech, expressly excluding commercial speech from its protections. S.B. 2972 dealt with the same subject matter of non-commercial campus speech, requiring universities to adopt policies to avoid disruption.

Nothing in the Texas Education Code purports to provide heightened protection for commercial speech on college campuses. To the contrary, commercial speech has long been treated more restrictively within the UT System. A system-wide Board of Regents rule generally prohibits all solicitation[14] on campus, aside from limited categories in limited areas designated by the Board. UT Regents Rules

---

[14] Solicitation is defined to include: "the sale, lease, rental or offer for sale, lease, rental of any property, product, merchandise, publication, or service, whether for immediate or future delivery; an oral statement or the distribution or display of printed material, merchandise, or products that is designed to encourage the purchase, use, or rental of any property, product, merchandise, publication, or service; the receipt of or request for any gift or contribution; or the request to support or oppose or to vote for or against a candidate, issue, or proposition appearing on the ballot at any election held pursuant to State or federal law or local ordinances." Board of Regents Policy Rule 80103(3). *See* ROA.736 (UT Austin, *Institutional Rules* §13-205(3)) (referring to Rule 80103); ROA.710-11 (UT Dallas, UTDSP5001 Section B, Subsection 8(4)) (same).

and Regulations 80103 § 1. Additionally, any permissible solicitation must also "be conducted in compliance with . . . the time, place, and manner regulations of the institution." *Id.* § 3. Under this rule, any campus policies limiting the time, place, and manner of speech (including under S.B. 2972) apply to commercial speech *in addition* to these other restrictions on commercial speech.

UT Austin and UT Dallas also have campus-specific policies imposing additional limitations on solicitation. *See* ROA.736 (UT Austin, *Institutional Rules* § 13-205 ("Solicitation & Commercial Speech")); ROA.710-11 (UT Dallas, UTDSP5001 Section B, Subsection 8 ("Solicitation & Commercial Speech")). Both policies refer back to UT Regents' Rule 80103. *See* ROA.736 (UT Austin, *Institutional Rules* § 13-205(3)); ROA.705 (UT Dallas, UTDSP5001 Section B, Subsection 8(4)). As with the Board of Regents' rules, commercial speech is subject to *additional* restrictions, not treated more favorably than non-commercial speech. *See also* ROA.743 (UT Austin, *Institutional Rules* § 13-1003(4)) (noting that University organizations may not "present a guest speaker in violation of the prohibitions against solicitation")).

The district court improperly viewed S.B. 2972 in isolation, rather than as one component of the full set of laws and policies regulating campus speech. As a result, the court erred by concluding that S.B. 2972 favors commercial speech and applying strict scrutiny.

## B. S.B. 2972 does not discriminate based on viewpoint.

The district court also erred in concluding that S.B. 2972 discriminates based on viewpoint. Because S.B. 2972 was enacted in response to disruptive campus protests

(some of which involved pro-Palestinian protesters) and addressed the disruptive means used in those protests (such as establishing encampments and using bullhorns during final exams), the district court inferred an anti-Palestinian viewpoint in the law. That was error.

The district court conflated the fact that certain disruptive protests exposed the need for campus-speech-policy reforms with an illicit purpose of suppressing that viewpoint. For instance, the district court pointed to the House Committee on Higher Education's Bill Analysis. ROA.465. But even if this bill analysis were instructive as to the meaning of S.B. 2972, *contra Sirius Sols., L.L.L.P. v. Comm'r of Internal Rev.*, 165 F.4th 374, 385 (5th Cir. 2026), the bill analysis notes only that campuses experienced "massive disruption[s]" and that "[p]rotesters erected encampments in common areas, intimidated other students through the use of bullhorns and speakers, and lowered American flags with the intent of raising the flag of another nation." ROA.465. The bill was needed "to provide clear rules for protests on college campuses and to assist institutions in managing members of the public who seek to overtake their campus." ROA.465. This bill analysis was viewpoint-neutral, focusing on the place and manner of the expression, not the content of the disruptive speech. *See United States v. O'Brien*, 391 U.S. 367, 386 (1968) (refusing to find viewpoint discrimination based on the remarks of individual lawmakers when legislative reports emphasized the legislature's overriding concern was that burning draft cards would "disrupt the smooth functioning" of the draft not viewpoint-based discrimination); *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622,

647 (1994) (finding that a law was not content- or viewpoint-based because the "overriding [legislative] purpose is unrelated to the content of expression").

The district court's reasoning conflates a motivating incident with illicit intent in a manner that would jeopardize many lawfully enacted content-neutral laws. By this reasoning, for instance, airport security laws that were enacted after the September 11 attacks could be treated as impermissibly motivated by hostility towards Islam and therefore impermissibly viewpoint-based. In truth, the attacks exposed security vulnerabilities, and the government enacted generally applicable security measures in response. Similarly, after the protests in 2024 revealed the potential for campus disruption under existing policies, the Texas Legislature enacted S.B. 2972, a generally applicable and viewpoint-neutral law, to prevent further disruptions resulting from campus protests—regardless of the protesters' identity or message.

For this reason, in *Hill v. Colorado*, 530 U.S. 703, 715, 724 (2000), the Supreme Court refused to find that a health care clinic buffer zone law was viewpoint-based despite evidence that it was "primarily motivated by activities in the vicinity of abortion clinics" or "by the conduct of the partisans on one side of a debate." In like manner here, even if S.B. 2972 was "primarily motivated" by incidents of disruptive pro-Palestinian protests on campus, that does not make the law viewpoint-based. *Id.* at 725. *See also Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 763 (1994) ("That petitioners all share the same viewpoint regarding abortion does not in itself demonstrate that some invidious content- or viewpoint-based purpose motivated the issuance of the order.").

The district court's imputation of motive was particularly problematic because S.B. 2972 is not enforceable against students. There is no evidence (or even a conclusion by the district court) that any impermissible motive was held by the UT System Board of Regents or officials at UT Austin, and UT Dallas. To the contrary, Plaintiffs recognize that the Board of Regents defended the right to protest even after the disruptive protests that led to the enactment of S.B. 2927. ROA.14 ¶ 69. Nor have Plaintiffs pointed to a "pattern of unlawful favoritism" by any of the Defendants that could be construed as evidence of viewpoint discrimination. *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 325 (2002). *See also McGuire v. Reilly*, 386 F.3d 45, 63 (1st Cir. 2004) ("If we require invidious *legislative* intent to make this kind of otherwise content-neutral statute content or viewpoint discriminatory, then there seems no reason why we should not require invidious intent by the enforcers to take this statute outside of the category of content-neutrality now.").

The district court's inference of motive was also improper because Plaintiffs failed to connect any alleged anti-Palestinian motive to the specific provisions that they are challenging. For instance, they do not explain how limiting disruptive speech between 10 p.m. and 8 a.m. furthers the allegedly discriminatory purpose of restricting pro-Palestinian speech. *See Bailey v. Callaghan*, 715 F.3d 956, 959 (6th Cir. 2013) (refusing to consider an argument that the terms of a law were a "proxy for viewpoint discrimination" when that "contention is belied by the Act's terms."). Nor have Plaintiffs alleged that *their* speech was the kind that the Legislature sought to stamp out.

Applying strict scrutiny based "on little more than speculation" regarding hostility towards the speech of students who are not before this Court runs directly contrary to the Supreme Court's directive that courts should not strike down an "otherwise constitutional statute on the basis of an alleged illicit legislative motive." *Turner Broad. Sys.*, 512 U.S. at 652; *O'Brien*, 391 U.S. at 383. In the absence of any statutory "indicia of discriminatory motive," the district court erred in looking beyond "its text to investigate a possible viewpoint-discriminatory motive." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 899 (9th Cir. 2018).

## C. The district court's brief application of alternative standards of review was erroneous.

The district court's error in determining that the challenged provisions were content- and viewpoint-based led it to apply strict scrutiny. Although the district court also stated that the challenged provisions of S.B. 2972 would fail intermediate scrutiny, it provided little analysis. *See, e.g.*, ROA.435 ("End-of-Term Bans would be unlikely to survive even the lesser burden of intermediate scrutiny because they are not narrowly tailored.").

Notably, the district court did not conduct a forum analysis. "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 44 (1983). The type of forum determines what standard of review applies to time, place, and manner restrictions. In a traditional public forum "such as a street or a park" or a designated public forum opened up by a university expressly for expressive purposes, a time,

place, or manner restriction must be "narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication." *Id.* at 45.

On the other hand, speech restrictions in a limited public forum are subject to "a less restrictive level of scrutiny." *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 680 (2010). Restrictions on speech in a limited public forum are permissible so long as the restriction "(1) does 'not discriminate against speech on the basis of viewpoint' and (2) is 'reasonable in light of the purpose served by the forum.'" *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001) (per curiam) (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001)). This is a deferential standard because "public entities have broad discretion to control access to and use of property or events that are not traditional public forums." *Id.* at 346-47.

Even if a particular campus contains some traditional or designated fora, many locations where students might engage in expressive activities are limited public fora—for instance, university buildings, classrooms, dormitories, and adjacent outdoor spaces. As this Court has recognized, many of these spaces "exist[] at the line between designated and limited public forums." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758 (5th Cir. 2010). Classification of a specific location requires examining both "(1) the government's intent with respect to the forum, and (2) the nature of the forum and its compatibility with the speech at issue." *Id.* at 758-59. This analysis must be done in light of current campus policies, since "[t]he government is free to change the nature of any nontraditional forum as it wishes."

*Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 77 (1st Cir. 2004); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985) ("Of course, the government is not required to indefinitely retain the open character of the facility." (internal quotation marks omitted)).

This analysis is crucial because a restriction that might fail review in a designated public forum would survive the far less burdensome reasonableness analysis that applies to a limited public forum. But neither the Plaintiffs nor the district court conducted this analysis.

The district court's failure to conduct a forum analysis is significant because it found a likelihood of success on Plaintiffs' facial challenge to S.B. 2972.[15] With a facial challenge, Plaintiffs were required to prove that "the law's unconstitutional applications substantially outweigh its constitutional ones." *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024). Evaluating a likelihood of success on Plaintiffs' facial challenge required a careful analysis of the full range of S.B. 2972's applications, including all of its applications in limited or non-public fora.

The district court's analysis also disregarded the universities' important interests, including safeguarding their "particular mission to educate," *Keister v. Bell*, 29 F.4th 1239, 1252 (11th Cir. 2022), and "protecting [their students] from unwelcome noise " in their dormitories, *City Council of L.A. v. Taxpayers for Vincent*,

---

[15] The district court found pre-enforcement standing based on the laxer standards for facial First Amendment challenges. ROA.454 (finding a significant threat of enforcement as a result of the "distinction between facial and as-applied challenges" (internal quotation marks omitted)).

466 U.S. 789, 806 (1984), an interest "of the highest order in a free and civilized society." *Frisby v. Schultz*, 487 U.S. 474, 484 (1988).

Accordingly, even if the district court had jurisdiction over Plaintiffs' request for a preliminary injunction against enforcement of S.B. 2972, it erred in its analysis of their likelihood of success on the merits. If this Court determines that the district court has jurisdiction, it should vacate and remand for consideration of Plaintiffs' motion under the correct standard.

## IV. The District Court's Preliminary Injunction was Overbroad.

Regardless of the merits of the district court's constitutional analysis, its injunction was overbroad. As the Supreme Court explained in *Trump v CASA*, injunctive relief may be no "broader than necessary to provide complete relief to each plaintiff with standing to sue." 606 U.S. at 861. Courts may not extend relief to other "similarly situated individuals" not before the court, *id.* at 853, or "directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs," *id.* at 843-44.

The district court erred both in enjoining Defendants from enforcing the provisions of S.B. 2972 against *anyone* "at the University of Texas at Austin or the University of Texas at Dallas" and in enjoining the Board Defendants and the Chancellor from enforcing the provisions of S.B. 2972 "at any institution within the University of Texas System." ROA.482. Any preliminary injunction should have been limited to Plaintiffs. *See Carter v. Local 556, Transp. Workers Union of Am.*, 156 F.4th 459, 500 (5th Cir. 2025) (holding that an injunction that applied to "*all* flight

attendants" rather than just "the conduct that gave rise to [the] claims" was overbroad).

Even if this Court otherwise affirms the district court's preliminary injunction, it should direct the district court to narrow the scope of its injunction to be no broader than necessary than to provide relief to Plaintiffs.

## Conclusion

For these reasons, this Court should reverse the district court's order granting Plaintiffs' request for a preliminary injunction and remand with instructions to dismiss their claims challenging S.B. 2972 for lack of jurisdiction.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

William R. Peterson
Solicitor General

/s/ Daniel M. Ortner
Daniel M. Ortner
Assistant Solicitor General
Daniel.Ortner@oag.texas.gov

*Counsel for Defendants-Appellants*

## Certificate of Compliance

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,177 words, excluding the parts of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.2, according to the word count of Microsoft Word. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

/s/ Daniel M. Ortner
Daniel M. Ortner