No. 25-50914

# In the United States Court of Appeals for the Fifth Circuit

Fellowship of Christian University Students at The University of Texas at Dallas; Retrograde Newspaper; Young Americans for Liberty, Incorporated; Zall Arvandi; Texas Society of Unconventional Drummers; Strings Attached;

Plaintiffs-Appellees,

v.

Kevin P. Eltife, in his official capacity as member of the-Board of Regents of The University of Texas System; Janiece Longoria, in her official capacity as member of the Board of Regents of The University of texas System; James C. (Rad) Weaver, in his official capacity as member of the Board of regents of The University of Texas System also known as Rad; Nolan Perez, M.D., in his official capacity as member of the Board of Regents of The University of Texas System; Robert P. Gauntt, in his official capacity as member of the Board of Regents of The University of Texas System; Christina Melton Crain, Esq., in his official capacity as member of the Board of Regents of The University of Texas System; Jodie Lee Jiles, in his official capacity as member of the Board of Regents of The University of Texas System; Kelcy L. Warren, in his official capacity as member of the Board of Regents of The University of Texas System; John M. Zerwas, M.D., in his official capacity as Chancellor of the University of Texas System; James E. Davis, in his official capacity as President of The University of Texas at Austin; Prabhas V. Moghe, in his official capacity as President of The University of Texas at Dallas;,

Defendants-Appellants.

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

**RECORD EXCERPTS**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

WILLIAM R. PETERSON
Solicitor General
William.Peterson@oag.texas.gov

DANIEL M. ORTNER
Assistant Solicitor General

*Counsel for Defendants-Appellants*

# Table of Contents


| Document | Record Citation | Tab |
|---|---|---|
| Docket Sheet - 1:25-CV-1411 | ROA.1-11 | Tab 1 |
| Notice of Appeal (E-File | ROA.483-484 | Tab 2 |
| Order on Motion for Preliminary Injunction | ROA.431-482 | Tab 3 |

**TAB 1**

APPEAL,DH,STAYED

# U.S. District Court [LIVE]
# Western District of Texas (Austin)
# CIVIL DOCKET FOR CASE #: 1:25-cv-01411-DAE

Fellowship of Christian University Students at The University of Texas at Dallas et al v. Eltife et al
Assigned to: Judge David A. Ezra
Case in other court: USCA Fifth Circuit, 25-50914
Cause: 42:1983 Civil Rights Act

Date Filed: 09/03/2025
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Fellowship of Christian University Students at The University of Texas at Dallas**

represented by

**Adam Steinbaugh**
Foundation for Individual Rights and Expression (FIRE)
510 Walnut Street
Suite 900
Philadelphia, PA 19106
215-717-3473
Email: adam@fire.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hannah Abbott**
the Foundation for Individual Rights and Expression (FIRE)
510 Walnut St
Ste 900
Philadelphia, PA 19106
215-717-3473
Email: hannah.abbott@thefire.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sara Berinhout**
Foundation for Individual Rights and Expression
1408 Beacon St.
Brookline, MA 02446
404-408-5568
Email: sara.berinhout@thefire.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JT Morris**
Foundation for Individual Rights and Expression
700 Pennsylvania Avenue, SE
Suite 340
Washington, DC 20003

215-717-3473
Email: jt.morris@thefire.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**The Retrograde Newspaper** represented by **Adam Steinbaugh**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hannah Abbott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sara Berinhout**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JT Morris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Young Americans for Liberty, Inc.** represented by **Adam Steinbaugh**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hannah Abbott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sara Berinhout**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JT Morris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Zall Arvandi** represented by **Adam Steinbaugh**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hannah Abbott**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sara Berinhout**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JT Morris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Texas Society of Unconventional Drummers** represented by **Adam Steinbaugh**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hannah Abbott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sara Berinhout**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JT Morris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Strings Attached** represented by **Adam Steinbaugh**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hannah Abbott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sara Berinhout**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JT Morris**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kevin P. Eltife**
*in his official capacity as member of the Board of Regents of The University of Texas System*

represented by **B. Keith Ingram**
Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548
Austin, TX 78711-2548
512-796-3618
Fax: 512-457-4410
Email: keith.ingram@oag.texas.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Janiece Longoria**
*in her official capacity as member of the Board of Regents of The University of Texas System*

represented by **B. Keith Ingram**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**James C. Weaver**
*in his official capacity as member of the Board of Regents of The University of Texas System*
*also known as*
Rad

represented by **B. Keith Ingram**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Nolan Perez, M.D.**
*in his official capacity as member of the Board of Regents of The University of Texas System*

represented by **B. Keith Ingram**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Stuart W. Stedman**
*in his official capacity as member of the Board of Regents of The University of Texas System*

represented by **B. Keith Ingram**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert P. Gauntt**
*in his official capacity as member of the Board of Regents of The University of Texas System*

represented by **B. Keith Ingram**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Christina Melton Crain**
*in her official capacity as member of the Board of Regents of The University of Texas*

represented by **B. Keith Ingram**
(See above for address)
*ATTORNEY TO BE NOTICED*

*System*

**Defendant**

| | | |
|---|---|---|
| **Jodie Lee Jiles**<br>*in his official capacity as member of the Board of Regents of The University of Texas System* | represented by | **B. Keith Ingram**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Kelcy L. Warren**<br>*in his official capacity as member of the Board of Regents of The University of Texas System* | represented by | **B. Keith Ingram**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **John M. Zerwas, M.D.**<br>*in his official capacity as Chancellor of The University of Texas System* | represented by | **B. Keith Ingram**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **James E. Davis**<br>*in his official capacity as President of The University of Texas at Austin* | represented by | **B. Keith Ingram**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Dr. Prabhas V. Moghe**<br>*in his official capacity as President of The University of Texas at Dallas* | represented by | **B. Keith Ingram**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 09/03/2025 | 1 (p.12) | COMPLAINT *FOR CIVIL RIGHTS VIOLATIONS* ( Filing fee $ 405 receipt number ATXWDC-20665799), filed by The Retrograde Newspaper, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached, Young Americans for Liberty, Inc., Zall Arvandi, Texas Society of Unconventional Drummers. (Attachments: # 1 (p.12) Civil Cover Sheet, # 2 (p.185) Exhibit A - Tex. S.B. 2972, # 3 (p.209) Exhibit B - Former UT Dallas Policy No. UTDSP5001, # 4 (p.233) Exhibit C - Former UT Austin Institutional Rules, # 5 (p.276) Exhibit D - Revised UT Dallas Policy No. UTDSP5001, # 6 (p.277) Exhibit E - Revised UT Austin Institutional Rules)(Morris, JT) (Entered: 09/03/2025) |
| 09/03/2025 | 2 (p.185) | REQUEST FOR ISSUANCE OF SUMMONS by Zall Arvandi, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached, Texas Society of Unconventional Drummers, The Retrograde Newspaper, Young Americans for Liberty, Inc.. (Morris, JT) (Entered: 09/03/2025) |
| 09/03/2025 | | |

| | | |
|---|---|---|
| | | Case assigned to Judge David A. Ezra. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (lme) (Entered: 09/08/2025) |
| 09/03/2025 | | If ordered by the court, all referrals and consents in this case will be assigned to Magistrate Judge Howell. (lme) (Entered: 09/08/2025) |
| 09/03/2025 | 3 (p.209) | Summons Issued as to Christina Melton Crain, James E. Davis, Kevin P. Eltife, Robert P. Gauntt, Jodie Lee Jiles, Janiece Longoria, Prabhas V. Moghe, Nolan Perez, M.D., Stuart W. Stedman, Kelcy L. Warren, James C. Weaver, John M. Zerwas, M.D.. (lme) (Entered: 09/08/2025) |
| 09/08/2025 | | DEFICIENCY NOTICE to JT Morris: re 1 (p.12) Complaint. **Pursuant to local rule CV-65, "An application for a temporary restraining order or for a preliminary injunction shall be made in an instrument separate from the complaint." Please note that you will need to file a separate motion for a preliminary injunction as requested in the complaint**. (cnr) (Entered: 09/08/2025) |
| 09/09/2025 | 4 (p.233) | Unopposed MOTION for Leave to Exceed Page Limitation *on Motion for Preliminary Injunction* by Zall Arvandi, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached, Texas Society of Unconventional Drummers, The Retrograde Newspaper, Young Americans for Liberty, Inc.. (Attachments: # 1 (p.12) Exhibit Proposed Motion and Brief in Support, # 2 (p.185) Proposed Order Proposed Order on Motion for Leave, # 3 (p.209) Proposed Order Proposed Order on Motion for Preliminary Injunction)(Morris, JT) (Entered: 09/09/2025) |
| 09/09/2025 | 5 (p.276) | ORDER GRANTING Plaintiff's Unopposed 4 (p.233) Motion for Leave to File Motion for Preliminary Injunction in Excess of 20 Pages. The Court finds that Plaintiffs' Motion should be and is GRANTED and DIRECTS the Clerk of the Court to file Plaintiffs' proposed memorandum on the docket. Signed by Judge David A. Ezra. (cnr) (Entered: 09/09/2025) |
| 09/09/2025 | 6 (p.277) | Plaintiffs' Motion for Preliminary Injunction by Zall Arvandi, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached, Texas Society of Unconventional Drummers, The Retrograde Newspaper, Young Americans for Liberty, Inc. (Attachments: # 1 (p.12) Proposed Order.) (cnr) (Entered: 09/09/2025) |
| 09/10/2025 | 7 (p.315) | ORDER SETTING BRIEFING SCHEDULE re 6 (p.277) MOTION for Preliminary Injunction filed by Zall Arvandi, Young Americans for Liberty, Inc., The Retrograde Newspaper, Texas Society of Unconventional Drummers, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached. Signed by Judge David A. Ezra. (cnr) (Entered: 09/10/2025) |
| 09/10/2025 | | Set/Reset Hearings: Preliminary Injunction Hearing set for 10/2/2025 at 1:30 P.M. in Austin before Judge David A. Ezra. (cnr) (Entered: |

| | | |
|---|---|---|
| | | 09/10/2025) |
| 09/11/2025 | 8 (p.317) | NOTICE of Attorney Appearance by B. Keith Ingram on behalf of Christina Melton Crain, James E. Davis, Kevin P. Eltife, Robert P. Gauntt, Jodie Lee Jiles, Janiece Longoria, Prabhas V. Moghe, Nolan Perez, M.D., Stuart W. Stedman, Kelcy L. Warren, James C. Weaver, John M. Zerwas, M.D.. Attorney B. Keith Ingram added to party Christina Melton Crain(pty:dft), Attorney B. Keith Ingram added to party James E. Davis(pty:dft), Attorney B. Keith Ingram added to party Kevin P. Eltife(pty:dft), Attorney B. Keith Ingram added to party Robert P. Gauntt(pty:dft), Attorney B. Keith Ingram added to party Jodie Lee Jiles(pty:dft), Attorney B. Keith Ingram added to party Janiece Longoria(pty:dft), Attorney B. Keith Ingram added to party Prabhas V. Moghe(pty:dft), Attorney B. Keith Ingram added to party Nolan Perez, M.D.(pty:dft), Attorney B. Keith Ingram added to party Stuart W. Stedman(pty:dft), Attorney B. Keith Ingram added to party Kelcy L. Warren(pty:dft), Attorney B. Keith Ingram added to party James C. Weaver(pty:dft), Attorney B. Keith Ingram added to party John M. Zerwas, M.D.(pty:dft) (Ingram, B.) (Entered: 09/11/2025) |
| 09/18/2025 | 9 (p.319) | Response in Opposition to Motion, filed by Christina Melton Crain, James E. Davis, Kevin P. Eltife, Robert P. Gauntt, Jodie Lee Jiles, Janiece Longoria, Prabhas V. Moghe, Nolan Perez, M.D., Stuart W. Stedman, Kelcy L. Warren, James C. Weaver, John M. Zerwas, M.D., re 6 (p.277) MOTION for Preliminary Injunction filed by Plaintiff Zall Arvandi, Plaintiff Young Americans for Liberty, Inc., Plaintiff The Retrograde Newspaper, Plaintiff Texas Society of Unconventional Drummers, Plaintiff Fellowship of Christian University Students at The University of Texas at Dallas, Plaintiff Strings Attached (Attachments: # 1 (p.12) Affidavit Declaration, # 2 (p.185) Affidavit Declaration, # 3 (p.209) Proposed Order)(Ingram, B.) (Entered: 09/18/2025) |
| 09/22/2025 | 10 (p.345) | WAIVER OF SERVICE Returned Executed by The Retrograde Newspaper, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached, Young Americans for Liberty, Inc., Zall Arvandi, Texas Society of Unconventional Drummers as to All Defendants. (Morris, JT) (Entered: 09/22/2025) |
| 09/22/2025 | | Waiver of Service Return Executed on 9/11/2025 as to all defendants; Defendants' answer due 11/10/2025. (cnr) (Entered: 09/22/2025) |
| 09/24/2025 | 11 (p.357) | MOTION to Appear Pro Hac Vice by JT Morris *on behalf of Sara Berinhout* ( Filing fee $ 100 receipt number ATXWDC-20763275) by on behalf of Zall Arvandi, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached, Texas Society of Unconventional Drummers, The Retrograde Newspaper, Young Americans for Liberty, Inc.. (Morris, JT) (Entered: 09/24/2025) |
| 09/24/2025 | 12 (p.362) | MOTION to Appear Pro Hac Vice by JT Morris *on behalf of Hannah Abbott* ( Filing fee $ 100 receipt number ATXWDC-20763346) by on behalf of Zall Arvandi, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached, Texas Society of |

| | | |
|---|---|---|
| | | Unconventional Drummers, The Retrograde Newspaper, Young Americans for Liberty, Inc.. (Morris, JT) (Entered: 09/24/2025) |
| 09/24/2025 | 13 (p.367) | MOTION to Appear Pro Hac Vice by JT Morris *on behalf of Adam Steinbaugh* ( Filing fee $ 100 receipt number ATXWDC-20763430) by on behalf of Zall Arvandi, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached, Texas Society of Unconventional Drummers, The Retrograde Newspaper, Young Americans for Liberty, Inc.. (Morris, JT) (Entered: 09/24/2025) |
| 09/24/2025 | 14 (p.373) | RULE 7 DISCLOSURE STATEMENT filed by Fellowship of Christian University Students at The University of Texas at Dallas. (Morris, JT) (Entered: 09/24/2025) |
| 09/24/2025 | 15 (p.376) | RULE 7 DISCLOSURE STATEMENT filed by The Retrograde Newspaper. (Morris, JT) (Entered: 09/24/2025) |
| 09/24/2025 | 16 (p.379) | RULE 7 DISCLOSURE STATEMENT filed by Young Americans for Liberty, Inc.. (Morris, JT) (Entered: 09/24/2025) |
| 09/24/2025 | 17 (p.382) | RULE 7 DISCLOSURE STATEMENT filed by Strings Attached. (Morris, JT) (Entered: 09/24/2025) |
| 09/24/2025 | 18 (p.385) | RULE 7 DISCLOSURE STATEMENT filed by Texas Society of Unconventional Drummers. (Morris, JT) (Entered: 09/24/2025) |
| 09/25/2025 | 19 (p.388) | REPLY to Response to Motion, filed by Zall Arvandi, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached, Texas Society of Unconventional Drummers, The Retrograde Newspaper, Young Americans for Liberty, Inc., re 6 (p.277) MOTION for Preliminary Injunction filed by Plaintiff Zall Arvandi, Plaintiff Young Americans for Liberty, Inc., Plaintiff The Retrograde Newspaper, Plaintiff Texas Society of Unconventional Drummers, Plaintiff Fellowship of Christian University Students at The University of Texas at Dallas, Plaintiff Strings Attached (Morris, JT) (Entered: 09/25/2025) |
| 09/25/2025 | 20 (p.405) | ORDER GRANTING 11 (p.357) Motion to Appear Pro Hac Vice for Attorney Sara Berinhout for Zall Arvandi,Sara Berinhout for Fellowship of Christian University Students at The University of Texas at Dallas,Sara Berinhout for Strings Attached,Sara Berinhout for Texas Society of Unconventional Drummers,Sara Berinhout for The Retrograde Newspaper,Sara Berinhout for Young Americans for Liberty, Inc.. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center. Signed by Judge David A. Ezra. (cnr) (Entered: 09/25/2025) |
| 09/25/2025 | 21 (p.406) | ORDER GRANTING 12 (p.362) Motion to Appear Pro Hac Vice for Attorney Hannah Abbott for Zall Arvandi,Hannah Abbott for Fellowship of Christian University Students at The University of Texas at Dallas,Hannah Abbott for Strings Attached,Hannah Abbott for Texas Society of Unconventional Drummers,Hannah Abbott for |

| | | |
|---|---|---|
| | | The Retrograde Newspaper,Hannah Abbott for Young Americans for Liberty, Inc.. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center. Signed by Judge David A. Ezra. (cnr) (Entered: 09/25/2025) |
| 09/25/2025 | 22 (p.407) | ORDER GRANTING 13 (p.367) Motion to Appear Pro Hac Vice for Attorney Adam Steinbaugh for Zall Arvandi,Adam Steinbaugh for Fellowship of Christian University Students at The University of Texas at Dallas,Adam Steinbaugh for Strings Attached,Adam Steinbaugh for Texas Society of Unconventional Drummers,Adam Steinbaugh for The Retrograde Newspaper,Adam Steinbaugh for Young Americans for Liberty, Inc.. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center. Signed by Judge David A. Ezra. (cnr) (Entered: 09/25/2025) |
| 09/29/2025 | 23 (p.408) | NOTICE *Defendants' Potential Witnesses and Exhibit Lists for October 2, 2025 Preliminary Injunction Hearing* by Christina Melton Crain, James E. Davis, Kevin P. Eltife, Robert P. Gauntt, Jodie Lee Jiles, Janiece Longoria, Prabhas V. Moghe, Nolan Perez, M.D., Stuart W. Stedman, Kelcy L. Warren, James C. Weaver, John M. Zerwas, M.D. (Ingram, B.) (Entered: 09/29/2025) |
| 09/29/2025 | 24 (p.411) | WITNESS/EXHIBIT LIST by Zall Arvandi, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached, Texas Society of Unconventional Drummers, The Retrograde Newspaper, Young Americans for Liberty, Inc.. (Morris, JT) (Entered: 09/29/2025) |
| 09/29/2025 | 25 (p.415) | MOTION to Appear Pro Hac Vice by Hannah Abbott by on behalf of Zall Arvandi, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached, Texas Society of Unconventional Drummers, The Retrograde Newspaper, Young Americans for Liberty, Inc. (Attachments: # 1 (p.12) Proposed Order). (cnr) (Entered: 09/30/2025) |
| 09/29/2025 | 26 (p.420) | MOTION to Appear Pro Hac Vice by Adam Steinbaugh by on behalf of Zall Arvandi, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached, Texas Society of Unconventional Drummers, The Retrograde Newspaper, Young Americans for Liberty, Inc. (Attachments: # 1 (p.12) Proposed Order). (cnr) (Entered: 09/30/2025) |
| 09/29/2025 | 27 (p.426) | MOTION to Appear Pro Hac Vice by Sara Berinhout by on behalf of Zall Arvandi, Fellowship of Christian University Students at The University of Texas at Dallas, Strings Attached, Texas Society of Unconventional Drummers, The Retrograde Newspaper, Young Americans for Liberty, Inc. (Attachments: # 1 (p.12) Proposed Order). (cnr) (Entered: 09/30/2025) |

| | | |
|---|---|---|
| 10/01/2025 | | Text Order MOOTING 25 (p.415) Motion to Appear Pro Hac Vice. The Court granted Admission Pro Hac Vice for Hannah Abbott on September 25, 2025. (Dkt. # 21.) Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ASlc) (Entered: 10/01/2025) |
| 10/01/2025 | | Text Order MOOTING 26 (p.420) Motion to Appear Pro Hac Vice. The Court granted Admission Pro Hac Vice for Adam Steinbaugh on September 25, 2025. (Dkt. # 22.) Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ASlc) (Entered: 10/01/2025) |
| 10/01/2025 | | Text Order MOOTING 27 (p.426) Motion to Appear Pro Hac Vice. The Court granted Admission Pro Hac Vice for Sara Berinhout on September 25, 2025. (Dkt. # 20.) Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ASlc) (Entered: 10/01/2025) |
| 10/02/2025 | 28 | Minute Entry for proceedings held before Judge David A. Ezra: Preliminary Injunction Hearing held on 10/2/2025 (Minute entry documents are not available electronically.). (Court Reporter April Balcombe.)(cnr) (Entered: 10/06/2025) |
| 10/02/2025 | 30 (p.582) | Exhibit List with Exhibts attached for 28 Preliminary Injunction Hearing held on 10/2/2025. (Attachments: # 1 (p.12) Plaintiff's Exhibit # 1, # 2 (p.185) Plaintiff's Exhibit # 2, # 3 (p.209) Plaintiff's Exhibit # 3, # 4 (p.233) Plaintiff's Exhibit # 4, # 5 (p.276) Plaintiff's Exhibit # 5, # 6 (p.277) Plaintiff's Exhibit # 6, # 7 (p.315) Plaintiff's Exhibit # 7, # 8 (p.317) Plaintiff's Exhibit # 8, # 9 (p.319) Plaintiff's Exhibit # 9, # 10 (p.345) Plaintiff's Exhibit # 10, # 11 (p.357) Plaintiff's Exhibit # 11, # 12 (p.362) Plaintiff's Exhibit # 12, # 13 (p.367) Plaintiff's Exhibit # 13, # 14 (p.373) Plaintiff's Exhibit # 14, # 15 (p.376) Plaintiff's Exhibit # 15, # 16 (p.379) Plaintiff's Exhibit # 16, # 17 (p.382) Plaintiff's Exhibit # 17, # 18 (p.385) Plaintiff's Exhibit # 18, # 19 (p.388) Plaintiff's Exhibit # 19, # 20 (p.405) Defendant's Exhibit # 1, # 21 (p.406) Defendant's Exhibit # 2). (cnr) (Entered: 10/21/2025) |
| 10/14/2025 | 29 (p.431) | ORDER GRANTING Plaintiffs' 6 (p.277) Motion for Preliminary Injunction. Signed by Judge David A. Ezra. (cnr) (Entered: 10/14/2025) |
| 11/04/2025 | 31 (p.483) | Appeal of Order entered by District Judge 29 (p.431) by Christina Melton Crain, James E. Davis, Kevin P. Eltife, Robert P. Gauntt, Jodie Lee Jiles, Janiece Longoria, Prabhas V. Moghe, Nolan Perez, M.D., Stuart W. Stedman, Kelcy L. Warren, James C. Weaver, John M. Zerwas, M.D.. ( Filing fee $ 605 receipt number ATXWDC-20932396) (Ingram, B.) (Entered: 11/04/2025) |
| 11/04/2025 | | NOTICE OF APPEAL following 31 (p.483) Notice of Appeal (E-Filed), by Christina Melton Crain, James E. Davis, Kevin P. Eltife, Robert P. Gauntt, Jodie Lee Jiles, Janiece Longoria, Prabhas V. Moghe, Nolan Perez, M.D., Stuart W. Stedman, Kelcy L. Warren, James C. Weaver, John M. Zerwas, M.D.. Filing fee $ 605, receipt number ATXWDC-20932396. Per 5th Circuit rules, the appellant has |

| | | |
|---|---|---|
| | | 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (cnr) (Entered: 11/04/2025) |
| 11/07/2025 | 32 (p.485) | Agreed MOTION to Stay Case *Pending Appeal of Preliminary Injunction* by Christina Melton Crain, James E. Davis, Kevin P. Eltife, Robert P. Gauntt, Jodie Lee Jiles, Janiece Longoria, Prabhas V. Moghe, Nolan Perez, M.D., Stuart W. Stedman, Kelcy L. Warren, James C. Weaver, John M. Zerwas, M.D.. (Attachments: # 1 (p.12) Proposed Order)(Ingram, B.) (Entered: 11/07/2025) |
| 11/10/2025 | 33 (p.489) | ORDER GRANTING 32 (p.485) Motion to Stay Case. Signed by Judge David A. Ezra. (dm) (Entered: 11/10/2025) |
| 11/10/2025 | 34 (p.490) | MOTION to Dismiss by Christina Melton Crain, James E. Davis, Kevin P. Eltife, Robert P. Gauntt, Jodie Lee Jiles, Janiece Longoria, Prabhas V. Moghe, Nolan Perez, M.D., Stuart W. Stedman, Kelcy L. Warren, James C. Weaver, John M. Zerwas, M.D.. (Ingram, B.) (Entered: 11/10/2025) |
| 11/12/2025 | | Text Order DENYING 34 (p.490) Motion to Dismiss. In light of the Court's order to stay the case (Dkt. # 33), Defendants' Motion to Dismiss is DENIED WITHOUT PREJUDICE subject to refiling after the Fifth Circuit has ruled and the stay is lifted. Entered by Judge David A. Ezra. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ASlc) (Entered: 11/12/2025) |
| 12/09/2025 | 35 (p.507) | Transcript filed of Proceedings held on 12/2/2025, Proceedings Transcribed: PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION HEARING. Court Reporter/Transcriber: April Balcombe, Telephone number: 5129256810. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 12/30/2025, Redacted Transcript Deadline set for 1/9/2026, Release of Transcript Restriction set for 3/9/2026, Appeal Record due by 12/24/2025, (Balcombe, April) (Entered: 12/09/2025) |

**TAB 2**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| FELLOWSHIP OF CHRISTIAN UNIVERSITY STUDENTS AT THE UNIVERSITY OF TEXAS AT DALLAS, THE RETROGRADE NEWSPAPER, YOUNG AMERICANS FOR LIBERTY, INC., ZALL ARVANDI, TEXAS SOCIETY OF UNCONVENTIONAL DRUMMERS, and STRINGS ATTACHED,<br>*Plaintiffs,*<br>v.<br>KEVIN P. ELTIFE, *et. al.*,<br>*Defendants.* | CASE NO. 1:25-cv-01411 |

**DEFENDANTS' NOTICE OF APPEAL**

Defendants, The Board of Regents of The University of Texas System and its members; Chancellor John M. Zerwas, M.D.; UT Austin President, James E. Davis; and UT Dallas President, Dr. Rabhas V. Moghe, by and through the Office of the Attorney General of Texas and the undersigned counsel (collectively, the "Defendants") Appeal This Court's Order entered on October 14, 2025, to the United State Court of Appeals for the Fifth Circuit. See Order Granting Plaintiffs' Motion for Preliminary Injunction, ECF No. 29. The order granting a preliminary injunction is immediately appealable. See 28 U.S.C. § 1292(a)(1).

Date: November 4, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

Respectfully submitted.

*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel
Texas State Bar No. 00787746
keith.ingram@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
COUNSEL FOR THE STATE OF TEXAS

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on November 4, 2025, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

JT MORRIS (Tex. Bar No. 24094444)
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION (FIRE)
(215) 717-3473
700 Pennsylvania Ave., Suite 340
Washington, DC 20003
jt.morris@thefire.org

ADAM STEINBAUGH (Cal. Bar No. 304829)*
SARA BERINHOUT (Mass. Bar No. 703217)*
HANNAH ABBOTT (Pa. Bar No. 337123)*
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION (FIRE)
510 Walnut St., Suite 900
Philadelphia, PA 19106
adam@thefire.org
sara.berinhout@thefire.org
hannah.abbott@thefire.org

*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel

**TAB 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FELLOWSHIP OF CHRISTIAN UNIVERSITY STUDENTS AT THE UNIVERSITY OF TEXAS AT DALLAS, et al., | § | NO. 1:25-CV-1411-DAE |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| KEVIN P. ELTIFE, et al., | § | |
| | § | |
| Defendants. | § | |

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Before the Court is Plaintiff Fellowship of Christian University Students at the University of Texas at Dallas, The Retrograde Newspaper, Young Americans for Liberty, Inc., Zall Arvandi, Texas Society of Unconventional Drummers, and Strings Attached's (collectively "Plaintiffs") motion for a preliminary injunction (Dkt. # 6). Defendants, Kevin P. Eltife, Janiece Longoria, James C. Weaver, Nolan Perez, M.D., Stuart W. Stedman, Robert P. Guantt, Christina Melton Crain, Jodi Lee Jiles, Kelcy L. Warren, John M. Zerwas, M.D., James E. Davis, and Dr. Prabhas V. Moghe (collectively "Defendants"), filed a

response in opposition on September 18, 2025. (Dkt. # 9.) The Plaintiffs filed a reply on September 25, 2025. (Dkt. # 19.) The Court held a hearing on this matter on October 2, 2025. Upon careful consideration of the arguments raised by the parties in the briefing and at the hearing, the Court—for the reasons that follow—**GRANTS** Plaintiffs' motion (Dkt. # 6).

## BACKGROUND

This case concerns a law passed by the State of Texas, in effect as of September 1, 2025, that requires state universities to adopt policies that prohibit certain expressive activities. See Tex. S.B. 2972, 89th Leg., R.S. (2025); Tex. Educ. Code § 51.9315. Plaintiffs, comprised of various student organizations and an individual student at the University of Texas ("UT") Austin and Dallas campuses, bring suit to enjoin enforcement of the law.

### I. The Campus Protection Act

In 2019, Texas enacted a law reinforcing the First Amendment's protections for free expression on university campuses. S.B. 18, 86th Leg., Reg. Sess. (Tex. 2019). Six years later, Texas lawmakers amended that law, allegedly in reaction to student demonstrations protesting the conflict between Palestine and Israel, to require universities to adopt policies meant to "prevent disruption and ensure community safety." (Dkt. # 6 at 4–5) (citing Tex. House Comm. on Higher Educ., *Bill Analysis*, S.B. 2972, 89th Leg., Reg. Sess. (2025)).

This law, commonly known as the "Campus Protection Act" (hereinafter "the statute"), keeps the 2019 law's broad definition of "expressive activities": "any speech or expressive conduct protected by the First Amendment to the United States Constitution . . . ." S.B. 18, 86th Leg., Reg. Sess. (Tex. 2019). The definition also expressly excludes "commercial speech" from its definition as well as other commonly lesser-protected forms of speech, such as defamation, unlawful harassment, incitement to imminent unlawful activity, obscenity, and threats to engage in unlawful activity. Id. The statute contains four provisions, *inter alia*, which the Plaintiffs now seek to enjoin.

A. The Overnight Expression Ban

The statute requires that each institution's policies "prohibit . . . engaging in expressive activities on campus between the hours of 10 p.m. and 8 a.m." Tex. Educ. Code § 51.9315(f)(2)(F). Plaintiffs refer to this provision as the "Overnight Expression Ban." (See, e.g., Dkt. # 1 at ¶ 86.) This provision makes no exceptions or distinctions based on the area or forum on campus. Id.

B. End-of-Term Invited Speaker Ban

The statute also requires that each institution's policies "prohibit . . . during the last two weeks of a semester or term, engaging in expressive activities . . . by inviting speakers to speak on campus." Tex. Educ. Code § 51.9315(f)(2)(B)(ii). Plaintiffs refer to this provision as the "End-of-Term

Invited Speaker Ban." (See, e.g., Dkt. # 1 at ¶ 106.) Plaintiffs allege that based on UT Austin's 2025–2026 academic calendar, which has seven academic terms, the ban will apply for 98 days of the academic year. (Id. at ¶¶ 108–109.) Plaintiffs allege that based on UT Dallas' 2025–2026 academic calendar, the ban will apply over 90 days of the academic year. (Id. at ¶ 110.) This provision makes no exceptions or distinctions based on the area or forum on campus. Id.

C. End-of-Term Amplified Sound Ban

In addition, the statute requires that each institution's policies "prohibit . . . during the last two weeks of a semester or term, engaging in expressive activities . . . by using a device to amplify sound." Tex. Educ. Code § 51.9315(f)(2)(B)(iii). Plaintiffs refer to this provision as the "End-of-Term Amplified Sound Ban." (See, e.g., id. at ¶ 123.) The statute itself does not define "amplified sound." See id. The End-of-Term Amplified Sound Ban would apply during the same period as the End-of-Term Invited Speaker Ban. Id. This provision makes no exceptions or distinctions based on the area or forum on campus. Id.

D. End-of-Term Drum Ban

The statute also requires that each institution's policies "prohibit . . . during the last two weeks of a semester or term, engaging in expressive activities . . . by using drums or other percussive instruments." Tex. Educ. Code

§ 51.9315(f)(2)(B)(iv). Plaintiffs refer to this provision as the "End-of-Term Drum Ban." (See, e.g., id. at ¶ 140.) This ban would apply during the same periods as the End-of-Term Invited Speaker and Sound Bans,[1] and makes no exceptions or distinction based on the area or forum on campus. Id.

II. UT Board of Regents Implementation

As mandated, the UT Board of Regents approved proposed revisions to each institution's policies that implement the statute's requirements. (Dkt. # 6 at 6.) UT Dallas's revised policy includes the statute's Overnight Expression Ban and the End-of-Term Bans nearly verbatim. See Univ. of Tex. at Dallas, *Handbook of Operating Procedures*, UTDSP5001B(9)(6), (B)(9)(9). UT Austin's revised policy also adopts the statute's End-of-Term Bans nearly verbatim, except that it clarifies that the "last two weeks of a semester or term" means "the week of final exams and the week immediately preceding final exams."[2] See Univ. of Tex. at Austin, *Institutional Rules on Student Serv. And Activities*, §§ 13-105(2)(D)(b)-(d).

---

[1]Hereinafer, the Court will refer to the End-of-Term Invited Speaker, Sound, and Drum Bans collectively as the "End-of-Term Bans" where appropriate.

[2] UT Austin also later amended the End-of-Term Amplified Sound and Drum Bans to be limited to the "Common Outdoor Area." Univ. of Tex. at Austin, Institutional Rules on Student Serv. And Activities, § 13-105(2)(D)(iii)-(iv). However, this effectively covers all outdoor space that is not a "Dedicated Area[]" or University building, which are understandably already covered by restrictions on the use of amplified sound and percussive instruments. For the definition of "Common Outdoor Area," see Univ. of Tex. at Austin, *Institutional Rules on Student Serv. And Activities*, §§ 13-104(2); 13-104(4).

UT Austin did not explicitly adopt the Overnight Expression Ban. Instead, UT Austin's policy specifies that "any expressive activity in the Common Outdoor Area is deemed disruptive [and thus disallowed] if the sound created by the activity can be heard from a University residence after 10:00 p.m. and before 8:00 a.m. the following morning." Id. at §§ 13-301(2)(F), 13-304(3).

There is disagreement over whether Plaintiffs adequately address the universities' adopted policies rather than the statute itself. (See, e.g., Dkt. # 9 at 5.) This issue will be discussed in more detail in the discussions of standing and ripeness. However, the Court notes at the outset that it will generally refer to the Bans as they are written in the statute because it is the legislature's mandate that controls, not how each university interprets it. The statute *requires* that the universities adopt the Bans in their institutional policies, and thus there is no guarantee that the statute will not otherwise be enforced through other means or later revisions to the institutional policies. For example, UT Austin initially adopted the End-of-Term Bans verbatim but later amended those policies after this lawsuit was filed so that the End-of-Term Sound and Drum Bans are restricted to the Common Outdoor Areas. Compare Dkt. # 1-6 at § 13-105(2)(D)(c)-(d), with Univ. of Tex. at Austin, *Institutional Rules on Student Serv. And Activities*, § 13-105(2)(D)(iii)-(iv). At any point, UT Austin could decide to again amend its policies to comply with the statute, or the state government could force the

university to comply with the statute. Therefore, while the Court will still consider the universities' adopted policies, it is the statute itself that controls.

III. The Parties

This suit names six Plaintiffs and twelve Defendants. For ease and clarity, as well as to provide background information relevant to standing, the Court will briefly outline each of the parties at the outset.

A. The Plaintiffs

Fellowship of Christian University Students ("FOCUS") is an interdenominational campus ministry with a chapter at UT Dallas ("UTD") as a registered student organization. (Dkt. # 1 at ¶ 12.) UTD FOCUS hosts evening gatherings on campus for students to engage in fellowship and worship, and students regularly stay past 10:00 p.m. to discuss issues of faith and talk to FOCUS's ministers. (Id. at ¶¶ 89–90.) UTD FOCUS also offers morning one-on-one meetings on campus to discuss issues of faith, and these meetings have occasionally started before 8:00 a.m. in the past. (Id. at ¶ 91.) As a part of these gatherings, UTD FOCUS invites ministers to campus every week, including during the last two weeks of academic terms, to speak and lead worship. (Id. at ¶¶ 113–114.) Some worship events also utilize speakers to amplify worship music and other sounds, and some of these events occur during the last two weeks of an academic term. (Id. at ¶¶ 128–129.)

The Retrograde is UT Dallas's independently run student newspaper. (Id. at ¶ 14.) The newspaper's editors frequently use the UTD computer network to work on the newspaper after 10:00 p.m., as well as gather breaking news on campus between the hours of 10:00 p.m. and 8:00 a.m. (Id. at ¶¶ 97–99.) The Retrograde occasionally invites off-campus sources for an interview on campus, including during the last two weeks of an academic term, and the board consists of local journalists and staff members that occasionally meet and speak on campus. (Id. at ¶¶ 115–116.)

Young Americans for Liberty, Inc. ("YAL") is a grassroots organization with thousands of student members across the country, including several members at UT Austin, UT Dallas, and other UT System institutions. (Id. at ¶ 17.) Plaintiff Zall Arvandi is a newly enrolled student at UT Austin and a YAL member who intends to establish a YAL chapter as a registered student organization on campus. (Id. at ¶ 19.) He intends on inviting YAL staff to campus to speak with him and other students. (Id.) Arvandi intends on using the UT Austin computer network to use social media to recruit members between the hours of 10:00 p.m. and 8:00 a.m., as well as to research issues related to YAL's mission. (Id. at ¶¶ 92–96.) As part of its mission, YAL staff and representatives regularly visit YAL campus chapters, especially at the end of academic terms, to help student members advocate and to discuss pending bills during the Texas

Legislative session. (Id. at ¶¶ 117–121.) As part of YAL's year-long petitioning campaigns, YAL staff and representatives often visit campus to speak with students and will often use megaphones or hold rallies, including during the last two weeks of academic terms. (Id. at ¶¶ 130–134.)

Texas Society of Unconventional Drummers (SOUnD) is a registered student organization at UT Austin that puts on several musical performances throughout the year on UT Austin's campus. (Id. at ¶ 20.) SOUnD members regularly communicate through an online chat group using the UT Austin's wireless network after 10:00 p.m. (Id. at ¶ 100.) At the end of every semester, SOUnd puts on a stage show at UT Austin using an array of percussive instruments and amplified sound. (Id. at ¶¶ 134–135, 143–146.)

Lastly, Strings Attached is a registered student organization at UT Dallas that puts on musical performances and themed concerts at the UT Dallas campus. (Id. at ¶ 21.) Every week, Strings Attached rehearses at a reserved space on the UT Dallas campus. (Id. at ¶ 101.) These rehearsals often extend beyond 10:00 p.m. (Id. at ¶ 102.) They also host performances on the UT Dallas campus during the last two weeks of the spring semester which often ends after 10:00 p.m. and includes both the use of percussive instruments and amplified sound. (Id. at ¶¶ 103, 136–138, 147.)

B. The Defendants

Nine of the Defendants, the "UT System Board Defendants," are members of the UT System Board of Regents—a governmental entity under the laws of Texas and the governing body of the UT System and its member institutions. (Id. at ¶¶ 22–27.) Defendant Kevin P. Eltife, sued in his official capacity, is a member of and serves as Chairman of the Board of Regents of The University of Texas System. (Id. at ¶ 23.) Defendant Janiece Longoria, sued in her official capacity, is a member of and serves as Vice Chairman of the Board of Regents of The University of Texas System. (Id. at ¶ 24.) Defendant James C. "Rad" Weaver, sued in his official capacity, is a member of and serves as Vice Chairman of the Board of Regents of The University of Texas System. (Id. at ¶ 25.) Defendants Nolan Perez, M.D., Stuart W. Stedman, Robert P. Gauntt, Christina Melton Crain, Jodie Lee Jiles, and Kelcy L. Warren are members of the Board of Regents of The University of Texas System and are sued in their official capacities. (Id. at ¶ 26.)

Defendant John M. Zerwas, M.D., sued in his official capacity, is Chancellor and the chief executive officer of The University of Texas System, reporting to the UT System Board of Regents. (Id. at ¶ 30.) Defendant James E. Davis, sued in his official capacity, is the president and chief executive officer of UT Austin. (Id. at ¶ 32.) Finally, Defendant Dr. Prabhas V. Moghe, sued in his

official capacity, is the president and chief executive officer of UT Dallas. (Id. at ¶ 33.)

On September 3, 2025, Plaintiffs filed a complaint consisting of seven causes of action, alleging several First Amendment violations and a Fourteenth Amendment violation against the challenged provisions. (Dkt. # 1 at 39–57.) On September 9, 2025, Plaintiffs moved for a preliminary injunction. (Dkt. # 6.) Defendants responded on September 18, 2025. (Dkt. # 9.) Plaintiffs filed a reply on September 25, 2025. (Dkt. # 19.) The Court held a hearing on this matter on October 2, 2025. The pending motion is discussed below.

## LEGAL STANDARD

### I. Preliminary Injunction

The grant of injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance. Opulent Life Church v. City of Holly Springs, Miss., 697 F.3d 279, 288 (5th Cir. 2012); Valley v. Rapides Parish Sch. Bd., 118 F.3d 1047, 1050 (5th Cir. 1997). A preliminary injunction should not be granted unless the movant demonstrates by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest. Lindsay v. City

of San Antonio, 821 F.2d 1103, 1107 (5th Cir. 1987); Valley, 118 F.3d at 1051. However, even when a movant establishes each of the four requirements described above, the decision whether to grant or deny a preliminary injunction remains within the Court's discretion, and the decision to grant a preliminary injunction is treated as the exception rather than the rule. Miss. Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir. 1985).

## DISCUSSION

### I. Likelihood of Success on the Merits

The parties raise four merits issues: (1) Defendants' sovereign immunity; (2) Plaintiffs' standing; (3) ripeness of the suit, and (4) the constitutionality of the challenged provisions. The Court will address each in turn.

#### A. Sovereign Immunity

Defendants argue that Plaintiffs' claims are barred by sovereign immunity and that they cannot prevail using the Ex parte Young exception. (Dkt. # 9 at 8–10.) Accordingly, Defendants contend that Plaintiffs' complaint must be dismissed pursuant to Federal Rule of Civil of Civil Procedure 12(h)(3). (Id. at 10.) The Court finds that Plaintiffs' claims are not barred by sovereign immunity.

The Eleventh Amendment typically deprives federal courts of jurisdiction over "suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress

has clearly abrogated it." Moore v. La. Bd. Of Elementary & Secondary Educ., 743 F.3d 959, 963 (5th Cir. 2014). Under the Ex parte Young exception to sovereign immunity, lawsuits may proceed in federal court when a plaintiff requests prospective relief against state officials in their official capacities for ongoing federal violations. 209 U.S. 123, 159–60 (1908). "For the [Ex parte Young] exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" City of Austin v. Paxton, 943 F.3d 993, 997 (5th Cir. 2019) (quoting Ex parte Young, 209 U.S. at 157).

Defendants argue that Plaintiffs cannot overcome sovereign immunity through the Ex parte Young exception because none of the named Defendants have "'sufficient connection [to] the enforcement' of the challenged statute." (Id. at 9) (quoting Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp., 851 F.3d 507, 519 (5th Cir. 2017)). However, neither a specific grant of enforcement authority nor a history of enforcement is required to establish a sufficient connection. Id.; City of Austin, 943 F.3d at 1001. Rather, there need be only a "scintilla of enforcement by the relevant state official" for Ex parte Young to apply. City of Austin, 943 F.3d at 1002. Actual threat of or imminent enforcement is "not required." Air Evac, 851 F.3d at 519.

1. Defendants James E. Davis and Prabhas V. Moghe

Defendants first argue Plaintiffs cannot establish that Defendants James E. Davis and Prabhas V. Moghe, presidents of UT Austin and UT Dallas, respectively, have any particular duty to enforce any particular provision of their university's policies or the Texas Education Code. (Dkt. # 9 at 8–9.) Rather, they argue that it is the office of the Dean of Students at each university that has the duty to enforce the university policies against students. (Id. at 9–10) (citing Univ. of Tex. at Austin, *Institutional Rules on Student Serv. And Activities* § 11-102; Univ. of Tex. at Dallas, *Handbook of Operating Procedures,* UTDSP5003(B)(5)). Plaintiffs cite to the Board of Regents Rule 20201 to allege that Defendants Davis and Moghe have "general authority and responsibility for the administration of" their universities, including "developing and administering policies 'for the program, organization, and operation of the institution,' 'policies relating to students,' and 'rules and regulations for the governance of the institution.'" (Dkt. # 1 at ¶ 32) (quoting Univ. of Tex. Sys. Bd. Of Regents R. 20201 §§ 4, 4.2, 4.3, 4.9).

The Court finds that Defendants Davis and Moghe, as university presidents, have the requisite connection to enforcement to fall under the Ex parte Young exception. In addition to President Davis and Moghe's general governing authority over the development and administration of institutional rules and

policies, including those relating to students, both UT Austin and UT Dallas have an identical speech policy which vests in Presidents Davis and Moghe the ability to designate personnel who may "prevent imminently threatened violations, or end ongoing violations" of the speech policy. Univ. of Tex. at Austin, *Institutional Rules on Student Serv. And Activities* § 13-1202(5); Univ. of Tex. at Dallas, *Handbook of Operating Procedures,* UTDSP5001(L)(49)(5). The Court finds these powers rise above the scintilla of enforcement required of the Ex parte Young exception, and Plaintiffs' claims against Defendants Davis and Moghe are not barred by sovereign immunity. See also Students for Just. In Palestine, at Univ. of Houston v. Abbott, 756 F. Supp. 3d 410, 419–420 (W.D. Tex. 2024) (holding that university-president Defendants, including UT Austin, have requisite connection to enforcement of free speech policies).

2. Board of Regents Defendants and Defendant John Zerwas

Defendants next argue that the Board of Regents Defendants and Defendant Chancellor John Zerwas do not have the required connection to the enforcement of the challenged policies. (Dkt. # 9 at 10.) The Court disagrees.

Several courts in analogous cases have found that members of a university's board of regents fall under the Ex parte Young exception. See Jackson v. Wright, 82 F.4th 362, 368 (5th Cir. 2023) (holding that University of North Texas Board of Regents have requisite connection because of their "direct

supervisory authority over the UNT officials who took the actions at issue"); Students for Just. In Palestine, at Univ. of Houston v. Abbott, 756 F. Supp. 3d 410, 419–20 (W.D. Tex. 2024) (citing Jackson, 82 F.4th) (holding that the Boards of Regents of the University of Houston and the University of Texas have requisite connection); Coal. For Indep. Tech. Rsch. V. Abbott, 706 F. Supp. 3d 673, 683–64 (W.D. Tex. 2023) (citing Jackson, 82 F.4th) (holding that University of North Texas Board of Regents have requisite connection). In Students for Justice, a case challenging the university officials' action to update university speech policies in compliance with a state executive order, the court found that the Texas Education Code's grant of supervisory power to the UT System Board of Regents created the requisite connection to enforcement of the challenged policies to fall under the Ex parte Young exception. 756 F. Supp. 3d at 419 (citing Tex. Educ. Code Ann. § 65.31(c)).

Indeed, the Texas Education Code grants the UT System Board of Regents "authority to promulgate and enforce such other rules and regulations for the operation, control, and management of the university system and the component institutions thereof . . . ." Tex. Educ. Code Ann. § 65.31(c). The statute required the Board Defendants to review and approve UT System institutional policies implementing its required provisions, and they did. Tex. Educ. Code § 51.9315(f)(6); Univ. of Tex. Sys. Bd. Of Regents, *Consent Agenda*

(Aug. 20–21, 2025) at 244, 252–53, https://www.utsystem.edu/sites/default/files/offices/board-of-regents/board-meetings/agendabook-full/8-2025AB.pdf [perma.cc/SU3Z-TF5K]. Accordingly, the Court finds that the Board of Regents Defendants have "the required 'scintilla of enforcement' due to their governing authority" over the UT system. Jackson, 82 F.4th at 367

Similarly, Chancellor Zerwas "reports to and is responsible to the Board of Regents" with "direct line of responsibility for all aspects of the U.T. System's operations," including "acting as executive agent of the Board in implementing Board policies . . . ." Univ. of Tex. at Austin, *Rules and Regulations of the Board of Regents*, Rule 20101 §§ 1, 3.1. Chancellor Zerwas even recommended that the Board approve the revised institutional policies adopting the statute's mandates. Univ. of Tex. Sys. Bd. Of Regents*, Meeting Consent Agenda* at 252 (Aug. 20–21, 2025), https://perma.cc/YU75-CE3P. As such, the Court finds that Chancellor Zerwas retains the required "scintilla of enforcement" of the challenged policies. See also Coal. For Indep. Tech. Rsch. V. Abbott, 706 F.Supp.3d 673, 683 (W.D. Tex. 2023) (holding UNT chancellor lacked sovereign immunity over role in implementing Texas's TikTok ban).

B. Standing

Plaintiffs must also have Article III standing to bring their lawsuit. Defendants argue that Plaintiffs lack standing to sue because they cannot demonstrate the existence of an imminent injury-in-fact. (Dkt. # 9 at 11–13.) As such, Defendants contend that Plaintiffs' complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(h)(3). (Id. at 7.) The Court finds that Plaintiffs have standing to bring suit.

Under section 2 of Article III of the Constitution, federal courts have jurisdiction over a dispute "only if it is a case or controversy. This is a bedrock requirement." Raines v. Byrd, 521 U.S. 811, 818 (1997); see also Miss. State Democratic Party v. Barbour, 529 F.3d 538, 544 (5th Cir. 2008). To have standing, "the plaintiff [must have] personally suffered some actual or threatened injury that can fairly be traced to the challenged action and is redressable by the courts." Doe v. Tangipahoa Parish Sch. Bd., 494 F.3d 494, 496 (5th Cir. 2007). A plaintiff must prove, and not merely assert, standing to sue in order to meet the case or controversy requirement of Article III. Id. at 496–97.

To establish standing, "a plaintiff must show: (1) [she] has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." Hous. Chronicle Publ'g Co. v. City of League City, Tex., 488

F.3d 613, 617 (5th Cir. 2007); see FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990).

Plaintiffs, who invoked the Court's jurisdiction, have the burden of establishing these elements. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Id. However, every plaintiff need not have standing to assert every claim; the Court has jurisdiction over a claim if at least one plaintiff has standing to assert the claim. See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264 (1977).

Furthermore, the Supreme Court has explained that standing requirements are somewhat relaxed in First Amendment cases:

> Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole then would be the loser. Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.

Sec'y of State of Md. v. Joseph H. Munson Co., Inc., 467 U.S. 947, 956 (1984). In Laird v. Tatum, the Supreme Court noted it had, in recent years "found in a number of cases that constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the

exercise of First Amendment rights." 408 U.S. 1, 11 (1972); see, e.g., Baird v. State Bar of Ariz., 401 U.S. 1 (1971); Keyishian v. Bd. of Regents, 385 U.S. 589 (1967); Lamont v. Postmaster Gen., 381 U.S. 301 (1965); Baggett v. Bullitt, 377 U.S. 360 (1964); see also Michael N. Dolich, Alleging A First Amendment "Chilling Effect" to Create A Plaintiff's Standing: A Practical Approach, 43 Drake L. Rev. 175, 176 (1994) ("[A]n official action may abridge First Amendment rights without directly proscribing a protected activity. This is the so-called 'chilling effect.'"). Three circuit courts have noted that "when a challenged statute risks chilling the exercise of First Amendment rights, the Supreme Court has dispensed with rigid standing requirements," Human Life of Wash. Inc. v. Brumsickle, 624 F.3d 990, 1000 (9th Cir. 2010), in a way that "tilt[s] dramatically toward a finding of standing." Cooksey v. Futrell, 721 F.3d 226, 235 (4th Cir. 2013) (quoting Lopez v. Candaele, 630 F.3d 775, 781 (9th Cir. 2010)); see also Missourians for Fiscal Accountability v. Klahr, 830 F.3d 789, 794 (8th Cir. 2016) (favorably quoting Ariz. Right to Life Pol. Action Comm. v. Bayless, 320 F.3d 1002, 1006 (9th Cir. 2003)).

Here, Defendants maintain that Plaintiffs face no imminent threat of injury from enforcement of the statute because Plaintiffs only direct their claims at the statute alone, not the universities' policies. (Dkt. # 9 at 11.) They further contend that any alleged injury is not traceable to any Defendant because no Defendant is charged with enforcement of the policies. (Id.) Defendants

specifically attack the standing of the individual Plaintiffs at UT Austin to challenge the Overnight Expression Ban because UT Austin's adopted policies are not as broad as the statute. (Id.) Thus, the main thrust of Defendants' argument is that Plaintiffs have not suffered an injury-in-fact.

1. Injury in Fact

Plaintiffs bring a pre-enforcement challenge against the statute and the universities' adopted policies. In the context of pre-enforcement challenges, an injury-in-fact is established when the plaintiff: "(1) has an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) his intended future conduct is arguably proscribed by the policy in question, and (3) the threat of future enforcement of the challenged policies is substantial." Speech First, Inc. v. Fenves, 979 F.3d 319, 330 (5th Cir. 2020) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)).

i. Constitutional Interest

First, Plaintiffs' expressions are afforded a constitutional interest. Each Plaintiff engages in expression, and intends to continue engaging in expression, that is protected by the First Amendment. See supra Section III.A.

The First Amendment protects FOCUS's right to worship with fellow students and invite guest ministers to lead worship. See Widmar v. Vincent, 454 U.S. 263, 270–71 (1981) (recognizing use of campus facilities by "religious groups

and speakers”); Molpus v. Fortune, 432 F.2d 916, 917 (5th Cir. 1970) (“The freedoms of speech and assembly guaranteed by the [F]irst and [F]ourteenth amendments to the United States Constitution shall be enjoyed by the students and faculties of the several [state universities]”). The First Amendment protects The Retrograde’s journalism at UT Dallas. Turney v. Lieutenant Driver, 848 F.3d 678, 677–69 (5th Cir. 2017) (holding that the First Amendment’s protection of freedom of the press includes the news-gathering process). The First Amendment protects YAL and Zall Arvandi’s right to advocate their political beliefs and affiliate with outside groups. Speech First, 979 F.3d at 331–32 (holding that university students’ intent to engage in political speech is protected); Smith v. Tarrant Cnty. Coll. Dist., 694 F. Supp. 2d 610, 636–37 (N.D. Tex. 2010) (enjoining prohibition on “cosponsorship” of student events by outside organizations). Lastly, the First Amendment protects the artistic performances of SOUnD and Strings Attached. Collins v. Ainsworth, 382 F.3d 529, 539 (5th Cir. 2004) (“Live musical entertainment . . . is unquestionably speech and expression subject to the guarantees of the First Amendment.”). Plaintiffs allege that they intend to continue to engage in such conduct on campus and at the times prohibited by the policies. (See, e.g., Dkt. # 1 at ¶ 164.) Plaintiffs have therefore met the first element of the inquiry—an intention of engaging in a course of conduct affected with a constitutional interest. See Speech First, 979 F.3d at 330.

ii. Future Conduct Proscribed by Policy

Regarding the second element, Plaintiffs allege that the Overnight Expression Ban and End-of-Term Bans threaten their protected expression. (Id.) They contend that their intended future conduct is "arguably proscribed, or at least arguably regulated, by the University's speech policies." Speech First, 979 F.3d at 330.

FOCUS will violate the Overnight Expression Ban when they host one-on-one meetings before 8 a.m. or remain after worship ends at 10 p.m. to discuss their faith and engage with FOCUS ministers. (Dkt. # 6 at 19.) They will violate the End-of-Term Speaker and Amplified Sound Bans by inviting worship leaders to lead service every week—including the last two weeks of each term—when amplified sound is used. (Id.) The Retrograde will violate the Overnight Expression Ban and End-of-Term Invited Speaker Ban when they report and investigate stories overnight and invite sources for interviews during the final two weeks of the term. (Id. at 20.) YAL and Zall Arvandi will violate the End-of-Term Invited Speaker and Amplified Sound Bans when they invite and host YAL staff to assist in on-campus recruiting and petitioning efforts at the end of each term. (Id. at 21.) YAL and Zall Arvandi will also violate the Overnight Expression Ban when they speak to one another or use the university network to communicate and research their political views after 10:00 p.m. Lastly, Strings Attached and SOUnD

will violate the End-of-Term Amplified Sound and Drum Bans when they hold performances during the last two weeks of the term. (Id. at 22.) They will violate the Overnight Expression Ban when rehearsals extend beyond 10:00 p.m. or members stay late or use the university network to discuss music. (Id.)

iii. Threat of Future Enforcement

Regarding the third element—threat of future enforcement—Defendants argue that Plaintiffs "imagine a host of unreasonable and implausible restrictions on speech" concerning the implementation and application of the policies. (Dkt. # 9 at 14). They specifically attack the standing of Plaintiffs YAL, Zall Arvandi, and SOUnD ("UT Austin Plaintiffs") to challenge the Overnight Expression Ban because UT Austin's adopted policy does not impose a blanket ban on overnight expressive activities. (Id. at 12) (citing Univ. of Tex. at Austin, *Institutional Rules on Student Serv. and Activities*, § 13-304(2)-(3)).

The last element of injury-in-fact for a pre-enforcement challenge is whether "the future threat of enforcement of the [challenged policy] is substantial." Susan B. Anthony List, 573 U.S. at 164. At this point, "[t]he distinction between facial and as-applied challenges bears legal significance." Speech First, 979 F.3d at 334–35 (quoting Speech First, Inc. v. Schlissel, 939 F.3d 756, 766 (6th Cir. 2019)). Whereas "[t]here must be some evidence that [a] rule would be applied to the plaintiff in order for that plaintiff to bring an as-applied challenge," that is not

the case for facial challenges. Id. at 335 (quoting Schlissel, 939 F.3d at 766). Instead, "when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." Id. (quoting N.H. Right to Life PAC v. Gardner, 99 F.3d 8, 15 (1st Cir. 1996)). "[A] plaintiff who mounts a pre-enforcement statutory challenge on First Amendment grounds 'need not show that the authorities have threatened to prosecute him . . .; the threat is latent in the existence of the statute.'" Id. at 336 (quoting Majors v. Abell, 317 F.3d 719, 721 (7th Cir. 2003)).

Therefore, while some of Plaintiffs' more extreme examples of impermissible conduct under the challenged provisions may be unlikely to be enforced, they illustrate the statute's breadth and do not negate its many plausible applications. While Defendants are unlikely to discipline a student for using "an iPhone in an outdoor area of campus" during the last two weeks of the term (Dkt. # 6 at 30), the threat that, for example, SOUnD is prevented from using amplified sound even at moderate levels during their end-of-semester musical performances is a "threat latent in the existence of the statute." Id.

Regarding Defendants' argument that UT Austin's Institutional Rules do not impose a blanket ban, Plaintiffs concede this point. (Dkt. # 19 at 6.)

However, Plaintiffs counter that UT Austin's adopted policy does not, nevertheless, defeat the standing of YAL, Arvandi, and SOUnD. (Id.) The Court agrees.

UT Austin's institutional rules only prohibit expressive activities from 10:00 p.m. to 8:00 a.m. that are disruptive and states that "any expressive activity in the Common Outdoor Area is deemed disruptive if the sound created by the activity can be heard from a University residence . . . ." Univ. of Tex. at Austin, *Institutional Rules on Student Serv. and Activities*, § 13-301(2)(F); see also § 13-304(3). The policies elsewhere state that "such rules cannot ban unobtrusive forms on communication with no potential for disruption even in the specialized environment subject to the localized rule." § 13-304(2).

By that definition, Defendants are correct that none of Plaintiffs' intended expressive activities are likely to be considered "disruptive" and thus prohibited. However, the threat of prosecution arises not only from UT's adopted policy but also from the legislative statute. The statute requires that UT Austin adopt a policy that "prohibit . . . expressive activities on campus between the hours of 10 p.m. and 8 a.m. . . . ." Tex. Educ. Code § 51.9315(f)(2)(F). Thus, it is the legislature's mandate that UT Austin adopt a complying policy that creates uncertainty as to future enforcement. As adopted, UT Austin is not currently in compliance with the statute, and at any point could change or be instructed to change its policies to comply with the law. "University officials' disavowals of

any future intention to enforce the policies contrary to the First Amendment are compatible with, and simply reinforce, the open-ended language in those policies. The difficulty with such disavowals is that regulations governing 'rude,' 'uncivil,' 'harassing,' or 'offensive' speech can in fact cover speech otherwise protected by the First Amendment." Speech First, 979 F.3d at 337. Similarly, a policy that gives officials discretion to limit "disruptive" speech is likely to limit speech otherwise protected by the First Amendment.

Furthermore, UT Austin's awareness that its policies must be applied narrowly adds to the credible threat that the UT Austin policy poses to free expression. See Univ. of Tex. at Austin, *Institutional Rules on Student Serv. and Activities*, §13-300. In Speech First, UT Austin's Institutional Rules defined verbal harassment with the caveat that verbal harassment "'should be interpreted as narrowly as possible to preserve its constitutionality.'" 979 F.3d at 337. The Fifth Circuit, in finding that there was a substantial threat of future enforcement of the verbal harassment policy, found that this caveat "implies that the University will protect and enforce its verbal harassment policy as far as possible, but the distance to that horizon is unknown by the University and unknowable to those regulated by it." Id. at 338. Similarly, Subchapter 13-300 of the UT Austin Institutional Rules—the same chapter adopting each of the statute's mandates—states that:

> Reasonable and nondiscriminatory "time, place, and manner" rules generally control over the rights of free speech guaranteed in this

> Chapter. But even "time, place, and manner" rules are subject to the constitutional right of free speech. Accordingly, such rules must be viewpoint neutral and cannot regulate speech more restrictively than they regulate other activities that cause the problems to be avoided by the rule, or more than is reasonably necessary to serve their purpose. Such rules cannot ban unobtrusive forms of communication with no potential for disruption even in the specialized environment subject to the localized rule. Thus, for example, means of silent expression or protest confined to the speaker's immediate person, such as armbands, buttons, and T-shirts, are nearly always protected because they are rarely disruptive in any environment.

Univ. of Tex. at Austin, *Institutional Rules on Student Serv. and Activities*, § 13-304(2).

Section 13-301(3) is similarly ambiguous, stating that:

> Potentially disruptive events can often proceed without disruption if participants, administrators, and law enforcement officials cooperate to avoid disruption without stopping the event. In cases of marginal or unintentional disruption, administrators and law enforcement officials should clearly state what they consider disruptive and seek voluntary compliance before stopping the event or resorting to disciplinary charges or arrest.

Id. at § 13-301(3). Not only is this section vague, but it vests discretionary authority in administrators and law enforcement to determine what is "disruptive." These policies do little to clarify for students what expressive activity will or will not be deemed disruptive, and thus prohibited, in the future. Granting administrators and law enforcement discretion to determine what qualifies as "disruptive" creates a substantial risk that the policy will be weaponized against speech with which they disagree, irrespective of any actual disruption. For these

reasons, the Court finds that although UT Austin adopted a narrower interpretation of the Overnight Expression Ban, this fact does not destroy YAL, Arvandi, and SOUnD's standing to challenge enforcement of this provision.

Lastly, Defendants cannot guarantee that UT Austin will not later amend its policies to comply with the statute. In Speech First v. Fenves, this Court held that the plaintiffs had not established a credible threat of enforcement to create standing. 384 F. Supp. 3d 732, 743 (W.D. Texas 2019). While the case was pending appeal, UT Austin amended its policies to address some of the deficiencies attacked in the lawsuit and argued before the Fifth Circuit that it's policy amendments render moot appellant's challenges to the original policies. Speech First, Inc. v. Fenves, 979 F.3d 319, 327 (5th Cir. 2020). The Fifth Circuit disagreed, finding that Fenves had not shown to an absolute certainty that the original policies would not be reinstituted, such as by a sworn affirmative statement. Id. at 328–29. Here, even if university officials wanted to, they could not provide a sworn affirmative statement of their intent to abandon the policies because they are required by law to enforce them.

Thus, the existence of the UT Austin policies suffices to establish that the threat of future enforcement is substantial. The threat of future enforcement of the End-of-Term Bans at both universities and the Overnight Expression Ban at UT

Dallas is even more substantial given their broad and vague language.[3] Having satisfied each element of a pre-enforcement injury-in-fact, Plaintiffs have established an injury.

2. Causation and Redressability

Defendants argue that the alleged injuries are not traceable to any Defendant, "none of whom is charged with enforcement of UT Austin or UT Dallas rules." (Dkt. # 9 at 11.) The Fifth Circuit "has acknowledged that our Article III standing analysis and Ex Parte Young analysis 'significantly overlap.'" City of Austin v. Paxton, 943 F.3d 993, 1002 (5th Cir. 2019). Having already discussed Defendants' roles in the enforcement of the statute and the universities' implementing policies, the Court finds that Plaintiffs' injuries are traceable to Defendants and thus would be redressed by injunctive relief prohibiting Defendants from enforcing the statute's mandatory prohibitions. Thus, the Court finds that Plaintiffs have established Article III standing, especially under

[3] Defendants do not contest that FOCUS, The Retrograde, Strings Attached, and YAL have standing to challenge UT Dallas's policies. They also do not contest that YAL, Arvandi, and SOUnD have standing to challenge UT Austin's End-of-Term Bans. (See generally Dkt. # 9.) Regardless, the Court has a duty to determine whether standing exists, even if not raised by the parties. Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 294 (5th Cir. 2001). However, given UT Dallas's verbatim adoption of all the statute's Bans and the Court's lengthy discussion of Plaintiff's standing to challenge UT Austin's Overnight Expression Ban, which is arguably the most lenient of all the universities' adopted policies, the Court finds that it has sufficiently discussed, and dispensed with, any standing issues.

the more relaxed standing requirements in First Amendment cases. See Sec'y of State of Md. v. Joseph H. Munson Co., Inc., 467 U.S. 947, 956 (1984).

C. Ripeness

At the hearing, Defendants raised the argument that the case was not yet ripe for judicial review. They contend that until Plaintiffs know how the universities are going to enforce the statute and policies, all the alleged injuries are speculative. In support, Defendants argue that Plaintiffs ignore the preamble and savings clause of the statute, which states that "[i]t is the policy of this state and the purpose of this section to protect expressive rights of persons guaranteed by the constitutions of the United States and of this state . . ." and that "[n]othing in this section may be construed to limit or infringe on a person's right to freedom of speech or expression protected by the First Amendment to the United States Constitution . . . ." Tex. Educ. Code §§ 51.9315(b); 51.9315(l). The statute also states that an institution may not take action against a student organization based on viewpoint discrimination. §§ 51.9315(g)-(h). Because the statute itself directs universities to enforce the statute in a manner that protects free speech, Defendants argue that the case is not ripe until the universities have demonstrated how they will apply and enforce the statute's mandates.

However, the statute's preamble and savings clause instructing universities to uphold the First Amendment does not change the fact that the statute

then requires universities to adopt policies that violate those very constitutional protections. The Court cannot trust the universities to enforce their policies in a constitutional way while Plaintiffs are left in a state of uncertainty, chilling their speech for fear that their expressive conduct may violate the law or university policies. See U.S. v. Stevens, 559 U.S. 460, 480 (2010) ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."). And, as discussed, university officials can not provide an affidavit of their intent to abandon or modify the policies to better protect the First Amendment because to do so would run contrary the statute's mandates. See Speech First, 979 F.3d at 327. Furthermore, the Court has already found substantial threat of enforcement despite similar language within the universities' policies urging officials to regulate "disruptive" speech in a constitutional way.

Having found that Plaintiffs are likely to succeed in establishing standing and jurisdiction, the Court will now proceed with a discussion of the constitutionality of the challenged provisions.

D. Constitutionality of the Challenged Provisions

First, the Court must determine which level of scrutiny to apply. If the law at issue is content-based, it is subject to strict scrutiny, and if it is content-neutral, it is subject to the more lenient intermediate scrutiny. See Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 164–166 (2015).

1. Level of Scrutiny

The challenged provisions of the statute apply to "expressive activities," which is defined as "any speech or expressive conduct protected by the First Amendment to the United States Constitution . . . ." and expressly excludes "commercial speech" from its definition. Tex. Educ. Code § 51.9315(2). The Plaintiffs contend that this differentiation between commercial and non-commercial speech constitutes a content-based restriction. (Dkt. # 6 at 14–15, 21–22.) Defendants argue that the restrictions are content-neutral and are reasonable time, place, and manner restrictions. (Dkt. # 9 at 9–10.)

A law may be content-based on its face or when the purpose and justification for the law are content-based. Reed, 576 U.S. at 163. "Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose." Id. The statute's restrictions are unique because it gives more protection to commercial speech. See Matthews v. Town of Needham, 764 F.2d 58, 61 (1st Cir. 1985) ("[The bylaw] is particularly surprising inasmuch as [it] permits several forms of commercial speech–speech consistently given less protection than noncommercial speech."). As such, there is little binding authority directly on point. However, the Supreme Court has previously invalidated a city ordinance that afforded greater protection to commercial speech by creating a

broad exception to an advertisement restriction for onsite commercial advertisements but no similar exception for non-commercial speech. Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 513–15 (1981). The Court stated, "although the city may distinguish between the relative value of different categories of commercial speech, the city does not have the same range of choice in the area of noncommercial speech to evaluate the strength of, or distinguish between, various communicative interests." Id. at 514. The Court goes on to reject the argument that the ordinance is a reasonable time, place, and manner restriction. Id. at 515–16.

Here, the statute's definition of expressive activities, as adopted in the universities' policies, creates an exception to the restrictions for commercial speech but no similar exception for any non-commercial speech (except that which is traditionally lesser-protected, such as incitement or defamation). Defendants argue that both universities' policies expressly restrict commercial speech by imposing limits on solicitation in a separate section, and thus neither policy favors nor disfavors speech based on its content. (Dkt. # 9 at 14) (citing Univ. of Tex. at Austin, *Institutional Rules on Student Serv. and Activities*, § 13-205; Univ. of Tex. at Dallas, *Handbook of Operating Procedures*, UTDSP5001(B)(8)). However, a solicitation restriction in a separative provision does not change the fact that the Bans broadly apply to all non-commercial but not commercial speech. The fact

remains that to abide by the statute and university policies, a student must first determine if their activity or speech is commercial or non-commercial.

Even if the restrictions were facially content-neutral, a quick recounting of the statute's history and background also suggests that "they were adopted by the government 'because of disagreement with the message [the speech conveys].'" Reed, 576 U.S. at 163 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)). In 2024, protests regarding the Israel-Gaza conflict at UT Austin (and many universities across the country) turned violent when law enforcement was dispatched and arrested many student demonstrators. Texas Governor Abbott urged the arrest and expulsion of protestors, calling the protests "antisemitic." Greg Abbott (@GregAbbott_TX), *Tweet* (July 31, 2024, 2:15 PM), https://x.com/GregAbbott_TX/ status/178323722 9252346194 [https://perma.cc/UJ7A-MTRT]. The statute's "Sponsor's Statement of Intent" confirms that the bill is in response to these protests. Tex. House Comm. on Higher Educ., *Bill Analysis*, S.B. 2972, 89th Leg., Reg. Sess. (2025). It states:

> In April 2024, universities across the nation saw massive disruption on their campus. Protesters erected encampments in common areas, intimidated other students through the use of bullhorns and speakers, and lowered American flags with the intent of raising the flag of another nation. S.B. 2972 seeks to provide clear rules for protests on college campuses and to assist institutions in managing members of the public who seek to overtake their campus.

Id. This strong reaction of Governor Abbott and other lawmakers, combined with the statute's own statement of intent, indicates that the statute was "because of disagreement with the message [the speech conveys]." Ward, 491 U.S. at 791. As such, the statute is content-based both on its face and by looking to the purpose and justification for the law. See Reed, 576 U.S. at 163.

Given that the Overnight Expression Ban and End-of-Term Bans all rely on the same definition of "expressive activities" and are therefore content-based, the Court will apply strict scrutiny throughout. To survive strict scrutiny, the government bears the burden of showing that the restrictions are "the least restrictive means of achieving a compelling state interest." McCullen v. Coakley, 573 U.S. 464, 478 (2014). Because the Bans were adopted by the universities to achieve the same overarching goal, the Court will first address whether there is a compelling government interest before separately addressing whether each of the Bans constitute the least restrictive means of achieving that interest.

2. Compelling Government Interest

The Committee Report states that "S.B. 2972 seeks to guarantee the rights of students and university employees to engage in expressive activities while setting clear boundaries to prevent disruption and ensure community safety by making certain revisions to state law relating to protected expression on the

campuses of public institutions of higher education." Tex. H. Comm. on Higher Educ., *Bill Analysis*, S.B. 2972, 89th Leg., Reg. Sess. (Tex. 2025). The Defendants argue that "[t]he interest of the government in having students in an environment conducive to learning is unrelated to free expression," and that the policies "directly promote the State's important interest in maintaining effective institutions of higher education." (Dkt. # 9 at 14, 15.)

The Court agrees that the State has a compelling interest in maintaining "'comprehensive authority . . . consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools.'" Healy v. James, 408 U.S. 169, 180 (1972) (quoting Tinker v. Des Moines Indep. Comm. Sch. Dist., 393 U.S. 503, 507 (1969)). However, "the precedents of this Court leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large." Id. Therefore, Defendants bear the burden of showing that the Bans are the least restrictive means of achieving that interest.

3. Least Restrictive Means

Defendants must demonstrate that the Overnight Expression Ban and End-of-Term Bans are the least restrictive means of achieving a conducive and safe learning environment. Because Plaintiffs' overbreadth claims for each provision are closely related to the arguments on least restrictive means and narrow tailoring,

the Court finds it appropriate to address the overbreadth claims in the same section. While Plaintiffs also bring a vagueness challenge against the statute, the Court does not reach a determination on this question as it finds that Plaintiffs are likely to succeed in establishing the unconstitutionality of each of the provisions on other grounds. (See Dkt. # 1 at 56.)

First, the Court addresses the overarching problems that plague both the Overnight Expression Ban and End-of-Term Bans. All the Bans are limited to "expressive activities," which does not include commercial speech. But Defendants betray the stated goal of preventing disruption and ensuring community safety by failing to expand the Bans to commercial speech. "Such '[u]nderinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint.'" Nat'l Inst. Of Family & Life Advocs. v. Becerra, 585 U.S. 755, 774 (2018) (quoting Brown v. Ent. Merchants Ass'n, 564 U.S. 786, 802 (2011)). By that definition, students can engage in commercial speech that would otherwise violate the Bans simply because it is not "expressive activities," no matter how disruptive.

Second, if the goal of the Bans is to prevent disruption, then said "disruptive" conduct is already covered by city ordinances and the existing policies of each university. See, e.g. Austin, Tex., Code of Ordinances ch. 9-2 (2025)

(regulating noise and amplified sound); Univ. of Tex. at Austin, *Institutional Rules on Student Serv. and Activities*, § 13-800 (regulating amplified sound); Univ. of Tex. at Dallas, *Handbook of Operating Procedures*, UTDSP5001(H) (regulating amplified sound). This further demonstrates the overbreadth of the Bans and the lack of narrow tailoring to conduct that is actually disruptive or poses a danger to the community. Any disruptive or dangerous activity would almost certainly be prohibited under existing city and university rules, and thus the Bans impermissibly expand the Defendants' ability to go after protected speech.

Lastly, the ambiguity of the Bans only adds to their impermissible breadth. For example, the statute itself does not define "amplified sound" besides to prohibit the use of a "*device* to amplify sound." Tex. Educ. Code § 51.9315(f)(2)(B)(iii) (emphasis added). The universities, however, do provide a definition of "amplified sound": "sound whose volume is increased by any electric, electronic, mechanical, or motor-powered means. Shouting, group chanting, and acoustic musical instruments are exempt from this definition and are not subject to the special rules on amplified sound, but are subject to general rules on disruption." Univ. of Tex. at Austin, *Institutional Rules on Student Serv. And Activities* § 13-304(1); Univ. of Tex. at Dallas, *Handbook of Operating Procedures,* UTDSP5001(A)(3)(3). So, a person shouting at full volume would not be covered by the End-of-Term Amplified Sound Ban, but a person speaking into a

microphone at a reasonable level would. Although the university policies state that shouting is still "subject to general rules on disruption," this provides no further clarity. See id. Not only does the policy ambiguously reference general rules with no citation, but the entire statute is also already subject to the universities' general rules on disruption, as the Court has discussed. The general rules on disruption also suffer from their own issues of ambiguity, as they grant university officials and law enforcement discretion to decide what is disruptive. Univ. of Tex. at Austin, *Institutional Rules on Student Serv. and Activities*, § 13-301(3); Univ. of Tex. at Dallas, *Handbook of Operating Procedures,* UTDSP5001(C)(10)(3). This combination of ambiguous language and discretionary authority adds to the risk that the Bans will be impermissibly applied to limit protected speech.

i. Overnight Expression Ban

Defendants have not met their burden of demonstrating that the Overnight Expression Ban is the least restrictive means available. Plaintiffs argue that the restriction is simultaneously underinclusive and overinclusive, doing little to prevent disruption of the learning environment because it does not target disruption during class hours but only after classes have ended. (Dkt. # 6 at 24.) Defendants do not put forth any argument in response. (See generally Dkt. # 9 at 13–16) (addressing only the End-of-Term Bans.)

As discussed, the Overnight Expression Ban is underinclusive because students may engage in commercial speech between the hours of 10:00 p.m. and 8:00 a.m., even if such speech is disruptive, but not any expressive non-commercial speech. See Tex. Educ. Code § 51.9315(f)(2)(F).

The Overnight Expression Ban is simultaneously overinclusive by banning *all* expressive activities for ten hours a day, with no distinction made based on the level of disruption or location of the speech on campus. See id. If the state and Defendants' goal is to prevent disruption and ensure community safety, then banning all expressive activities between the hours of 10:00 p.m. and 8:00 a.m. is by no means the least restrictive means of achieving that goal. Rather than banning only large gatherings of people, or gatherings that produce a certain decibel of noise, the state decided to ban *all* expressive activities. Plaintiffs are correct that by the statute's plain meaning, this would include The Retrograde's reporting, UTD FOCUS's early-morning prayer, YAL members' political discussions, Strings Attached's non-disruptive performances and rehearsals, or SOUnD members' after-hours discussions of political topics. (See Dkt. # 6 at 27.)

The Court again acknowledges that UT Austin's adoption of the statute's Overnight Expression Ban is narrower. Rather than adopting the statute's language verbatim, as UT Dallas did, UT Austin instead limits disruptive activities and states "any expressive activity in the Common Outdoor Area is deemed

disruptive if the sound created by the activity can be heard from a University residence after 10:00 p.m. and before 8:00 a.m. the following morning." Univ. of Tex. at Austin, *Institutional Rules on Student Serv. and Activities*, § 13-301(2)(F); see also § 13-304(3). However, UT Austin still singles out expressive activity and thus is underinclusive of commercial speech. Furthermore, giving administrators discretion to decide what is prohibited "disruptive" speech gives the school the ability to weaponize the policy against speech it disagrees with. As an example, the Overnight Expression Ban would, by its terms, prohibit a sunrise Easter service. While the university may not find this disruptive, the story may change if it's a Muslim or Jewish sunrise ceremony. The songs and prayer of the Muslim and Jewish ceremonies, while entirely harmless, may be considered "disruptive" by some.

The First Amendment does not have a bedtime of 10:00 p.m. The burden is on the government to prove that its actions are narrowly tailored to achieve a compelling governmental interest. See Reed, 576 U.S. at 171. It has not done so.

It is for those same reasons that Defendants would be unlikely to satisfy even the lesser burden of intermediate scrutiny as applied to content-neutral time, place, and manner restrictions. "For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not 'burden substantially more speech

than is necessary to further the government's legitimate interests.'" McCullen, 573 U.S. at 486 (quoting Ward, 491 U.S. at 799). Though such regulation "'need not be the least restrictive or least intrusive means of' serving the government's interests," the government "'may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.'" Id. (quoting Ward, 491 U.S. at 799). Even under this lesser burden, the Overnight Expression Ban is not narrowly tailored because it bans *all* expressive activity for ten hours a day.

To illustrate, Plaintiffs point to two separate district opinions out of Maryland and Indiana. (Dkt. # 6 at 25–26.) The Indiana district court enjoined a university's prohibition of protests between 11:00 p.m. and 6:00 a.m. unless students obtained a permit or the activity was spontaneous in response to a "newsworthy occurrence," holding that the policy failed intermediate scrutiny's narrow tailoring requirement because the policy applied to gatherings of all sizes. Wirtshafter v. Trs. of Ind. Univ., 784 F. Supp. 3d 1091, 1098–99, 1107 (S.D. Ind. 2025). The district court in Maryland enjoined a university from banning all student-sponsored events for one day to prevent a pro-Palestine group from holding a demonstration in a reserved event space. Univ. of Maryland Students for Just. in Palestine v. Bd. of Regents of Univ. Sys. of Maryland, No. CV 24-2683 PJM, 2024 WL 4361863, at *1, 7 (D. Md. Oct. 1, 2024). The court held that such

action was not narrowly tailored and did not leave open adequate alternative channels of communication. Id. at 10–11.

While these cases are not binding, they remain persuasive as they are analogous to the present facts. Given that both examples involve university policies and actions that are even less restrictive than those of Defendants, the Court finds that Defendants similarly fail to demonstrate that the Overnight Expression Ban is narrowly tailored to achieve the government's goals. For the reasons provided above, as well as those discussed in the Court's jurisdictional analysis, see supra Section I(B)(1)(iii), the Court finds that Plaintiffs are likely to succeed on their First Amendment claims against the Overnight Expression Ban.

Plaintiffs also bring an overbreadth claim against the Overnight Expression Ban. (Dkt. # 1 at 53.) Under the overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." United States v. Williams, 553 U.S. 285, 292 (2008). A plaintiff may prevail on an overbreadth challenge by demonstrating that there is "a realistic danger that the statute . . . will significantly compromise recognized First Amendment protections of [third] parties." N.Y. State Club Ass'n, Inc. v. City of New York, 487 U.S. 1, 11 (1988) (quoting City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 801 (1984)). To be unconstitutional under the overbreadth doctrine, a statute's overbreadth must be substantial. See id. A statute is substantially overbroad if "a

substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Ams. for Prosperity Found. v. Bonta, 594 U.S. 595, 615 (2021) (quoting United States v. Stevens, 559 U.S. 460, 473 (2010)). The Court finds that the Plaintiffs are likely to succeed in showing that the Overnight Expression Ban is unconstitutionally overbroad for the same reasons it is not the least restrictive means available.

ii. End-of-Term Bans

Defendants fail to establish that the End-of-Terms Bans are the least restrictive means available for many of the same reasons. The End-of-Term Bans all suffer the same under-inclusivity problem by exempting all commercial speech, no matter how disruptive. And the End-of-Term Bans all suffer the same over-inclusivity problem by failing to make any specifications or limitations on the type, location, or time of the sound/speaker, such as by limiting the expressive conduct to only certain areas of campus or only banning sound above a certain decibel. Furthermore, although the End-of-Term Bans are limited to the last two weeks of each semester or term, Plaintiffs allege that this could amount to a total of 98 days of the year at each campus, which is a significant amount. [4] (Dkt. # 6 at 15.) The Court will address the individual shortcomings of each End-of-Term Ban in turn.

[4] Plaintiffs explain that because each institution's academic calendar has three semesters consisting of different sessions or terms, each academic term with a two-week blackout period would total 98 days each year. (Dkt. # 6 at 15.) However,

First, Defendants fail to show that the End-of-Term Invited Speaker Ban is the least restrictive means available. It is not limited to speaker events that disrupt academic activities or other end-of-term events. See Tex. Educ. Code § 51.9315(f)(2)(B)(ii). It is not limited to speakers using amplified sound, or speakers presenting in academic and residential buildings, or speakers presenting during class and exam times. See id. By its terms, it applies to all speakers, at all hours of the day, at any location on campus. For example, such a broad restriction would even restrict FOCUS from inviting ministers to lead worship services during the last two weeks of each term.

Second, Defendants fail to show that the End-of-Term Amplified Sound Ban is the least restrictive means available. It is not limited to uses of amplified sound that exceeds a reasonable decibel level, uses within certain proximities to academic activities or residential areas[5], or uses at certain hours. See Tex. Educ. Code § 51.9315(f)(2)(B)(iii). While other university policies may

---

Plaintiffs do not contend with the fact that UT Austin's adoption of the End-of-Term provisions specifies that the bans apply "[d]uring the week of final exams and the week immediately preceding final exams . . . ." § 13-105(2)(D). While it's possible that final exams occur more than three times a year (fall, spring, and summer semester), this would only amount to 36 days a year, rather than 98. Regardless, given that neither party has clarified this matter before the Court and Defendants did not respond to Plaintiff's contention that the End-of-Term Bans constitute 98 days out of the year (see Dkt. # 9), the Court does not base its conclusion on the length of the End-of-Term Bans.

[5] The Court notes that UT Austin's policy limits the use of percussive instruments only in Common Outdoor Areas of campus. See supra note 2.

have more specific restrictions on the use of amplified sound or percussive instruments, the breadth of this provision would supersede the narrower restrictions. See, e.g., Univ. of Tex. at Austin, *Institutional Rules on Student Serv. and Activities*, §13-800.

The statute separately prohibits amplified sound "while engaging in expressive activities on campus during class hours" that "(i) intimidate others; (ii) interfere with campus operations; or (iii) interfere with an institution employee's or a peace officer's lawful performance of a duty." Tex. Educ. Code § 51.9315(f)(2)(A). Plaintiffs argue that "those criteria only underscore that the End-of-Term Amplified Sound Ban could be substantially more narrowly tailored, and thus lacks such tailoring." (Dkt. # 1 at 48.) The Court agrees. If the goal is to prevent disruption of students preparing for finals, then the provision should be restricted to target only the use of amplified sound that is actually disruptive. See also Saia v. People of State of New York, 334 U.S. 558, 560 (1948) (finding a statute unconstitutional because it was not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound to which they must be adjusted).

Third, Defendants fail to show that the End-of-Term Drum Ban is the least restrictive means available. Similar to the End-of-Term Amplified Sound Ban, the Drum Ban is not limited to uses of percussive instruments that exceed a

reasonable decibel level, uses within certain proximities to academic activities or residential areas, or uses at certain hours. See Tex. Educ. Code § 51.9315(f)(2)(B)(iv). Without these specifications, the provision is not the least restrictive means available.

For these reasons, the Court finds that Plaintiffs are likely to succeed on the merits of their First Amendment challenges to the End-of-Term Bans. The End-of-Term Bans would be unlikely to survive even the lesser burden of intermediate scrutiny because they are not narrowly tailored. Plaintiffs also bring an overbreadth claim against the End-of-Term Bans. (Dkt. # 1 at 55.) Once again, the Court finds that the Plaintiffs are likely to succeed in showing that the End-of-Term Bans are unconstitutionally overbroad for the same reasons they are not the restrictive means available.

II. Irreparable Harm

Plaintiffs are likely to suffer irreparable harm in the absence of an injunction. To show irreparable harm "[t]he plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." Humana, Inc. v. Avram A. Jacobson, M.D., P.A., 804 F.2d 1390, 1394 (5th Cir. 1986).

Plaintiffs will incur irreparable harm through violations of their First Amendment rights. "The loss of First Amendment freedoms, for even minimal

periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). Because the Court concluded that the statute likely violates the First Amendment, Plaintiffs have established that they would suffer irreparable harm if denied a preliminary injunction.

III. Balance of Harms and Public Interest

"Where constitutional rights are concerned, 'enforcement of an unconstitutional law is always contrary to the public interest[.]'" Fund Texas Choice v. Paxton, 658 F. Supp. 3d 377, 415 (W.D. Tex. 2023) (quoting Gordon v. Holder, 721 F.3d 638, 653 (D.C. Cir. 2013)). "Injunctions protecting First Amendment freedoms are always in the public interest." Opulent Life Church v. City of Holly Springs, Miss., 697 F.3d 279, 298 (5th Cir. 2012) (quoting Christian Legal Soc'y v. Walker, 453 F.3d 853, 859 (7th Cir. 2006)). The Fifth Circuit recently reaffirmed this principle, explicitly noting that although the government "suffers a form of irreparable injury" when it is enjoined from enforcing its statutes, it likewise has no "interest in enforcing a regulation that violates federal law." All. for Hippocratic Med. v. U.S. Food & Drug Admin., 78 F.4th 210, 251 (5th Cir. 2023) (quoting Maryland v. King, 567 U.S. 1301, 1303 (2012)), rev'd and remanded 602 U.S. 367 (2024); see also Book People, Inc. v. Wong, 91 F.4th 318, 341 (5th Cir. 2024). As the Fifth Circuit noted, when assessing the state's interest in a law that conflicts with federal statutes or the Constitution, the

"government/public-interest analysis collapses with the merits." All. for Hippocratic Med., 78 F.4th at 251. Thus, because the contested provisions of the statute are likely unconstitutional, Defendants cannot claim an interest in its enforcement.

IV. Waiver of Bond Requirement

Because the Court will issue the preliminary injunction, it must determine whether Plaintiffs must post bond. "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "[T]he amount of security required pursuant to Rule 65(c) 'is a matter for the discretion of the trial court . . . .'" Kaepa, Inc. v. Achilles Corp., 76 F.3d 624, 628 (5th Cir. 1996) (quoting Corrigan Dispatch Co. v. Casa Guzman, 569 F.2d 300, 303 (5th Cir. 1978)).

"Indeed, it has been held that the court may dispense with security altogether if the grant of an injunction carries no risk of monetary loss to the defendant." Id. Likewise, the Fifth Circuit has ruled that "the court 'may elect to require no security at all.'" Id. at 628 (quoting Corrigan Dispatch, 569 F.2d at 303). Other courts have found that no security, or only nominal security, would be required for violations of First Amendment rights. See Abdullah v. Cnty. of St.

Louis, 52 F. Supp. 3d 936, 948 (E.D. Mo. 2014) ("Given the constitutional issues at stake here[,] [including under the First Amendment,] and taking into account plaintiff's status as employee of a not-for-profit entity, I will set the bond in the amount of $100."); United Food & Com. Workers Loc. 99 v. Brewer, 817 F. Supp. 2d 1118, 1128 (D. Ariz. 2011) ("There is no realistic likelihood that Defendants will be harmed by being enjoined from enforcing a law that constitutes viewpoint discrimination in violation of the First Amendment on its face. No bond will be required.").

The Court finds that there is a lack of any real harm to Defendants by being unable to enforce an unconstitutional law and there are significant First Amendment issues successfully raised by Plaintiffs. Accordingly, the Court will waive the bond requirement.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion for a Preliminary Injunction (Dkt. # 6). It is therefore **ORDERED** that Defendants, and their officers, agents, servants, employees, and those persons in active concert or participation with them, are hereby **ENJOINED** and prohibited from:

1. Enforcing Tex. Educ. Code §§ 51.9315(f)(2)(B)(ii) ("End-of-Term Invited Speaker Ban"), 51.9315(f)(2)(B)(iii) ("End-of-Term Amplified

Sound Ban"), 51.9315(f)(2)(B)(iv) ("End-of-Term Drum Ban"), or 51.9315(f)(2)(F) ("Overnight Expression Ban") as applied to Plaintiffs' expression.

2. Enforcing the End-of-Term Invited Speaker Ban, End-of-Term Amplified Sound Ban, End-of-Term Drum Ban, or Overnight Expression Ban against any "expressive activities" (as defined in Tex. Educ. Code § 51.9315(a)(2)) at The University of Texas at Austin or The University of Texas at Dallas.

It is further **ORDERED** that the UT System Board Defendants, and their officers, agents, servants, employees, and those persons in active concert or participation with them, are hereby preliminarily **ENJOINED** and prohibited from:

3. Enforcing the End-of-Term Invited Speaker Ban, End-of-Term Amplified Sound Ban, End-of-Term Drum Ban, or Overnight Expression Ban, against any "expressive activities" (as defined in Tex. Educ. Code § 51.9315(a)(2)) at any institution within the University of Texas System.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, October 14, 2025.

David Alan Ezra
Senior United States District Judge

## Certificate of Service

I certify that on March 25, 2026, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon all counsel of record.

S/Daniel Ortner
Daniel Ortner