No. 25-50914

# In the United States Court of Appeals for the Fifth Circuit

---

FELLOWSHIP OF CHRISTIAN UNIVERSITY STUDENTS AT THE UNIVERSITY OF TEXAS AT DALLAS; RETROGRADE NEWSPAPER; YOUNG AMERICANS FOR LIBERTY, INCORPORATED; ZALL ARVANDI; TEXAS SOCIETY OF UNCONVENTIONAL DRUMMERS; STRINGS ATTACHED,

*Plaintiffs-Appellees,*

v.

KEVIN P. ELTIFE, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; JANIECE LONGORIA, IN HER OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; JAMES C. (RAD) WEAVER, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM ALSO KNOWN AS RAD; NOLAN PEREZ, M.D., IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; ROBERT P. GAUNTT, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; CHRISTINA MELTON CRAIN, ESQ., IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; JODIE LEE JILES, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; KELCY L. WARREN, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM; JOHN M. ZERWAS, M.D., IN HIS OFFICIAL CAPACITY AS CHANCELLOR OF THE UNIVERSITY OF TEXAS SYSTEM; JAMES E. DAVIS, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNIVERSITY OF TEXAS AT AUSTIN; PRABHAS V. MOGHE, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNIVERSITY OF TEXAS

AT DALLAS; STUART W. STEDMAN, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM,

Defendants-Appellants.

————

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

————

## APPELLANTS' REPLY BRIEF

————

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

WILLIAM R. PETERSON
Solicitor General

DANIEL M. ORTNER
Assistant Solicitor General
Daniel.Ortner@oag.texas.gov

*Counsel for Defendants-Appellants*

————

# TABLE OF CONTENTS

Page

Table of Authorities ..................................................................................iii

Argument in Reply ...................................................................................... 1

I.  Plaintiffs Lacked Standing to Enjoin Enforcement of S.B. 2972. .................2

    A.  Plaintiffs only sought a preliminary injunction against enforcement of S.B. 2972. .................................................................2

    B.  Plaintiffs lack standing because S.B. 2972 does not regulate them. ......3

        1.  Plaintiffs are not injured by S.B. 2972. ..........................................4

        2.  Plaintiffs cannot show traceability or redressability......................8

    C.  The First Amendment context does not alter the standing analysis.............................................................................................9

II.  Plaintiffs' Request for Preliminary Injunction is Barred by Sovereign Immunity. .................................................................................. 12

    A.  Defendants do not enforce S.B. 2972. ............................................... 12

    B.  Defendants also do not enforce the campus-specific policies of UT Austin and UT Dallas. .................................................................. 14

III.  The District Court Erred by Applying Strict Scrutiny. ............................ 19

IV.  In Light of the District Court's Erroneous Application of Strict Scrutiny, the Court Must Reverse and Remand. .....................................22

V.  The Preliminary Injunction Is Overbroad. .............................................. 23

Conclusion............................................................................................... 25

Certificate of Compliance ........................................................................26

# Table of Authorities

**Page(s)**

**Cases:**

*A & R Eng'g & Testing, Inc. v. Scott*,
  72 F.4th 685 (5th Cir. 2023) .................................................................... 6, 8, 9

*Air Evac EMS, Inc. v. Texas Department of Insurance, Division of
  Workers' Compensation*,
  851 F.3d 507 (5th Cir. 2017) ....................................................................... 13

*Book People, Inc. v. Wong*,
  91 F.4th 318 (5th Cir. 2024) .................................................. 11, 12, 14, 18

*Burnett v. Fallin*,
  No. CIV-17-385-M, 2018 WL 4376513 (W.D. Okla. June 5, 2018) .................... 18

*California v. Texas*,
  593 U.S. 659 (2021)....................................................................... 4, 6, 8, 9

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
  447 U.S. 557 (1980) ....................................................................................... 21

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
  596 U.S. 61 (2022) .........................................................................................20

*City of Cincinnati v. Discovery Network, Inc.*,
  507 U.S. 410 (1993) ....................................................................................... 21

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)........................................................................................ 10

*Coalition for Independent Technology Research v. Abbott*,
  706 F. Supp. 3d 673 (W.D. Tex. 2023)......................................................... 16

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ..........................................................................................6

*Ex parte Young*,
  209 U.S. 123 (1908) ......................................................................... 14, 18, 19

*Federal Election Commission v. Cruz*,
  596 U.S. 289 (2022)..........................................................................................8

*First Choice Women's Resource Centers, Inc. v. Davenport*,
  146 S. Ct. 1114 (2026) ............................................................................. 11, 12

*Forsyth County, Ga. v. Nationalist Movement*,
  505 U.S. 123 (1992)........................................................................................24

*Franciscan All., Inc. v. Becerra*,
  47 F.4th 368 (5th Cir. 2022)............................................................................7

*Hartzell v. S.O.*,
   672 S.W.3d 304 (Tex. 2023) ...............................................................6

*Haverkamp v. Linthicum*,
   6 F. 4th 662 (5th Cir. 2021) ...................................................... 14-15

*Healthy Vision Association v. Abbott*,
   138 F.4th 385 (5th Cir. 2025) ....................................................12, 13

*Hoover v. Morales*,
   164 F.3d 221 (5th Cir. 1998) .............................................................24

*Jackson v. Wright*,
   82 F.4th 362 (5th Cir. 2023).........................................................15, 16

*Just. For All v. Faulkner*,
   410 F.3d 760 (5th Cir. 2005) ..............................................................3

*Leal v. Becerra*,
   No. 21-10302, 2022 WL 2981427 (5th Cir. July 27, 2022) ..............8, 9

*Majors v. Abell*,
   317 F.3d 719 (7th Cir. 2003) .............................................................10

*Meyer v. Brown & Root Const. Co.*,
   661 F.2d 369 (5th Cir. 1981) ...........................................................2, 8

*Mi Familia Vota v. Abbott*,
   977 F.3d 461 (5th Cir. 2020) ......................................................14, 16

*Mock v. Garland*,
   75 F.4th 563 (5th Cir. 2023) .............................................................24

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024) .......................................................... 22, 23, 24

*Murthy v. Missouri*,
   603 U.S. 43 (2024).............................................................................3

*Nat'l Press Photographers Ass'n v. McCraw*,
   90 F.4th 770 (5th Cir. 2024) ............................................................ 16

*Netchoice, LLC v. Fitch*,
   134 F.4th 799 (5th Cir. 2025) ...........................................................24

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
   833 F.2d 583 (5th Cir. 1987)...............................................................7

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n.*,
   460 U.S. 37 (1983).............................................................................23

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015) ......................................................................... 21

*Speech First, Inc. v. Fenves*,
  979 F.3d 319 (5th Cir. 2020).................................................................10
*State v. Rettig*,
  987 F.3d 518 (5th Cir. 2021) ...............................................................9
*Students for Justice in Palestine v. Abbott*,
  756 F. Supp. 3d 410 (W.D. Tex. 2024)................................................3
*Tex. Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) ............................................................. 18
*Tex. Top Cop Shop, Inc. v. Garland*,
  758 F. Supp. 3d 607 (E.D. Tex. 2024).................................................7
*Texas Democratic Party v. Abbott*,
  961 F.3d 389 (5th Cir. 2020) .........................................................13, 14
*Thomas v. Chi. Park Dist.*,
  534 U.S. 316 (2002) ........................................................................ 19
*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).......................................................................3-4
*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ................................................................... 24, 25
*United States v. Abbott*,
  85 F.4th 328 (5th Cir. 2023)............................................................. 16
*United States v. Hansen*,
  599 U.S. 762 (2023) ..........................................................................4
*United States v. Texas*,
  173 F.4th 659 (5th Cir. 2026) (en banc)............................................4

**Constitutional Provisions, Statutes and Rules:**

U.S. Const. amend. I..............................................................*passim*
Tex. Educ. Code:
  § 35.002 ...................................................................................... 11
  § 35.003 ...................................................................................... 11
  § 51.9315 ................................................................................ 4, 5, 7
  § 65.11.............................................................................................8
UT Austin, *Institutional Rules* § 11-202 (2018-19) ................................ 17
UT Austin, *Institutional Rules* § 11-203 (2018-19) ............................... 17
UT Austin, *Institutional Rules* § 11-504(g)(2)-(3) ................................. 17
UT Austin, *Institutional Rules* § 13-101(2)(c). .........................................7

Fed. R. Civ. P. 65(d) ....................................................................................2, 8

**Other Authorities:**

Foundation for Individual Rights in Education, FIRE's Guide to Free
  Speech on Campus (2012) ...............................................................20

### ARGUMENT IN REPLY

Plaintiffs' brief confirms they sought an injunction against the wrong Defendants and the wrong law. S.B. 2972 does not regulate *students* but instead instructs *universities* to enact policies limiting particularly disruptive speech during final exams and overnight while protecting students' First Amendment rights. Students cannot violate S.B. 2972, and universities cannot enforce it against students.

Plaintiffs sought a preliminary injunction only against enforcement of S.B. 2972 itself, not against enforcement of university policies. But Plaintiffs lack standing, and their request is barred by sovereign immunity. The district court erred in entering a preliminary injunction.

Plaintiffs' response also confirms the errors in the district court's merits analysis noted in Defendants' opening brief. Plaintiffs do not defend the district court's finding, based on legislative-history and political tweets, that S.B. 2972 was viewpoint based. Appellees' Br. 45 n.21. And Plaintiffs ignore many of Defendants' other points, such as how commercial speech at UT Austin and UT Dallas is subject to all the same time, place, and manner restrictions as noncommercial speech—undermining Plaintiffs' argument that the law favors commercial speech.

Even if the district court had jurisdiction, it erred by applying strict scrutiny to a law that contains, at most, content-neutral time, place, and manner restrictions, and this error infected its application of intermediate scrutiny. This Court should vacate the preliminary injunction.

1

## I. Plaintiffs Lacked Standing to Enjoin Enforcement of S.B. 2972.

Because Plaintiffs sought a preliminary injunction only against enforcement of S.B. 2972, a law that does not apply to and cannot be enforced against them, they lack standing. The First Amendment context does not alter this conclusion.

### A. Plaintiffs only sought a preliminary injunction against enforcement of S.B. 2972.

Plaintiffs sought a preliminary injunction only against enforcement of S.B. 2972, and not against campus policies. Appellants' Br. 31-33. Plaintiffs argue that their "briefing below explained why those policies violate the First Amendment and warrant injunctive relief." Appellees' Br. 64 n.22.

But discussing a policy is not the same as seeking to enjoin it. Although these campus policies are discussed in Plaintiffs' *complaint*, Plaintiffs' preliminary injunction motion only asks the Court to "preliminarily enjoin enforcement of the Act's sweeping bans." ROA.286, 290-91, 296. The same is true of their proposed order (which was adopted verbatim): It asks only to enjoin enforcement of provisions of the Texas Education Code. ROA.314, 482-83. Plaintiffs' theory that the injunction covers campus policies by implication (because of discussions in the "briefing below") conflicts with Rule 65(d)'s requirement that an injunction "state its terms specifically" and "describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." Fed. R. Civ. P. 65(d); *Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 373 (5th Cir. 1981). The preliminary injunction refers only to the Texas Education Code, not university policies.

As Defendants explained, Appellants' Br. 31-32, the fact that Plaintiffs only sought to enjoin S.B. 2972 is reinforced by Plaintiffs not arguing that "any of [the UT Austin Plaintiffs'] speech would even arguably violate UT Austin's policy regarding disruptive overnight speech." Appellants' Br. 31. Plaintiffs do not dispute this point. *See* Appellees' Br. 51 (discussing UT Austin's policy only to argue it is still "underinclusive of commercial speech").[1] If no Plaintiff could be restrained by UT Austin's policy, Plaintiffs could not have sought to enjoin its enforcement.

This Court must assess Plaintiffs' standing to seek the relief they sought and obtained: an injunction against enforcement of S.B. 2972 itself.[2]

## B. Plaintiffs lack standing because S.B. 2972 does not regulate them.

Plaintiffs bear the burden to "'demonstrate standing for each claim that they press' against each defendant, '*and for each form of relief that they seek*.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (emphasis added) (quoting *TransUnion LLC v.*

---

[1] Contrary to Plaintiffs' suggestion, Appellees' Br. 47, Defendants do not concede that UT Austin's overnight speech policy fails either strict or intermediate scrutiny. The district court's brief discussion of UT Austin's policy, ROA.471-72, was cursory. Appellants' Br. 45-48. And because the district court did not enjoin enforcement of UT Austin's policy (and Plaintiffs lack standing to challenge it), the issue is not before this Court. Plaintiffs have not filed a cross-appeal, so this Court lacks "jurisdiction to expand the scope of the remedy ordered to grant them greater relief than awarded by the district court. *Just. For All v. Faulkner*, 410 F.3d 760, 772 (5th Cir. 2005).

[2] As Defendants noted in their opening brief, this fact sets this case apart from *Students for Justice in Palestine v. Abbott*, 756 F. Supp. 3d 410, 414 (W.D. Tex. 2024) where the plaintiffs requested relief against campus policies. Appellants' Br. 32-33 The ACLU amicus relies on this case but does not address this key difference. ACLU Amicus 21, 23.

*Ramirez*, 594 U.S. 413, 431 (2021)). But Plaintiffs fail to satisfy any of the elements of standing (injury, traceability, or redressability) to seek an injunction against enforcement of S.B. 2972.

### 1.   Plaintiffs are not injured by S.B. 2972.

Plaintiffs' pre-enforcement challenge to a law that has never been interpreted by state courts "comes at a cost," as the en banc Court recently explained in *United States v. Texas*, 173 F.4th 659, 667 (5th Cir. 2026) (en banc). This Court should be wary of "assum[ing] [S.B. 2972] will be construed in a way that creates conflict[.]" *Id.* at 663 n.8. And the doctrine of constitutional avoidance further requires interpreting the law to "seek harmony" with the Constitution "not to manufacture conflict." *United States v. Hansen*, 599 U.S. 762, 781 (2023).

A constitutionally cognizable injury must be "the result of a statute's actual or threatened *enforcement*." *California v. Texas*, 593 U.S. 659, 670 (2021). Plaintiffs cannot credibly allege that S.B. 2972 will be enforced against them because the statute's commands and prohibitions do not apply to students. Appellants' Br. 21-22. Instead, the statute regulates "institution[s] of higher education." Tex. Educ. Code § 51.9315(b)(1). As a result, S.B. 2972 cannot be enforced against Plaintiffs and does not "arguably . . . proscribe[]" their speech. *Contra* Appellees' Br. 26, ACLU Amicus 13. Plaintiffs thus lack standing.

Plaintiffs characterize S.B. 2972 as requiring Defendants to "carry out the Act's mandatory, express restrictions on protected campus speech." Appellees' Br. 5. Plaintiffs also argue that S.B. 2972 forbids "distinctions based on campus location or

forum" and the use of "objective standards of disruption or student safety." Appellees' Br. 9.

This is incorrect: S.B 2972 directs "institution[s] of higher education" to enact compliant policies balancing the institutional interests of protecting freedom of speech and avoiding undue disruption of final exams and sleep and study in dormitories. Appellants' Br. 20. This is not a ministerial duty.

S.B. 2972 specifically directs universities not "to limit or infringe on a person's right to freedom of speech or expression protected by the First Amendment." Tex. Educ. Code § 51.9315(l). Plaintiffs dismiss this clause as merely an "illusory . . . promise[] to enforce [the law] responsibly." Appellees' Br. 22-23. Not so—S.B. 2972 directs *universities* to adopt policies. There is nothing illusory about the Legislature's command that university policies may not "limit or infringe on a person's right to freedom of speech or expression." Tex. Educ. Code § 51.9315(l). Nor does Defendants' reading "render judicial review a meaningless exercise," ACLU Amicus 19, or "greenlight flagrant First Amendment violations," *id.* at 25, as courts can review the constitutionality of the policies campuses enact.

Plaintiffs make much of the fact that S.B. 2972 says that campuses "shall adopt" policies, Appellees' Br. 19-20, but that S.B. 2972 "requires university officials to implement and enforce" policies, ACLU Amicus 16, is not in dispute. The point is that S.B. 2972's instruction to protect freedom of speech necessarily requires universities to tailor these policies to suit campus needs while protecting free speech

rights.[3] The Texas Supreme Court has recognized that Texas laws governing education are frequently "lacking in detail, leaving it to the systems and component institutions to fill in the gaps." *Hartzell v. S.O.*, 672 S.W.3d 304, 315 (Tex. 2023); Appellants' Br. 21. Under Texas law it is *expected* that Texas' educational institutions will "fill in the gaps" as they adopt concrete campus-specific policies.

UT Austin's overnight speech policy, adopted with unanimous approval from the Board of Regents, Appellants' Br. 21, confirms that there is no ministerial duty to adopt the text of S.B. 2972 verbatim. UT Austin's policy draws distinctions based on location (applying only to common outdoor areas) and uses objective standards of disruption (applying only to speech loud enough to be heard in a dormitory). Appellants' Br. 9. UT Austin did exactly what S.B. 2972 contemplates, adopting the principles of S.B. 2972 into a campus policy while balancing student speech rights.[4] UT Austin's policy refutes Plaintiffs' interpretation of S.B. 2972.

---

[3] Although standing can be based on "the predictable effect of Government action on the decisions of third parties," in such a suit, the plaintiff sues the government actor, not the third parties that are the object of the action. *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019). In other words, if Plaintiffs were injured because of the predictable effects of enforcement of S.B. 2972 against UT Austin and UT Dallas, they could sue the government actor responsible for that enforcement. As detailed above, there are no such "predictable effect[s]," and no actor has responsibility for enforcing S.B. 2972's "'textually unenforceable language'" against universities. *A & R Eng'g & Testing, Inc. v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023) (quoting *California*, 593 U.S. at 671).

[4] The fact that UT-Dallas's policy adopted the text of S.B. 2972 "nearly word-for-word" Appellees' Br. 30, does not change the standing analysis. Each campus policy may be evaluated and challenged on its own merits.

Plaintiffs' speculation that UT Austin might amend its policy does not alter the analysis, Appellees' Br. 30. A challenge against a "hypothetical" future policy is not ripe. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987).[5]

S.B. 2972 does not "threaten[] discipline," as Plaintiffs suggest. Appellees' Br. 27. Not only does the law not provide for penalties for students, but it does not even impose any specific consequences for *universities* if they do not adopt compliant speech policies.[6]

In support of their reading of S.B. 2972, Plaintiffs also cite the requirement that universities "establish disciplinary sanctions for students, student organizations, or employees who . . . violate an institution policy or state law." Appellees' Br. 10-11 (quoting Tex. Educ. Code § 51.9315(f)(3)). But because S.B. 2972 does not regulate students, students cannot violate the law and Defendants cannot punish students for failing to comply with it.

---

[5] Contrary to Plaintiffs' characterization, Appellees' Br. 12, UT Austin has narrowed its policies since this lawsuit was filed. For instance, UT Austin's policy regarding amplified sound during finals now only applies to speech that "produces distracting or intrusive sound that can be heard in an academic, administrative, or residential building." UT Austin, *Institutional Rules* § 13-301(2)(c), *available at* https://catalog.utexas.edu/general-information/appendices/appendix-c/speech-expression-and-assembly/ (last accessed on June 10, 2026).

[6] The cases the ACLU cites involved challenges to laws that directly imposed "severe penalties" for violations, *Tex. Top Cop Shop, Inc. v. Garland*, 758 F. Supp. 3d 607, 619 (E.D. Tex. 2024), or created causes of action, *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 373 (5th Cir. 2022); ACLU Amicus 23.

### 2. Plaintiffs cannot show traceability or redressability.

Plaintiffs' purported injury is not traceable to Defendants' enforcement of S.B. 2972's "'textually unenforceable language.'" *A & R Eng'g*, 72 F.4th at 690 (quoting *California*, 593 U.S. at 671). Any injury that Plaintiffs suffer depends on the "independent" choices of administrators at UT Austin and UT Dallas who exercise "broad and legitimate discretion," *A & R Eng'g*, 72 F.4th at 691, in crafting campus policies.

Nor does an injunction against enforcement of S.B. 2972 redress Plaintiffs' alleged injuries. Plaintiffs argue an injunction against S.B. 2972 "necessarily prevents" enforcement of the campus-specific policies. Appellees' Br. 18. But that is not true. UT Austin and UT Dallas had some similar policies in place before S.B. 2972, Appellants' Br. 25 n.5.[7] And an injunction against enforcement of S.B. 2972 does not affect those policies or diminish Board's rulemaking authority, Tex. Educ. Code. § 65.11, particularly in light of Rule 65(d)'s requirement that an injunction "be framed so that those enjoined will know what conduct the court has prohibited." *Meyer*, 661 F.2d at 373.

Furthermore, "[w]hen multiple laws cause the same harm, that injury may not be traceable or redressable when only one of those laws is challenged." *Leal v. Becerra*, No. 21-10302, 2022 WL 2981427, at *2 (5th Cir. July 27, 2022) (per curiam). Nor does S.B. 2972 cause a "discrete injury" that could be redressed by an

---

[7] This is different from the regulation in *Federal Election Commission v. Cruz*, 596 U.S. 289, 301 (2022); ACLU Amicus 23. In that case, the FEC lacked power to promulgate its regulation "unless and until Congress authorizes it to do so by statute." *Id.* Not so here.

injunction, *Leal*, 2022 WL 2981427, at \*2 (citing *State v. Rettig*, 987 F.3d 518, 529 (5th Cir. 2021)), since the law does not itself injure Plaintiffs. *Contra* ACLU Amicus 9.

Plaintiffs lack standing to seek an injunction against enforcement of S.B. 2972.

## C. The First Amendment context does not alter the standing analysis.

Plaintiffs argue that the Court can "quickly dispense" with Defendants' standing arguments because of the unique nature of their First Amendment claims. Appellees' Br. 17. They are mistaken. Although a policy that regulates speech may injure through its chilling effect, that does not diminish the requirement that these injuries be "the result of a statute's actual or threatened *enforcement*." *California*, 593 U.S. at 670.

This Court has applied this principle in the First Amendment context. Hence, in *A & R Engineering*, the Court held that a plaintiff lacked standing to sue the attorney general in challenging a law requiring government contractors to certify that they will not boycott Israel. 72 F.4th at 690. The Court noted that the statute merely provided "a list of requirements" but not "a way for the Attorney General to enforce those requirements." *Id.* This "textually unenforceable language" meant that any injury was not traceable to the Attorney General. *Id.* Just like the statute challenged in *A & R*, S.B. 2972 simply provides "a list of requirements," *id.*, that Defendants cannot directly enforce against Plaintiffs.[8]

---

[8] Indeed, these requirements apply to universities, not to students.

Likewise in *Clapper v. Amnesty Int'l USA*, the Supreme Court held that standing requires any chilling effect to come as a result of the challenged restriction itself, not as a result of self-censorship or fear of a policy "that does not regulate, constrain, or compel any action on [the plaintiffs'] part." 568 U.S. 398, 419 (2013). S.B. 2972's "textually unenforceable language" "does not regulate, constrain, or compel any action" by Plaintiffs.

Plaintiffs and the ACLU also rely on language in *Speech First, Inc. v. Fenves*, 979 F.3d 319, 336 (5th Cir. 2020), for the proposition that in the First Amendment context, "'the threat is latent in the existence of the statute.'" Appellees' Br. 17, 29 (quoting *Speech First,* 979 F.3d at 336); ACLU Amicus 20. But they pluck this language out of context. In *Speech First*, the plaintiffs challenged a speech policy that was enforceable through disciplinary sanctions "from written warning to suspension, expulsion, and the denial of a degree." 979 F.3d at 323. *Speech First* does not stand for the proposition that a statute that regulates universities and neither regulates students nor contains penalties for student conduct can chill speech by virtue of its very existence.[9] *Majors v. Abell*, the case that this Court quoted on this point in *Speech First*, involved a challenge to an Indiana election law that made failure to disclose the identity of a person who paid for a political advertisement a misdemeanor. 317 F.3d 719, 721 (7th Cir. 2003). In that context, it made sense to say

---

[9] Plaintiffs cite language from *Speech First* about the need for "absolute certainty" to refute a threat of future enforcement. Appellees' Br. 31. But this language comes from the part of *Speech First* that addressed the voluntary cessation exception to mootness. 979 F.3d at 329. That is not at issue in this appeal—Defendants' point is that Plaintiffs challenged only a law that can never be enforced against them.

that the existence of the law posed a latent threat to freedom of speech. That holding does not help Plaintiffs.

Nor does *Book People, Inc. v. Wong*, 91 F.4th 318, 332-33 (5th Cir. 2024) support Plaintiffs. Appellees' Br. 27-28. *Book People* involved a law that required book vendors who wanted to sell books to school libraries to submit sexual-content ratings for their books to the Texas Education Agency. 91 F.4th at 326. The law specifically empowered the TEA Commissioner "to enforce the Act against school districts," and the "school districts' purchasing decisions" were "determined or coerced by the State." *Id.* at 331. The act also required vendors to submit their ratings annually directly to the TEA and authorized the TEA Commissioner to create a list of non-compliant vendors. Tex. Educ. Code §§ 35.002, 35.003. In other words, the parts of the law that the plaintiffs had standing to challenge in *Book People* directly affected whether vendors could sell books to public schools. On the other hand, the *Book People* plaintiffs' injuries could not be traced to other officials who were "responsible for promulgating the library-collection standards" because "those standards are not enforceable against [them]." *Id.* at 332. *Book People* maintained the same distinction that Defendants are advancing here: Plaintiffs cannot challenge policies that are unenforceable against them, even when those policies regulate speech.

Plaintiffs also argue that "the value of a sword of Damocles is that it hangs—not that it drops." Appellees' Br. 29 (quoting *First Choice Women's Resource Centers, Inc. v. Davenport*, 146 S. Ct. 1114, 1127 (2026)). But the sword of Damocles inspired fear because it *could* drop. The "non-self-executing subpoena" issued in *First Choice* was still a command to produce documents that carried with it the threat of "contempt

of court" or other penalties. 146 S. Ct. at 1127. In contrast, S.B. 2972 itself does not contain any threat of enforcement against Plaintiffs and does not purport to regulate Plaintiffs in any way. It cannot "chill" Plaintiffs' speech.

*    *    *

In enacting S.B. 2972, the Legislature regulated universities, not students. As a result, Plaintiffs have no standing to challenge the law. Nothing in Plaintiffs' brief overcomes this straightforward analysis.

## II. Plaintiffs' Request for Preliminary Injunction is Barred by Sovereign Immunity.

Plaintiffs' request for an injunction is barred by sovereign immunity for two distinct reasons. First, Defendants lack the requisite connection to the enforcement of S.B. 2972 because it is not an enforceable speech policy. Appellants' Br. 26-31. Second, even if Plaintiffs sought an injunction against UT Austin and UT Dallas's campus-specific policies, Defendants have neither "the particular duty to enforce" those policies nor "a demonstrated willingness to exercise that duty." *Book People*, 91 F.4th at 335. Appellants' Br. 33-39.

### A.  Defendants do not enforce S.B. 2972.

For the same reasons that Plaintiffs lack standing to seek an injunction against enforcement of S.B. 2972, s*ee supra* Section I, they cannot overcome Texas's sovereign immunity. None of the Defendants has any connection to the enforcement of S.B. 2972 because universities are regulated by the law, not enforcers of it.

In response, Plaintiffs largely rehash points already discussed above. Plaintiffs also cite *Healthy Vision Association v. Abbott*, 138 F.4th 385, 397 (5th Cir. 2025), for

12

the proposition that because S.B. 2972 creates a "mandatory duty," Defendants must enforce it. Appellees' Br. 41. But *Healthy Vision* does not help Plaintiffs. In that case, a statute required the Texas Insurance Commissioner to "take all reasonable actions to ensure compliance" and authorized him to impose administrative penalties for failure to comply. 138 F.4th at 396-97. So the Commissioner had a direct connection to the enforcement of the challenged law against private parties. And unlike S.B. 2972, the statute at issue regulated private parties, forbidding them to "incentivize, recommend, encourage, persuade, or attempt to persuade" their patients. *Id.* at 394. In contrast, S.B. 2972 does not create an enforceable speech policy or authorize any Defendant to impose penalties to ensure compliance.

*Air Evac EMS, Inc. v. Texas Department of Insurance, Division of Workers' Compensation*, 851 F.3d 507, 519 (5th Cir. 2017), likewise does not establish that Defendants have the "requisite enforcement connection" to S.B. 2972. In that case, a state agency set and enforced the maximum-reimbursement rate for insurance companies. *Id.* at 514. The agency argued that it was immune to suit by an ambulance company because it enforced the rates against insurance companies and not directly against the ambulance company. *Id.* But this Court held that the agency's "rate-setting authority and role in arbitrating fee disputes through the administrative process" gave it the requisite enforcement connection. *Id.* at 519. In this case, Plaintiffs seek to enjoin a non-enforceable statute that merely requires Defendants to create policies.

Finally, Plaintiffs cite *Texas Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020), claiming that a mere "scintilla of future enforcement" by Defendants

suffices. Appellees' Br. 43. But *Texas Democratic Party* supports Defendants, not Plaintiffs. In that case, the Attorney General sent letters threatening enforcement, which was "enough to satisfy [*Ex parte*] *Young.*" 961 F.3d at 401. There is nothing similar in the record of this case. There is not even a scintilla of evidence that any Defendant can or will enforce S.B. 2972 itself against Plaintiffs.

### B. Defendants also do not enforce the campus-specific policies of UT Austin and UT Dallas.

Even if Plaintiffs had challenged UT Austin and UT Dallas's campus-specific policies, Defendants have neither "the particular duty to enforce" those policies nor "a demonstrated willingness to exercise that duty." *Book People*, 91 F.4th at 335. To challenge the campus policies, Plaintiffs should instead have sued UT Austin's and UT Dallas' deans of students, who Plaintiffs concede are the "frontline enforcers of any implementing policies." Appellees' Br. 40.

Plaintiffs nevertheless insist that the Board, Chancellor Zerwas, President Davis, and President Moghe have a sufficient enforcement connection. However, the only connection that Plaintiffs can point to between the Board and Chancellor Zerwas, and the campus-specific speech policies is the Board's vote to approve them. Appellees' Br. 32.

An official who promulgates, but does not enforce, a policy is not a proper *Ex parte Young*, 209 U.S. 123 (1908), defendant. In *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020), this Court held that the Governor lacked an enforcement connection, even though he had issued an executive order, because enforcement would occur only through local officials. Similarly, in *Haverkamp v. Linthicum*, a

14

committee that promulgated medical policy for Texas prisons lacked the necessary enforcement connection to the "specific decisions at issue" regarding inmate's medical care to be a proper defendant. 6 F.4th 662, 665 (5th Cir. 2021) (per curiam). The Board and Chancellor Zerwas likewise are not proper defendants.

Plaintiffs claim that the Board's "'governing authority'" alone is enough. Appellees' Br. 39 (quoting *Jackson v. Wright*, 82 F.4th 362, 368 (5th Cir. 2023)). But in *Jackson*, this Court noted two "guideposts" governing sovereign immunity. *Id.* at 367-68. While discussing the first guidepost, this Court noted that the University of North Texas Board's "governing authority" gave it a "scintilla of enforcement." *Id.* at 367. However, under the second guidepost the Court explained that more was required than just a "general duty to see that the laws of the state are implemented." *Id.* To satisfy this requirement, this Court pointed to the UNT Board's "direct supervisory authority," its specific "authority to countermand the decisions" of university officials, and that the Board was directly asked to intervene in the dispute but did not do so. *Id.* at 368. The best reading of *Jackson* is that the UNT Board's "governing authority" standing alone was *not* enough.

Here, unlike in *Jackson,* the Board and Chancellor Zerwas have no enforcement role or "direct supervisory authority," over campus speech regulations. Nor is there evidence they have been asked to or can "countermand" the enforcement decisions of UT Austin or UT Dallas's deans of students. All Plaintiffs can point to is a general duty to approve a campus's speech policy, which is insufficient.

Moreover, as Defendants explained in their opening brief, Appellants' Br. 36, *Jackson* came to this Court in the posture of a motion to dismiss, which required this

15

Court to credit the plaintiffs' allegations. Plaintiffs do not address this point and do not put forward any "evidence that Defendants will enforce" the challenged policy. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 787 (5th Cir. 2024).[10]

The enforcement connection for President Davis and President Moghe is similarly inadequate. Plaintiffs concede that President Davis and President Moghe are not the "frontline enforcers of any implementing policies," Appellees' Br. 40, but they nevertheless point to certain powers that they claim establish a sufficient enforcement connection. Those connections are limited and insufficient.

First, they note that President Davis and President Moghe "develop and administer policies relating to students." Appellees' Br. 31. But the highly generalized authority to "administer" policies translates to only a "general duty" rather than "the particular duty to enforce" the campus speech policies. *United States v. Abbott*, 85 F.4th 328, 335 (5th Cir. 2023). And developing policies alone would not be enough under *Mi Familia Vota*, 977 F.3d at 467.

Second, they point to President Davis's power to appoint hearing officers and members of the Student Conduct Board,[11] Appellees' Br. 32; ROA.786. But this

---

[10] The district court in *Coalition for Independent Technology Research v. Abbott*, 706 F. Supp. 3d 673, 681 (W.D. Tex. 2023) misread *Jackson* as categorically making members of the UNT Board of Regents proper defendants. ACLU Amicus 20. But the court's conclusion that Governor Abbott and the Department of Public Safety lacked an enforcement connection even though the Governor promulgated an executive order and DPS was required to approve UNT's policy supports Defendants' position here. *Id.* at 684.

[11] Plaintiffs mistakenly assert that President Moghe has the same appointment power. Appellees' Br. 32. But the provision they cite has to do with the appointment

policy exists because the Dean of Students is the one who enforces student speech policies. An earlier version of UT Austin's rules explained that President Davis's appointment role is intended "[t]o preclude any appearance of impropriety on the part of the dean of students." UT Austin, *Institutional Rules* §§ 11-202, 11-203 (2018-19), available at https://catalog.utexas.edu/archive/2018-19/general-information/appendices/appendix-c/student-discipline-and-conduct/. Because the Dean of Students enforces these policies, allowing him to appoint dispute adjudicators could create a conflict of interest. The lack of similar concern over the "appearance of impropriety" for the President's appointments demonstrates that he is removed from the enforcement of student discipline.

Third, Plaintiffs claim that President Davis has the general authority to "hear[] petitions of student disciplinary actions." Appellees' Br. 32. This is incorrect. The cited section of UT Austin's student disciplinary procedures concerns limited, discretionary review of only one specific aspect of the disciplinary process. UT Austin, *Institutional Rules* § 11-504(g)(2)-(3), ROA.790. The Dean of Students can recommend that a student receive Educational Release, a remedial alternative to discipline. *Id.* A student who is dissatisfied with a decision to deny Educational Release can seek review by the Vice President for Student Affairs, who can grant or deny Educational Release. *Id.* If the student is dissatisfied with that decision, the

---

of peace officers entitled to stop imminent or ongoing violations, not with those who adjudicate disciplinary disputes. ROA.731. At UT Dallas, appointments to the Discipline Committee are made at the recommendation of the Vice President for Student Affairs, who is not a party to this lawsuit. ROA.774-81, 783-84.

student may "petition the president for review," but the President may decline to accept the matter for review. *Id.* The President has no role in bringing disciplinary charges and cannot reverse a decision to grant Educational Release since only a dissatisfied student can appeal to him. As Defendants pointed out, this is akin to a governor reviewing clemency petitions, Appellants' Br. 37 n.12, which surely would not make the governor a proper defendant in any challenge to a State's criminal laws. This does not provide the requisite "connection . . . [to] enforcement of the challenged provision," *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 180 (5th Cir. 2020). *See Burnett v. Fallin*, No. CIV-17-385-M, 2018 WL 4376513, at \*4 (W.D. Okla. June 5, 2018) (*Ex parte Young* did not apply to governor's "use or failure to use her authority to grant clemency"), *report and recommendation adopted*, 2018 WL 4374199 (W.D. Okla. Sept. 13, 2018).

Plaintiffs also cite, Appellees Br. 32, to language from *Book People*, where this Court found an enforcement connection for an officer who "oversee[s] the challenged process." 91 F.4th at 332-33. In context, this refers to the TEA Commissioner's role in conducting "special investigation[s]" and imposing "sanctions." *Id.* at 333. President Davis and President Moghe have no similar role in enforcing student speech policies. Nor have Plaintiffs identified "specific actions" that President Davis and President Moghe would take "that this court can enjoin." *Id* at 335; *contra* ACLU Amicus 24.

\*   \*   \*

18

Because Defendants enforce neither S.B. 2972 nor UT Austin or UT Dallas's campus speech policies, Plaintiffs cannot overcome the state's sovereign immunity under *Ex parte Young*.

## III. The District Court Erred by Applying Strict Scrutiny.

The district court erred by applying strict scrutiny to S.B. 2972. Plaintiffs do not defend the district court's conclusion that S.B. 2972 is viewpoint based. Nor do they defend its conclusion that the law "was motivated by opposition to certain messages" based on legislative history and gubernatorial tweets. ROA.465. They "acknowledge the Challenged Bans are not viewpoint based on their face." Appellees' Br. 45 n.21.

Plaintiffs instead argue only that the law "invites viewpoint discrimination through arbitrary enforcement." *Id.* But the mere possibility that a policy might be enforced inconsistently does not result in the application of strict scrutiny, absent some kind of "pattern of unlawful favoritism," which Plaintiffs made no attempt to show. *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 325 (2002).[12]

Their remaining basis for the application of strict scrutiny is that S.B. 2972 favors commercial speech—an argument that collapses once S.B. 2972 is understood within the broader regulatory framework. Appellants' Br. 40-41. Plaintiffs ignore

---

[12] By mentioning "arbitrary or discriminatory" enforcement, Appellees' Br. 60, Plaintiffs may also be alluding to doctrine of vagueness. But while Plaintiffs brought a vagueness claim in their complaint, ROA.67-68, this was *not* one of the bases for Plaintiffs' request for a preliminary injunction. ROA.278-79. Accordingly, the district court acknowledged Plaintiffs' vagueness challenge but did "not reach a determination on this question." ROA.468. Nor have Plaintiffs presented a vagueness argument to this Court.

19

that the previous law extended protections exclusively to *non-commercial* speech. S.B. 2972 merely adjusts and walks back some of those protections. This does not elevate commercial speech because those protections never applied to commercial speech in the first place.

Plaintiffs' theory that S.B. 2972 favors commercial speech also does not pass even a cursory look at how "the provisions actually regulate speech." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 68 n.3 (2022). Plaintiffs ask this Court to view S.B. 2972 in isolation, without any regard for other laws or policies governing campus speech. That approach would be problematic for any law, but it is particularly problematic with S.B. 2972 because, as discussed above, S.B. 2972 is not itself a policy but merely directs educational institutions to modify their existing campus speech policies. Those existing policies regulate commercial speech.

As Defendants have shown, Appellants' Br. 39-41, in the UT System commercial speech is subject to more extensive regulations than non-commercial speech.[13] Plaintiffs catalogue commercial activities that students are allowed to engage in, like advertising merchandise or requesting financial contributions. Appellees' Br. 46. But their argument ignores that there is no favoritism for these activities because they are subject to *all* of the time, place, and manner restrictions that apply to non-commercial speech, as well as additional limitations. Plaintiffs

---

[13] UT is not an outlier. Plaintiffs' counsel's website recognizes that "[m]any campuses strictly regulate so-called 'commercial speech.'" Foundation for Individual Rights in Education, FIRE's Guide to Free Speech on Campus (2012) (last accessed June 9, 2026), https://www.fire.org/research-learn/fires-guide-free-speech-campus.

instead mischaracterize Defendants' argument as being about how "commercial speech is regulated elsewhere." Appellees' Br. 45. But the point is that the district court should have looked at how commercial speech is treated in the campus speech policies of the universities that Plaintiffs are suing.

Plaintiffs argue that if government actors must "examine the content of speech to determine whether it is noncommercial," then strict scrutiny applies. Appellees' Br. 46. But if that were so, then the *Central Hudson* standard for commercial speech, *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980), would never apply because any law distinguishing between commercial and non-commercial speech would automatically result in the application of strict scrutiny. Neither this Court nor the Supreme Court have ever taken that position. *Reed* involved a sign ordinance that required parsing between a variety of signs including "ideological" or "political," rather than commercial or non-commercial. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 159 (2015). And *Discovery Network* dealt with a sweeping city ban on news racks for commercial handbills, reflecting the city's assessment that this speech had "low value." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993). Neither case stands for the proposition that merely determining whether speech is commercial or noncommercial results in the application of strict scrutiny. Because S.B. 2972 simply relies on the long-utilized distinction between commercial and non-commercial speech, strict scrutiny does not apply.

*   *   *

21

S.B. 2972 directs campuses to adopt content-neutral time, place, and manner restrictions. Strict scrutiny does not apply, and the district court erred in concluding otherwise.

## IV. In Light of the District Court's Erroneous Application of Strict Scrutiny, the Court Must Reverse and Remand.

Because the district court erroneously applied strict scrutiny, it offered only a brief intermediate scrutiny analysis, without conducting any forum analysis. *See* Appellants' Br. 45-48. ROA.435. If this Court determines Plaintiffs have standing, it should reverse and remand for further consideration and application of the proper standard.

As Defendants pointed out, Appellants' Br. 47, Plaintiffs' facial challenge requires them to prove that "the law's unconstitutional applications substantially outweigh its constitutional ones." *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024). "Even in the First Amendment context, facial challenges are disfavored, and neither parties nor courts can disregard the requisite inquiry into how a law works in all of its applications." *Id.* at 744. Even if the district court were correct that S.B. 2972 is overbroad in some applications, it did not consider its full range of applications, evaluate which are constitutional, or compare the unconstitutional applications to the constitutional ones. That failure alone warrants vacatur and remand. *See Moody*, 603 U.S. at 726.

In *Moody*, the Supreme Court remanded for further analysis of whether the "heartland applications" of Texas's social media law outweighed its other applications. *Id.* If this Court finds the district court had jurisdiction, the Court

should remand to allow the district court in the first instance to "consider the scope of the laws' applications and weigh the unconstitutional as against the constitutional ones." *Id.* at 726.

In the context of campus speech restrictions, the careful analysis that *Moody* calls for is impossible without a thorough forum analysis. Plaintiffs argue that forum analysis was unnecessary because campuses are "a collection of different property types with different purposes." Appellees' Br. 52. But that is why forum analysis is so crucial. The existence and scope of First Amendment rights depend on this analysis. Appellants' Br. 45-48; *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n.*, 460 U.S. 37, 44 (1983). The district court should have considered how each provision applies across campus; determined whether a particular location on campus constitutes a public forum, limited public forum, or non-public forum; evaluated the constitutionality of the time, place, and manner restrictions for each forum; and weighed the constitutional applications against the unconstitutional. The district court's failure to conduct a proper forum analysis is sufficient basis for reversal.

Plaintiffs' overbreadth challenge does not allow them to evade *Moody*'s requirement that the court conduct a thorough analysis comparing potential constitutional and unconstitutional applications. Plaintiffs claim that this case is "tailor-made for the overbreadth doctrine," but the overbreadth doctrine requires a *Moody*'s comparison. 603 U.S. at 724. The injunction should be reversed.

## V.  The Preliminary Injunction Is Overbroad.

Plaintiffs argue a systemwide injunction was appropriate because the overbreadth doctrine allows for a law to "be struck down in its entirety." Appellees'

Br. 63 (citing *Moody*, 603 U.S. at 723). But overbreadth is an "exception from general *standing* rules," allowing individuals subject to a "constitutionally unobjectionable" application to challenge a policy "where every application creates an impermissible risk of suppression of ideas." *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 129 (1992) (emphasis added); *Netchoice, LLC v. Fitch*, 134 F.4th 799, 806 (5th Cir. 2025) (overbreadth relaxes the "prudential consideration of third-party standing"). Overbreadth cannot "justify[] the award of relief to nonparties" or anything beyond what is needed to offer Plaintiffs "complete relief." *Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025).

Complete relief for Plaintiffs does not require an injunction that applies to other UT campuses. Plaintiffs are not injured by the "very existence" of free speech policies or by the "silencing [of] campus conversations" at campuses that they do not attend. Appellees' Br. 66 n.23.

Plaintiffs point to *Hoover v. Morales*, where this Court affirmed the injunction against enforcement of a Texas A&M policy that prohibited state employees from serving as expert witnesses. 164 F.3d 221, 227 (5th Cir. 1998). But *Hoover* predates *CASA* and does not discuss the scope of the injunction. *Id.* And one of the plaintiffs in that case was the Texas Faculty Association, which represents faculty across the Texas A&M System. *Id.* This case, by contrast, does not involve an organizational plaintiff with members spanning the UT System.

Plaintiffs also cite *Mock v. Garland,* saying that "in certain circumstances, nationwide relief is appropriate and may be necessary for the benefit of all parties." 75 F.4th 563, 587 (5th Cir. 2023). But Plaintiffs fail to identify evidence that a

systemwide injunction is necessary for complete relief and secured no findings from the district court that one is necessary. As a result, the injunction "exceed[s] the equitable authority that Congress has granted to federal courts." *CASA*, 606 U.S. at 837.

## CONCLUSION

The Court should vacate the preliminary injunction order and remand with instructions to dismiss Plaintiffs' claims for lack of jurisdiction.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

WILLIAM R. PETERSON
Solicitor General

BRENT WEBSTER
First Assistant Attorney General

/s/ Daniel M. Ortner
DANIEL M. ORTNER
Assistant Solicitor General
Daniel.Ortner@oag.texas.gov

*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,497 words, excluding the parts of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.2, according to the word count of Microsoft Word. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

/s/ Daniel M. Ortner
DANIEL M. ORTNER